# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPRICORN MANAGEMENT SYSTEMS, INC.<br><br>     Plaintiff,<br><br>  v.<br><br>GOVERNMENT EMPLOYEES INSURANCE CO.,<br><br>     Defendant. | Case No. 2:15-cv-02926-DRH-SIL |

## CAPRICORN MANAGEMENT SYSTEMS, INC.'S OPPOSITION TO GOVERNMENT EMPLOYEES INSURANCE CO.'S MOTION TO DISMISS COUNTS II AND III

**TABLE OF CONTENTS**

**Page**

I. FACTUAL BACKGROUND / INTRODUCTION ............................................... 1

II. CAPRICORN HAS PLED ADEQUATE FACTS TO STATE A PLAUSIBLE CLAIM FOR RELIEF ....................................................................... 8

    a. Plaintiff's Complaint Adequately Identifies and Discloses it's Claimed Trade Secrets ........................................................................ 9

    b. The Heightened Pleading Standard Proposed by GEICO is Not Supported by Case Law ....................................................................... 11

    c. Capricorn Has Adequately Pled Facts Establishing the Reasonable Efforts Undertaken to Maintain the Confidentiality of its Trade Secrets ............................................................................. 12

    d. Capricorn Has Adequately Pled Independent Economic Value of its Trade Secrets ............................................................................. 14

III. CONCLUSION ................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page(s)**

*Autodesk, Inc. v. Zwcad Software Co.*,
    2015 U.S. Dist. LEXIS 63610 (N.D. Cal. May 13, 2015) .................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) ...............................8

*Dealertrack, Inc. v. Huder*,
    460 F. Supp.2d 1177, 1184 (C.D. Cal. 2006) .....................................................................13

*Dorset Ind. v. Unified Grocers, Inc.*,
    893 F Supp 2d 395, 411 (E.D.N.Y. 2012) ...................................................................10, 14

*Gaetano Asocs. Ltd. v. Artee Collections, Inc.*,
    2006 U.S. Dist. Lexis 77144 (S.D.N.Y. Oct. 25, 2006) ...................................................9, 13

*GSI Tech. v. United Memories, Inc.*,
    2014 U.S. Dist. LEXIS 54371 (N.D. Cal. Apr. 18, 2014) ..................................................14

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) ..............................................................................................8, 9

*Hertz Corp. v. City of New York*,
    1 F.3d 121, 125 (2d Cir. 1993) ............................................................................................9

*IDX Sys. Corp. v. Epic Sys. Corp.*,
    165 F. Supp 2d 812, 816 (W.D. Wis. 2001), *aff'd* 285 F.3d 581 (7th Cir. 2002) ) .........11

*IDX Sys. Corp. v. Epic Sys. Corp.*,
    285 F.3d 581, 583 (7th Cir. 2002) ....................................................................................11

*In re NYSE Specialists Sec. Litig.*,
    503 F.3d 89, 91 (2d Cir. 2007) ............................................................................................8

*LBF Travel v. Fareportal, Inc.*,
    2014 U.S. Dist. LEXIS 156583 (S.D.N.Y. Nov. 5, 2014) ...................................................5

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
    755 F. Supp. 635, 636 (D. Del. 1991) ...............................................................................10

*Medtech Products, Inc. v. Ranir, LLC et al.*,
    596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) .............................................................9, 12, 13

*nexTUNE, Inc. v. McKinney*,
    No. C12-1974 TSZ, 2013 U.S. Dist. LEXIS 13303 (W.D. Wash. Sept. 17, 2013) ..........12

*SBM Site Services., LLC v. Garrett*,
    No. 10-cv-00385-WJM-BNB, 2012 U.S. Dist. LEXIS 24130 (D. Colo. Feb. 27, 2012) .12

*Superior Edge, Inc. v. Monsanto Co.*,
    964 F. Supp. 2d 1017, 1042 (D. Minn 2012)....................................................................14

*Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*,
    No. 5:14-CV-5262, 2014 WL 7070907 (W.D. Ark. Dec. 12, 2014) ................................12

*Zinermon v. Burch*,
    494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990).....................................8

The Plaintiff, Capricorn Management Systems ("Plaintiff", "Capricorn", or "CMS") hereby submits its Brief in Opposition to Defendant Government Employees Insurance Co.'s ("Defendant" or "GEICO") Motion to Dismiss Counts II and III.

