UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NW YORK
--------------------------------------------------------X
CAPRICORN MANAGEMENT SYSTEMS, INC.,

                Plaintiff,                      **MEMORANDUM & ORDER**

    -against-                                15-CV-2926 (DRH)(SIL)

GOVERNMENT EMPLOYEES
INSURANCE CO.,

                Defendant.
--------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**
**Collen *IP***
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
By:    Jess M. Collen, Esq.
          Thomas P. Gulick, Esq.
          Kristen A. Mogavero, Esq.

**For Defendant:**
**Vinson & Elkins LLP**
666 Fifth Avenue, 26th Floor
New York, New York 10103
  and
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, D.C. 20037
By:    Clifford Thau, Esq.
          Marisa Antos-Fallon, Esq.
          Charles D. Ossola, Esq.
          Matthew J. Ricciardi, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff Capricorn Management Services Inc. ("Plaintiff" or "Capricorn") commenced

this diversity action against defendant Government Employees Insurance Co. ("Defendant" or

"GEICO") asserting claims for breach of a licensing agreement (Count I), breach of a non-disclosure agreement (Count II) and misappropriation of trade secret under Maryland Law (Count III). Presently before the Court is defendant's motion to dismiss Counts II and III. For the reasons set forth below, the motion is denied.

## BACKGROUND

The following allegations are taken from the Complaint and presumed true for purposes of this motion.

Capricorn is a software company that designs and provides application software and related services for insurance companies and medical billing services. (Compl. ¶ 12.) Capricorn has provided software and services in New York to GEICO for 35 years, including "software for the transmission, handling, and management of automobile insurance medical bills" called Supercede. (*Id*. ¶¶14, 16.) Plaintiff also developed "module programs that are add-ons to its Supercede system (a claims management system) including for example, Arbitration Entry, which generates entries for arbitrations, and Affidavit Print, which prepares affidavits for printing." (*Id*. ¶19.) "The module programs within the Supercede system are proprietary to Capricorn" and "[s]ome of these modules and the customization and compilation are maintained as a trade secret." (*Id*. ¶¶ 20-21.)

<u>The Lease Agreement</u>

Capricorn and GEICO have entered into Lease and Royalty Agreements for the Supercede software and modules, the latest of which was executed on September 1, 2013 and is set to expire on August 31, 2016, with an option to renew for an additional year (the "Lease Agreement"). (*Id*. ¶¶ 22-27.) The Lease Agreement "show[s] the Parties' intent that the

Supercede software and modules are to be used by GEICO exclusively in New York. (*Id*. ¶ 29.) Although Capricorn has offered to negotiate a licensing agreement with GEICO to permit the use of Capricorn's software outside of New York, GEICO has declined to pursue such negotiations. (*Id*. ¶¶ 32-33.)

In 2009 Capricorn began to develop a Supercede module called "Encovel Detection" to detect fraud relating to Nerve Conduction Velocity tests ("NCVs"), which are tests in which peripheral nerves in the arms and legs are stimulated with an electrical impulse to cause the nerve to depolarize. (*Id*. ¶¶ 34-35.) During "the process of developing the software for the Encovel Detection module, Capricorn devised certain know-how and proprietary methods for processing large amounts of data to detect fraud." (*Id*. ¶ 36.) "Capricorn also has a sophisticated program which helps verify and investigate certain medical providers." (*Id*. ¶ 38.) GEICO's use of the Encovel Detection program led to a lawsuit against various medical service providers in which GEICO alleged it was erroneously billed over twenty-three million dollars. (*Id*. ¶ 39.) "Based on the success of its Encovel Detection software, Capricorn also created complementary/ancillary programs called "Encovel Report" and "Encovel Alert."

Outside of New York, GEICO uses a program called ATLAS "for the maintenance and handling of insurance claims" but ATLAS "lacked the sophisticated NCV fraud detection system available in Supercede through the Encovel detection system." (*Id*. ¶¶ 42-44.) It is alleged that "GEICO used and is using a copy of Capricorn's Encovel Detection program or derivative work based on Capricorn's Encovel Detection program in GEICO's ATLAS system in the forty-nine (49) other states outside New York, as well as in the District of Columbia, in violation of the terms of the Lease [] Agreement." (*Id*. ¶¶ 47-49.)