## I. FACTUAL BACKGROUND / INTRODUCTION

Plaintiff Capricorn Management Systems was founded on Long Island, New York by Dr. Charles Silberstein and his wife, Judith Silberstein. The husband and wife team have personally run and managed the day to day operations of the company since its inception. Capricorn was founded as part of National Dental Consultants, Ltd. ("NADENT"), an insurance claims adjusting company, also owned and operated by Dr. and Mrs. Silberstein.

Approximately thirty-five years ago, GEICO and Capricorn began doing business together. At that time, NADENT was hired by GEICO to review and adjust motor vehicle no fault health service charges for GEICO, as the insurance company previously had no formalized review process in place. Back then, GEICO was nowhere near the size it is today. These were two relatively small companies cooperating toward a common goal in striving toward building a claims management system that would streamline and process health service charges (which is considerably larger today than thirty-five years ago).

NADENT obtained an adjuster's license in the State of New York and Capricorn (the software company) eventually developed and shared with GEICO a management system for reviewing and processing these bills according to the rules and regulations of New York State. This system created by CMS eventually developed into much more than a simple repricing tool to become a multi-faceted claims management and processing program which provides more than one hundred (100) specialized, unique functions over and above those mandated by New

1

York State insurance laws and regulations. Indeed, for several decades GEICO and CMS worked together in good faith relying on each other's good will.

CMS's Supercede (and its associated add-on modules) is a comprehensive claims management program used by GEICO which offers significant functions, including fraud detection, employee performance monitoring, and detection of abusive and/or fraudulent prescription of certain narcotic drugs. See DE 1 at ¶¶ 55-58. Some components of Supercede are used for adjusting claims in accordance with New York State guidelines, but its functionality extends far beyond this narrow scope. Supercede does significantly more than merely implement the state's insurance fee adjustment guidelines as GEICO suggests. Additional functions were developed independently by Capricorn and are held in confidence as trade secrets. There are no state mandated guidelines for the organization of information and detection of abusive prescription of narcotic drugs, for instance; Supercede incorporates this function.

For over thirty years, Plaintiff Capricorn has invested its time and resources in developing proprietary software through a series of systems and procedures to process, adjust and manage New York no fault health service charges. Capricorn licenses its software to insurance companies. Defendant GEICO is Capricorn's oldest client, with a business relationship that has spanned more than three decades.

During that time span, GEICO's business grew exponentially. Its enormous clout and resources are evidenced by its ubiquitous advertising campaigns from the Gecko to the Caveman and numerous others. As the number of claims grew, so too did the continued improvements on Supercede to handle the growing workload and to process claims more efficiently, even in the increasingly complex area of the insurance and health service charges industry.

For many years the two parties enjoyed a mutually beneficial arrangement, as recognized by GEICO when it awarded a "Certificate of Partnership Excellence" to Capricorn.  See DE 1 at ¶15.  GEICO also honored one of Capricorn's employees, Gerry DePace, with an Award of Excellence for his development and implementation of fraud detection software which GEICO credited with saving the company millions of dollars.  *Id*. at ¶41.

As GEICO continued to prosper, Capricorn and its Supercede program met the challenges.  More recently, one of the challenges Capricorn has faced is a revolving door of management at GEICO, as Capricorn has dealt with a litany of different managers at GEICO regarding the Supercede program.

At a certain point in 2005, GEICO sought to have the location of the Supercede source code transferred from Capricorn's office and uploaded to GEICO's servers at its headquarters in the Washington, D.C. area.  Based on the longstanding amicable business relationship, Capricorn's owners (Dr. and Mrs. Silberstein) trusted GEICO at its word and consented to installing Supercede code on GEICO's servers, but only after they had been assured that Capricorn would continue to be GEICO's sole software provider for processing and management of health service charges for the Woodbury, New York office, as well as other states throughout the country.  CMS installed Supercede on GEICO's servers under the assumption that Capricorn and GEICO's long-standing business relationship would continue to grow and the two companies would move forward together.   The parties signed a Non-Disclosure Agreement at the time the code was installed in the servers at GEICO's headquarters.  This agreement was reached to protect information relating to CMS's operations, technology and systems which would now be readily available to GEICO on its own servers.  To this day, Capricorn provides

3

updates and new features in its Supercede system by providing upgrades which are submitted for approval to GEICO, and after approval reside on GEICO's servers.