3

The Non-Disclosure Agreement

Capricorn and GEICO entered into a Non-Disclosure Agreement in August 2005 (the "NDA") when Capricorn was asked to provide a master copy of the Supercede program at GEICO's Washington. D.C. facility. (*Id*. ¶¶ 50-51.) Since the signing of the NDA "Capricorn has diligently developed highly customized modules and methods for maximizing efficiency in the management and adjustment of claims and information for GEICO (hereinafter referred to as 'Capricorn's Trade Secrets')." (*Id*. ¶53.) Capricorn's Trade Secrets enable (1) "the customization and automation of the claims management process," (2) "enhanced fraud detection as part of the claims management process," (3) "monitoring of the efficiency of GEICO employees," and (4) "the detection of abusive and/or fraudulent prescription of certain narcotic drugs." (*Id*. ¶¶ 55-58.) "Capricorn's Trade Secrets and related information pertaining to their creation, functionality, organization, compilation, and management are held in confidence by Capricorn as a company trade secret" and it does not disclose its trade secrets to anyone other than GEICO, to which disclosures were made under the terms of the NDA. (*Id*. ¶¶ 59-60.) It is alleged GEICO copied and incorporated Capricorn's trade secrets directly into the ATLAS system, as well as disclosed Capricorn's confidential information to competitors of Capricorn. (*Id*. ¶¶ 62-85.)

Based on the foregoing, Capricorn asserts claims two claims for breach of contract, one for breach of the Licensing Agreement and one for breach of the NDA, as well as a claim for misappropriation of a trade secret under Maryland law.

## DISCUSSION

I.     **Motion to Dismiss Standard**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between

5

possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.[1]

## II. The Complaint Adequately Specifies Capricorn's Trade Secrets

Defendant asserts that both Counts I and II must be dismissed because of an alleged lack of specificity in defining Capricorn's trade secrets.

As recently stated in *Next Commc'ns Inc. v. Viber Media, Inc.*, 2016 WL 1275659 (S.D.N.Y. March 30, 2016):

> a plaintiff must, "at minimum, generally identify the trade secrets at issue." *Alexander Interactive, Inc. v. Leisure Pro Ltd.*, No. 14-cv-2796 (PKC), 2014 WL 4651942, at *5 (S.D.N.Y. Sept. 16, 2014). However, "specificity as to the precise trade secrets misappropriated is not required in order ... to defeat ... Motions to Dismiss." *Medtech Prods. Inc. v. Ranir*, LLC, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008); *see also SD Prot., Inc. v. Del Rio*, 498 F. Supp. 2d 576, 586 (E.D.N.Y. 2007) ("Naturally, [plaintiff] has no obligation to reveal those secrets in the Complaint simply to prove that they exist."). In other words, "a plaintiff only need give the opposing party fair notice of what the plaintiff's claim is and the grounds on which it rests." *Alexander Interactive, Inc.*, 2014 WL 4651942, at *4. . . . "[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Integrated Cash Mgmt. Serv., Inc. v. Dig. Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) (citation omitted); see also Restatement (First) of Torts § 757, cmt. b (Am.

---

[1] Consistent with its obligations on a motion to dismiss, the Court has not considered the allegations in the "Factual Background" section of GEICO's Memorandum (see Def.'s Mem. at 2-4) as those allegations are not contained in the Complaint.

> Law Inst. 1939) ("A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."). In sum, "New York and Second Circuit law establish that compilation trade secrets are protectable but ... the law requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed and to show that its compilation is unique." *Sit-Up Ltd. v. IAC/ InterActiveCorp.*, No. 05-cv-9292 (DLC), 2008 WL 463884, at *10 (S.D.N.Y. Feb. 20, 2008) (emphasis added).

2016 WL 1275659, at *3.

Capricorn's allegations meet the standard for pleading a trade secret. The complaint alleges that its program Supercede and its highly customized modules and methods enable (1) "the customization and automation of the claims management process," (2) "enhanced fraud detection as part of the claims management process," (3) "monitoring of the efficiency of GEICO employees," and (4) "the detection of abusive and/or fraudulent prescription of certain narcotic drugs." (*Id.* ¶¶ 55-58.) Capricorn's description is sufficient "to discern the general contours of the alleged trade secrets without compromising their secrecy and for Defendant to be put on notice of the claim." *Next Commc'ns*, 2016 WL 1275659 at *3. *Cf. E.J. Brooks Co. v. Cambridge Sec. Seals*, 2015 WL 9704079, at *9 (S.D.N.Y. Dec. 23, 2015) (finding description of trade secret as "manufacturing processes used to create" security seals sufficiently specific); *Sorias v. National Cellular USA, Inc.,* 2015 WL 5093344, at *13 (E.D.N.Y. Aug. 27, 2015) (description of trade secret as "data and designs of a specific phone charger with horizontally folding A/C prongs" sufficient to state a claim for trade secrets); *Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008)(descriptions of trade secrets that included the "manufacturing cost details, drawings, test data, and other information about the design and

7

manufacturing process for its dental protectors" sufficient to state a claim for misappropriation of trade secrets). To the extent the exact contours of Capricorn's trade secrets are unclear, GEICO can explore those contours through discovery.

To the extent Defendant seeks dismissal of Counts I and II for lack of specificity in defining Capricorn's trade secrets, the motion is denied.