Currently, CMS's Supercede is a claims management software program used by GEICO in New York. *See id*. at ¶¶14, 16 and 22. GEICO's use of the Supercede software is permitted through a Lease and Royalty Agreement, which was renewed most recently in 2013. *Id*. at ¶23. Pursuant to the 2013 renewal, the parties entered into a three year license agreement which is set to expire on August 31, 2016. *Id*. at ¶25. The Lease and Royalty Agreement limits GEICO's use of the Supercede system to the State of New York. *Id*. at ¶29. The royalty fee paid by GEICO for use of the Supercede program in New York State amounts to hundreds of thousands of dollars per year. *Id*. at ¶26.

Around the time the Lease and Royalty Agreement for the Supercede system was renewed in 2013, Capricorn learned that GEICO intended to implement a nationwide claims processing system without Capricorn. *See id*. at ¶61. This is despite the fact that GEICO knew Capricorn had the resources required to implement a national program. NADENT, a related company to Capricorn, had a network for claims adjustment for motor vehicle no fault and worker's compensation health service charges for twenty four (24) different GEICO offices throughout the country, from as far away as California and Arizona and as far south as Florida and Louisiana on an as-needed basis. Therefore, GEICO's representations that it chose to proceed with a different vendor because Capricorn "does not have the resources necessary to support a nationwide application" are not supported by the facts. *See id*.

Capricorn learned that its Supercede system was preferred in New York by GEICO employees over other management systems which did not have the intricacies developed with thirty five years of experience processing and managing claims for motor vehicle no fault health

4

service charges in New York. Supercede can be integrated on a nationwide scale. (Part of the reason that Supercede was moved onto servers in GEICO's headquarters was the potential for implementation nationwide.) GEICO was fully aware of Supercede's ability to be used nationwide. One of the successful modules is Capricorn's Encovel Detection[1] module which detects fraud through analysis of Nerve Conduction Velocity ("NCV") tests. *Id.* at ¶¶ 34, 47. The integration, implementation, organization and management of this program resulted in a much touted complaint filed by GEICO in the State of New York for insurance fraud. See D.E. 1 at ¶ 39. Later, Capricorn learned that another similar fraud complaint was filed in New Jersey. See D.E. 1 at ¶ 45. The research and development required for the Encovel Detection program made it quite clear that portions of Capricorn's Supercede program were being used outside the scope of the License. It also became increasingly evident that Encovel was not the only portion of the Supercede program that was taken.

Ever since the source code for the program was installed on its servers, GEICO has had direct access to Supercede, and it was easy for important proprietary portions of Supercede to be copied and incorporated into the ATLAS software.

GEICO chose to proceed with ATLAS as its nationwide program. However, ATLAS did not have some of the features the Supercede program has. Now that integration into New York

---

[1] GEICO's discussion of the science behind the Nerve Conduction Velocity ("NCV") fraud detection methodologies being publicly disclosed and known is of no consequence to Capricorn's claims. As the Complaint makes clear, Capricorn does not claim any proprietary rights in the abstract idea of analyzing and comparing the NCV measurements to detect fraud. However, this information is provided in the Complaint to exhibit GEICO's use of Capricorn's proprietary Encovel Detection software, which executes the NCV analysis and comparisons for purposes of fraud detection, outside of the State of New York, thus violating the terms of its Lease and Royalty Agreement with Capricorn. This also supports Capricorn's belief that GEICO has copied its proprietary information and incorporated it in GEICO's new ATLAS claims management software. More importantly, a motion to dismiss must be decided based on the allegations of the complaint, and any discussion by the Defendant of extraneous facts or non-record evidence should not be considered by the Court. *LBF Travel v. Fareportal, Inc*., 2014 U.S. Dist. LEXIS 156583, at *14-15 (S.D.N.Y. Nov. 5, 2014)

has commenced, ATLAS incorporates many of Supercede's features and functionalities, including Capricorn's proprietary information and programs which have been found outside of Supercede and its modules. *See e.g., id*. at ¶62. These programs were clearly patterned after modules and portions of Capricorn's Supercede program. GEICO stands to save untold millions of dollars by copying Capricorn's software and adapting it for use in the other 49 states, Washington, D.C. and Puerto Rico. GEICO breached both the Non-Disclosure Agreement and the Lease and Royalty Agreement by incorporating parts of Capricorn's Supercede program into ATLAS.