### III. Misappropriation of a Trade Secret under Maryland Law

The Maryland Uniform Trade Secrets Act ("MUTSA") provides statutory remedies for misappropriation of a trade secret. *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 301, 849 A.2d 451 (Md. 2004). MUTSA defines "trade secret" as "information, including formula, pattern, compilation, program, device, method, technique, or process, that (1) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Md. Code Ann. Com. Law § 11-201(e).

In support of its motion to dismiss, GEICO asserts that the complaint fails to sufficiently plead a trade secret in that the software in question does not have independent economic value and were not the "subject of efforts reasonable under the circumstances to maintain [their] secrecy." The Court will address each of these contentions in turn.

#### A. The Complaint Adequately Alleges Independent Economic Value

GEICO argues that as Capricorn has plead that the software is highly customized for GEICO, "[a]s a matter of common sense, software "highly customized " for one company is of little utility and therefore of little value to another company." Def.'s Mem. at 11. In addition it

8

asserts that to the extent the software implements more generally applicable insurance industry functionality it would fail to meet to the "independent economic value" requirement "because "its value would then not be derived 'from not generally known to, and not being readily ascertainable by proper means, by other persons' but rather from the very fact that it implements well-know and common requirements applicable to others in the insurance industry." Def.'s Mem. at 11. The Court is underwhelmed by these arguments, neither of which are supported by citation to relevant case law.

The assertion that the software has little value to another company because it is highly specialized for GEICO refers only to its value to another insurance company. The mere fact that the program was designed for a particular customer does not eliminate the possibility of the program being protectable as a trade secret. *See Dorset Ind. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 411 (E.D.N.Y. 2012). Additionally, in examining economic value, the universe of comparables is not limited to other insurance companies. It is appropriate to consider the value of the software to competitors of Capricorn. *See LaJeune*, 381 Md. at 309-10 (finding company's cost and profit information and detailed specifications of its currency acceptance machines had economic value to its competitor and thus met economic value portion of definition for a trade secret); *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600 (D. Md. 2002) (information on database was not ascertainable by competitor and that information had economic value because it could help competitor develop new products). Here, as Capricorn aptly notes, it has competitors who also offer insurance claims management systems and if they obtain Capricorn's proprietary information and know-how they can "avoid the costs associated with allocating resources and capital in research and development." Pl.'s Mem. in Opp. at 15. Indeed, it is alleged that GEICO

9

has shared Capricorn's trade secrets with third parties to make products competitive to those of Capricorn.

Finally, contrary to GEICO's assertions, to the extent the software "implements well-known and common requirements" of the insurance industry it does have economic value. That the requirements it implements are well-known is not, as GEICO suggests, the relevant benchmark. It is the software's "proprietary methods for processing large amounts of data" required to be processed by those well-known and common requirements that provides economic value.[2]

### B. The Complaint Adequately Alleges Reasonable Effort to Maintain Secrecy

With respect to efforts to maintain secrecy, GEICO asserts that the mere-existence of a non-disclosure agreement does not establish the requisite secrecy and faults the complaint for not covering the wide array of factors that Maryland courts look to in determining whether the information sought to be protected were the subject of efforts to maintain their secrecy. Def.'s Mem. at 12-13. While Maryland courts do indeed look to a variety of factors to *determine* whether the information claimed as a trade secret has been the subject of efforts to maintain their secrecy, *see, e.g., Home Paramount Pest Control Co., Inc. v. FMC Corp.*, 107 F. Supp. 2d 684 (D. Md. 2000); *Bond v. Polycycle, Inc.*, 127 Md. App. 365, 372-73, 732 A.2d 970 (Md. App. 1999), Plaintiff's burden is not to *establish* reasonable efforts to maintain secrecy but to allege facts that make that claim plausible. At least one court has held that under Maryland law "[t]he existence of [a] Confidentiality Agreement easily satisfies the second part of the trade secret

---

[2] Indeed, it seems disingenuous for GEICO to argue that the software has no economic value given that it has been paying a licensing fee for Capricorn's programs since 2008, *see* Comp. ¶ 22.

definition for the purposes of a Rule 12(b)(6) motion." *RaceRedi Motorsports, LLC v. Dart Machinery, Ltd.*, 640 F. Supp. 2d 660, 668 (D. Md. 2009); *accord Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1184 (C.D. Cal. 2006) (requiring other corporations to sign confidentiality agreements is a reasonable step to ensure secrecy sufficient to withstand motion to dismiss). *Cf. LeJeune,* 381 Md. at 310 (finding on motion for a preliminary injunction that reasonable measure to maintain secrecy of pricing and cost information was demonstrated, inter alia, by company's negotiation of non-disclosure agreements with its customers to prevent them from discussing prices with other customers).

## CONCLUSION

Defendant's motion to dismiss is denied.

Dated: Central Islip, New York
April 6, 2016

/s/   Denis R. Hurley
Denis R. Hurley
United States District Judge