Capricorn is now before the court seeking to be fairly compensated for GEICO's contractual breaches and for GEICO's misappropriation of Capricorn's trade secrets. Capricorn has adequately pled its claims through detailed factual allegations which give rise to a claim for relief.

GEICO's Motion to Dismiss claims that Capricorn's Complaint (D.E. 1) lacks specificity and does not provide fair notice to GEICO regarding the claims to determine their plausibility. Further GEICO alleges that the proprietary information lacks independent value and is not maintained confidentially as trade secrets.

CMS's Complaint alleges sufficient information including highly customized modules and methods for maximizing efficiency in the management and adjustment of claims (D.E. 1 at ¶53), programs that enable the customization and automation of the claims management process (*Id.* at ¶55), programs that enable enhanced fraud detection as part of the claims management process (*Id.* at ¶56), programs that enable monitoring of the efficiency of GEICO employees (*Id.* at ¶57.), and enable the detection of abusive and/or fraudulent prescription of narcotic drugs (*Id.* at ¶58.), to provide more than adequate notice of its claim. GECIO's claim of a lack of adequate

6

notice of the trade secrets is disingenuous. The context and circumstances under which the Non-Disclosure Agreement was signed provide ample evidence that proprietary information was provided (and continue to be updated and upgraded) when the software code was placed on GEICO's servers. The specific provisions in the Complaint listed above provide additional adequate notice as to the trade secrets alleged. GEICO's request for more specificity would result in full disclosure on the public record – thereby no longer maintaining their trade secret status.

GEICO is also well aware these programs that comprise part of the Supercede system have value. They are paying for them. Further, they are blatantly willing to incorporate them into other systems in order to get the capabilities to fulfill their desire for a nationwide system. Sharing Capricorn's proprietary information with developers who are creating a competing product is a glaring indication of the independent value of Capricorn's Trade Secrets. Further, the Non-Disclosure Agreement signed by the parties evidences the efforts Capricorn has made to maintain secrecy.

The background and context reveal what is really happening in this case. GEICO claims this is a last effort by Capricorn to extract a final windfall. See GEICO's Motion To Dismiss (hereafter, "Motion") at 1. The facts do not bear this out. The parties maintain a contract for the license of the Supercede program. Capricorn continues to derive other compensation through other services provided to GEICO. GEICO is a behemoth trying to steamroll over a small "mom and pop" operation by taking Capricorn's proprietary trade secrets and assimilating what it needs to improve its nationwide claims management system and improve its application to the New York office.

GEICO is aware that at the pleading stage there is a very low threshold to overcome a Motion To Dismiss on trade secret claims. The cases GEICO relies on are predominantly cases being decided on summary judgment on a full record. GEICO could have easily filed an Answer in this case to move it forward expeditiously and with less expense. It did not. Instead, it is trying to use its immense resources to force Capricorn, a much smaller company with far less resources, to relent and submit, accepting that GEICO will make it prohibitively expensive for Capricorn to be able to stop GEICO from misappropriating its trade secrets and software and implementing for GEICO's benefit.

GEICO's motion to dismiss Claims II and III should therefore be denied.

## II. CAPRICORN HAS PLED ADEQUATE FACTS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

A complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In considering a motion to dismiss, the court must accept as true the factual allegations set forth in the complaint, and draw all reasonable inferences in the plaintiffs' favor. *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).

After *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.'" *Id*. (quoting *Iqbal*, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context—specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S. Ct. at 1950.

Only if the complaint cannot state any set of facts that would entitle the plaintiff to relief should it be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993).

    a.  <u>Plaintiff's Complaint Adequately Identifies and Discloses it's Claimed Trade Secrets</u>

In order to survive a motion to dismiss, a plaintiff need not spell out the details of the trade secret but must identify the trade secret with sufficient particularity to give defendants reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery. See *Medtech Products, Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) (citing *SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 586 (E.D.N.Y. 2007) (denying motion to dismiss where plaintiff alleged the existence of legitimate trade secrets, and making it clear that plaintiff "has no obligation to reveal those secrets in the Complaint simply to prove that they exist"); *Gaetano Asocs. Ltd. v. Artee Collections, Inc.*, 2006 U.S. Dist. Lexis 77144, at *7 (S.D.N.Y. Oct. 25, 2006) (addressing argument that defendants' trade secret misappropriation counterclaim failed to specify certain details, by stating that "[u]nder the notice pleading standard . . . defendants are not required to do so")); *Autodesk, Inc. v. Zwcad Software Co.*, 2015 U.S. Dist. LEXIS 63610, *14 (N.D. Cal. May

9

13, 2015); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991).

In an analogous case, this Court denied a motion to dismiss a trade secret claim, finding that the Plaintiff's identification of its confidential information as "checkout counter programs and its business model, plan-o-grams and designs, methods and procedures . . . including creating and designing the specific Program for [the defendant]" sufficient. *Dorset Ind. v. Unified Grocers, Inc.*, 893 F Supp 2d 395, 411 (E.D.N.Y. 2012).

Following the points clearly and plainly articulated in *Dorset*, the Complaint clearly sets forth a detailed definition of "Capricorn's Trade Secret." Paragraph 53 of the Complaint describes Capricorn's Trade Secret as "highly customized modules and methods for maximizing efficiency in the management and adjustment of claims. . . " See D.E. 1 at ¶ 53. The Complaint further defines "modules" as "programs that are add-ons to [CMS's] Supercede system." *Id.* at ¶ 19. The Complaint also discloses specific details of Capricorn's Trade Secrets, as outlined below:

- Paragraph 55: "enable the customization and automation of the claims management process";
- Paragraph 56: "enable enhanced fraud detection as part of the claims management process";
- Paragraph 57: "enable monitoring of the efficiency of GEICO employees";
- Paragraph 58: "enable the detection of abusive and/or fraudulent prescription of narcotic drugs."

These allegations disclose Capricorn's Trade Secrets to a degree that surpasses the pleading standards set forth in *Iqbal* and *Twombly*. If the allegations in the Complaint are taken as true, GEICO's unauthorized taking of CMS' proprietary modules and methods gives rise to a reasonable inference that GEICO is liable for misappropriation of CMS's trade secrets and a breach of the Non-Disclosure Agreement.

10

      b.   The Heightened Pleading Standard Proposed by GEICO is Not Supported by Case Law

GEICO urges this court to adopt a heightened pleading standard. But the cases on which it relies are not cases decided on a motion to dismiss, but are readily distinguishable on the grounds that they are dispositions of summary judgment motions. *See* Motion at 6-7 (citing *Big Vision Private Ltd. v. E.I. DuPont de Nemours & Co*, 1 F Supp 3d 224 (S.D.N.Y. 2014) (the court dismissed plaintiff's claims at summary judgment due, in part, to plaintiff's inability to provide a consistent, specific identification of its trade secret after extensive discovery); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) (affirming the lower court's dismissal of trade secret claims at summary judgment due to plaintiff's failure to specifically identify its trade secret after discovery).

In *IDX Sys. Corp. v. Epic Sys. Corp.* the district court explicitly recognizes the different levels of specificity required for identifying trade secrets at the pleading stage, compared to summary judgment and trial. 165 F. Supp 2d 812, 816 (W.D. Wis. 2001), *aff'd* 285 F.3d 581 (7th Cir. 2002). As the court explained, "[a]t the complaint stage, with its notice pleading requirements . . . plaintiff is not and cannot be expected to plead its trade secrets in detail." *Id*. This is because "[s]uch a public disclosure would amount to an effective surrender of trade secret status." *Id*. In contrast, by the summary judgment and trial stages, when protective orders are in place, the "plaintiff must describe its trade secrets in sufficient detail such that a reasonable jury could find that plaintiff established each element of a trade secret." *Id*. at 817 (citing *Trandes Corp. v. Guy F. Atkinson*, 996 F.2d 655, 661 (4th Cir 1993)).

This approach is consistent with decisions of courts across the country which have generally recognized the level of specificity in which plaintiff's trade secret is described, is not

11

high. See *SBM Site Services., LLC v. Garrett*, No. 2012 U.S. Dist. LEXIS 24130, *29 (D. Colo. Feb. 27, 2012) (denying defendant's motion to dismiss, noting that "[c]ourts have only dismissed a claim for lack of specificity on the pleadings in the most extreme cases," and citing as an example a complaint that merely recites the statutory language); *nexTUNE, Inc. v. McKinney*, 2013 U.S. Dist. LEXIS 13303, at *13 (W.D. Wash. Sept. 17, 2013) ("the issue of whether Plaintiff's documents contain trade secrets is not appropriate for review on a motion to dismiss. . . ."). Dismissal has been denied even where the trade secret allegations are thin and provide little more than conclusory allegations or categorical descriptions of the claimed trade secret. See *Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, 2014 WL 7070907, at *5 (W.D. Ark. Dec. 12, 2014); *Medtech Prods., Inc.*, 596 F. Supp. 2d at 790.

GEICO has no support for seeking to impose heightened specificity standards of a type which may prevail at trial and summary judgment, to the pleading stage. Its efforts are unsupported by any of the cases it cites. Under the appropriate notice pleading standard to be applied, as set forth in Fed. R. Civ. P. 8, and further construed by the U.S. Supreme Court in *Iqbal* and *Twombly*. Capricorn's factual allegations set forth a plausible claim for relief. GEICO's motion to dismiss should be denied.

    c. <u>Capricorn Has Adequately Pled Facts Establishing the Reasonable Efforts Undertaken to Maintain the Confidentiality of its Trade Secrets</u>

Capricorn has also pled sufficient facts regarding its efforts to maintain the confidentiality of its trade secrets. GEICO has no support for its position to the contrary. Paragraph 53 of the Complaint explicitly alleges that Capricorn only disclosed its trade secrets to GEICO after GEICO executed a Non-Disclosure Agreement, which by itself is *prima facie* evidence that CMS has taken reasonable efforts to maintain secrecy. DE 1 at ¶ 53. Paragraphs

59 and 60 go on to further clarify that these trade secrets are held in confidence by Capricorn, disclosed only to GEICO once such disclosure was under the protection of the aforementioned Non-Disclosure Agreement. *Id*. at ¶¶ 59-60. Capricorn has established its reasonable efforts to maintain the Trade Secrets and need not plead any more detailed facts at this stage. *See Gaetano Assocs.*, 2006 U.S. Dist. LEXIS 77144, *7 (steps taken to preserve secrecy of the information need not be disclosed at the pleading stage).

GEICO recites six factors which are relied on by the courts to determine whether particular information constitutes a trade secret. See Motion at 12. These factors include the extent to which the information is known outside of the business and the extent of measures taken to guard the secrecy of the information. But courts have held that these factors are "difficult to apply in the absence of discovery, making their consideration sometimes futile in the context of a motion to dismiss." *Medtech Prod., Inc.*, 596 F. Supp. 2d at 787 (citing *SD Protection, Inc. v Del Rio*, 498 F. Supp. 2d 576, 585-86 (E.D.N.Y. 2007) ("To consider these factors now [on a motion to dismiss] would be premature . . . Without discovery, I cannot possibly weigh the six factors. . .")). Therefore, these factors should not form the basis for a motion to dismiss. *See id*.

Capricorn has pled that it maintains its trade secrets in confidence. It has not shared its trade secrets with any third party except for GEICO and GEICO's access to Capricorn's trade secrets was limited by a Non-Disclosure Agreement. These factual allegations are sufficient at the pleading stage. See *Gaetano Assocs.,* 2006 U.S. Dist. LEXIS 77144, *7; See also *Dealertrack, Inc. v. Huder*, 460 F. Supp.2d 1177, 1184 (C.D. Cal. 2006) (finding requirement that other corporation sign confidentiality agreements to be a reasonable step to ensure secrecy).

13

    d.  <u>Capricorn Has Adequately Pled the Independent Economic Value of its Trade Secrets</u>

Plaintiff CMS is "a software company that designs and provides applications for software for insurance companies," such as GEICO. DE 1 at ¶ 12. The Supercede program and modules which comprise Capricorn' Trade Secrets would certainly be valuable to any other insurance provider. Undoubtedly, the ability to monitor the efficiency of employees and detect the fraudulent prescription of narcotics would be a marketable product to any of GEICO's competitors. *Id.* at ¶¶ 57, 58. By signing the Non-Disclosure Agreement, GEICO recognized that the software and information CMS provided to it were confidential and proprietary. GEICO also fails to mention the fact that it pays CMS hundreds of thousands of dollars annually to use Capricorn's Supercede claims management system which defeats GEICO's argument that these Trade Secrets have no value.

At the pleading stage, Capricorn need not provide an explanation of the economic value of its Trade Secrets in great specificity. In fact, courts have declined to dismiss claims for trade secret misappropriation where the complaint alleges generally that the trade secret derived independent economic value from not being generally known. See *Superior Edge, Inc. v. Monsanto Co.,* 964 F. Supp. 2d 1017, 1042 (D. Minn 2012) (value inferred from allegations that the information is not known or readily ascertainable); *GSI Tech. v. United Memories, Inc*., 2014 U.S. Dist. LEXIS 54371 (N.D. Cal. Apr. 18, 2014) (motion to dismiss denied based on broad allegations that trade secret had independent economic value arising from its secrecy). Capricorn has alleged that its Trade Secrets derive independent economic value from not being generally known or readily ascertainable. *See* D.E. 1 at ¶74.

The mere fact that Capricorn made certain customizations in the Supercede program for GEICO does not preclude the existence of a trade secret. In *Dorset*, the plaintiff had also

14

disclosed in the complaint that the program in which it claimed trade secret protection was created specifically for the defendant. *Dorset*, 893 F. Supp. 2d at 411. Nonetheless, the court denied defendant's motion to dismiss. *Id.* The mere fact that a program was designed for a particular customer does not eliminate the possibility of that program being protectable as a trade secret.

Capricorn is financially harmed by third party access to its Trade Secrets in at least two ways. First, CMS has competitors who also offer insurance claims management systems. If those third party competitors obtained Capricorn's proprietary information and know-how for free, these competitors can keep their bids lower as they avoid the costs associated with allocating resources and capital in research and development. In that way, competitors gain a valuable competitive advantage, resulting in loss to Capricorn.

CMS's Complaint also alleges that its Trade Secrets were disclosed and used by GEICO and third-parties to make competitive products to those of Capricorn (*id.* at ¶¶ 66-78), thereby allowing third party competitors to significantly lower bids for associated services, and consequently forcing Capricorn to lower its pricing. *Id.* at ¶¶ 79-85. These allegations, compounded by the facts that GEICO currently pays a licensing fee for these programs, and other insurance companies would value software that performs the same functions as Supercede, defeat GEICO's position that Capricorn failed to allege an independent economic value of Capricorn's Trade Secrets.

### III. CONCLUSION

Capricorn's well-pled Complaint sets forth detailed factual information regarding the existence of Capricorn's Trade Secrets, as incorporated in the Supercede program, and the misappropriation of those trade secrets in violation of the Maryland Uniform Trade Secrets Act

15

and the Non-Disclosure Agreement signed by both parties. Capricorn's allegations provide GEICO with reasonable notice of its claims and the trade secrets. As such, Capricorn's complaint satisfies the notice pleading standard of Fed. R. Civ. P. 8 and *Iqbal* and *Twombly*. GEICO's motion to dismiss should be denied in its entirety.

Respectfully submitted for Plaintiff,

By:   /Thomas P. Gulick/

Jess M. Collen (JC 2875)
Thomas P. Gulick (TG 5602)
Kristen A. Mogavero (KM 9842)
COLLEN *IP*
The Holyoke-Manhattan Building
80 South Highland Avenue
Town of Ossining
Westchester County, New York 10562
(914) 941 5668
(914) 941-6091 (facsimile)
Attorneys for Capricorn Management Systems, Inc.

Dated: October 14, 2015

16