

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

*Richard C. Schoenstein, Partner*
212.216.1120
rschoenstein@tarterkrinsky.com

January 10, 2017

*Via ECF*

Magistrate Judge Steven L. Locke
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

> Re: **Capricorn Management Systems, Inc. v. Government Employees Insurance Co., 15-cv-02926-DRH-SIL**

Dear Magistrate Judge Locke:

    We represent Plaintiff Capricorn Management Systems, Inc. ("Plaintiff") in this matter, and I write further to the proceedings before Your Honor on December 19, 2016.

**Introduction and Intent to Amend the Complaint**

    Today we have provided counsel for Defendant Government Employees Insurance Co. ("GEICO") with an Amended Complaint, which Plaintiff intends to file against GEICO and a new defendant, Auto Insurance Solutions, Inc. ("AIS"). The role of AIS in this matter was mentioned in the original Complaint herein, but Plaintiff believes it has valid claims against AIS that should be pursued. Plaintiff has requested that GEICO consent to the filing of the Amended Complaint, to avoid unnecessary motion practice. As Your Honor noted at the December 19, 2016 conference, there would be no discernable prejudice to GEICO in the filing of an Amended Complaint (12/19 Tr. at 31-32). This is especially true since discovery has been stayed for months at the request of GEICO.

    While GEICO considers consenting to the filing of the Amended Complaint, and should such consent be granted, Plaintiff will not seek to reopen full discovery at this time. Instead, Plaintiff believes that the Amended Complaint should be filed and responses should be had – including from the additional defendant – before discovery is reopened.

    Nonetheless, Plaintiff submits that the production of the source code for GEICO's ATLAS claims management system can proceed. While the source code is only one aspect of this case, its production has been an ongoing matter for the parties and the Court, and there is no reason to delay it further. Accordingly, the remainder of this letter is addressed to Plaintiff's application to compel GEICO to produce its source code in electronic form.

Hon. Steven L. Locke
January 10, 2017
Page 2 of 6

**The Stipulated Protective Order**

As the Court will recall, negotiations between the parties and the prior involvement of Your Honor lead to the entry of a Stipulated Protective Order on or about October 11, 2016 (the "SPO"). In its Paragraph 6, the SPO set forth a procedure for the production of computer program source code as follows:

> 6. Computer program source code and database schema (collectively, "Source Code") may, at the election of the Producing Party and in lieu of production to the Receiving Party, be made available for inspection by the Receiving Party in the New York office of the Producing Party's outside counsel of record in this action, or another mutually agreeable location, during normal business hours and with reasonable notice. Source Code shall be designated as "Highly Confidential" Information and only those individuals otherwise authorized to receive Highly Confidential Information may inspect the Source Code. Source Code shall be made available on a dedicated Source Code review computer together with software tools installed by the Producing Party as reasonably requested, and if necessary purchased, by the Receiving Party. Other than the Source Code review computer, no electronic or photographic devices shall be permitted in the Source Code inspection room. Individuals performing the inspection may take handwritten notes but may not copy any portion of the Source Code verbatim. Such handwritten notes shall be protected work product, not subject to discovery by the Producing Party, and may be retained by the Receiving Party, provided, however, that they are labeled and handled as Highly Confidential Information. The Receiving Party may also designate specific portions of Source Code not exceeding a reasonable number of total pages and containing no more than a reasonable number of consecutive lines of Source Code for production by the Producing Party to the Receiving Party. The Parties shall work together in good faith to agree on the bounds of reasonableness in this context. However, should the parties fail to agree upon the reasonable amount of specific Source Code to be produced, and only after a good faith negotiation between counsel to reach such an agreement, each party reserves the right to seek relief from the Court to determine, after hearing, the reasonable amount of Source Code to be produced by the Producing Party. Whatever the "reasonable" amount of specific Source Code to be produced by the Producing Party to the Receiving Party, such production shall be marked "Highly Confidential" before it is produced to the Receiving Party. During the inspection, the results and output of any software review tools, which will only be available on the review computer, shall be maintained as attorney work-product; without prejudice, however, to the right of the Producing Party to apply to the Court, pursuant to Rule FRCP 26 or any other applicable rule, to obtain access to such "attorney work product," in whole or in part, in further proceedings in this Court. The "reasonable" amount of specific Source Code to be produced by the Producing Party shall not under any circumstances be considered or treated as "attorney work product" of the Reviewing Party. Upon completion of the inspection, the Receiving Party maintains the right to delete the reviewing software tools.

Paragraph 17 of the SPO expressly states that "[t]his Order shall not prevent any Producing or Receiving Party from applying to the Court for further or other protective orders or for modifications of this Order." Accordingly, neither the parties nor the Court intended that the SPO would necessarily be the final word on discovery. This application to modify the SPO is timely and, for the reasons set forth below, meritorious.

Furthermore, and contrary to the argument of GEICO at the December 19 hearing, the SPO does not require Plaintiff to put its source code on a computer at the offices of GEICO's counsel. While Plaintiff did initially contemplate such a procedure, as discussed below the approach has changed. In any event, GEICO has long had custody of both the maser copy and the operative version of the source code for the version of Supercede (Plaintiff's claims management platform) being run for GEICO. And it has the source code *in electronic form.*

Thus, there is no substance to GEICO's objection that Plaintiff somehow "failed" to load a copy of Supercede into a computer at the office of GEICO's counsel. Nonetheless, and simply to obviate this issue, Plaintiff will make available an electronic copy of the current version of the Supercede platform being run for GEICO.

Additionally, there is nothing in the SPO about the sequence of discovery, or that would otherwise require review of the source code to be conducted prior to any other discovery. That issue was not discussed amongst counsel nor agreed to. At the end of the September 15, 2016 conference with Your Honor, GEICO requested that all other discovery be stayed while the source code production took place, and the Court granted that request. (9/15 Tr. at 37-40.) The reasoning of counsel for GEICO was that it needed to delay discovery until "we know what the case is about." (*Id.* at 37.) While we think this assertion is a delay tactic, more than anything, and while the Court has already denied a motion to dismiss the initial Complaint, thus sustaining the sufficiency of its pleadings, the Amended Complaint is intended in part to settle any doubts as to what this case is "about."

Accordingly, while Plaintiff does not presently seek to lift the stay on discovery, it will do so after the filing of the Amended Complaint is resolved and, if it is filed, responses are submitted.

### The Production of GEICO's Source Code

Whether now or after further proceedings in this matter, the production of GEICO's source code for its ATLAS case management system is germane to the case and necessary to a full and fair adjudication of the issues. That predicate does not seem to be in dispute. GEICO insists, however, that the source code should be produced only in a viewable format, on a computer in its counsel's offices, with Plaintiff's expert limited to the taking of handwritten notes. This is essentially the procedure contemplated in the SPO.

Subsequent to the September 15 conference, Plaintiff retained Michael R. Elliott as a consulting expert in this matter and disclosed that fact to GEICO. Mr. Elliott has substantial experience in cases of this nature, where there are allegations that computer systems or programs

have been copied or duplicated in violation of contract or law. As we informed GEICO, Mr. Elliott's view is that a review of GEICO's source code on a computer in a law firm office is highly inefficient and almost certainly insufficient for his purposes. His experience in these kinds of cases is that an electronic copy of the entire source code at issue, along with certain related materials, is necessary to facilitate a full and complete review.[1]

This is consistent with the state of the art practice in complex litigation involving allegations of trade secret misappropriation involving computer programs. *See generally* L. Loren & A. Johnson-Laird, Computer Software-Related Litigation: Discovery and the Overly-Protective Order, The Federal Courts Law Review, vol. 6, issue 1 (2012). As Loren & Johnson-Laird explain, computer software-related litigation in the modern age requires a complete production of the source code at issue. Among the many problems with any other methodology:

- Requiring the expert to review the source code outside of his own work environment limits his ability to perform comparative analysis, increases the time and expense of such analysis and substantially increase the chance of problems. The production at counsel's office does not facilitate compiling and running the program, which is necessary and may be time-consuming. It also creates unnecessary travel costs and dead time that are not efficient or productive. *See* Loren & Johnson-Laird at 33-43.

- Limiting the production to the source code itself excludes a number of items necessary to conduct a full review, including: the relevant configuration management system, revision control systems and/or source code tree, header files, makefiles, and supporting design documents. *See* Loren & Johnson-Laird at 18-20.

- Limiting the expert to handwritten notes is particularly restrictive and inconsistent with modern practice. This is a complicated technical analysis. *See* Loren & Johnson-Laird at 45-47

Accordingly, we requested that GEICO agree to an amendment of the SPO that would provide for production of an electronic copy of the source code, along with appropriate related material, under terms and conditions more than sufficient to address any confidentiality concerns. The intent is to permit Mr. Elliott a complete and meaningful review of the source code. GEICO rejected our request.

In short, the production of source code in a law firm's offices is wholly insufficient for the task at hand. Faced with a similar issue, Judge David Peebles of the Northern District of New York ruled, in another case that Mr. Elliott worked on, that the defendants' source code at issue was to be produced in its entirety and electronically. *Member Services, Inc. v. Security Mutual Life Ins.*, 2007 WL 2907540, at *6 (E.D.N.Y. Oct. 3, 2007). Judge Peebles found as follows:

---

[1] Given the agreement of the parties to pursue this issue by letter motion with page limits, we are not submitting an affidavit from Mr. Elliott at this time. We can represent to the Court that his testimony would be consistent with the statements herein, and that an affidavit could be procured in short order if it would assist the Court in determining this discovery dispute.

> "In this case plaintiffs are alleging . . . that the SML defendants thereafter stole from them concepts and source codes, and now request the opportunity to inspect the SML defendants' products, presented in a format which would permit a meaningful comparison and elicitation of an expert opinion regarding whether or not copying has occurred, and to avoid the time and effort and proneness to error which, plaintiffs' expert testified, could result from the requirement of converting the ActivEnroller code from hard cop to electronic format. I find this request to be eminently reasonable."

*Id.*

GEICO has not articulated any substantive basis sufficient to justify strict adherence to the SPO in lieu of a more fulsome electronic production. The Court will recall that, previously, GEICO asserted that the size of its source code made production prohibitive, but we understand now the entire code constitutes only a gigabyte or so of data and, accordingly, would be relatively simple and quick to copy. Indeed, software-related litigation often involves programs requiring several terabytes, Loren & Johnson-Laird at 15, dwarfing the size of the information at issue here.

GEICO has also indicated that its source code is confidential and a trade secret. At the same time, however, it apparently insists that Plaintiff's source code is neither confidential nor a trade secret. In fact, the Non-Disclosure Agreement executed by both parties provides that all of their "operations, technology and systems" are confidential and to be treated as trade secrets. Given the dispute here, however, production of those source codes is necessary. The SPO's strict provisions will protect the parties and the information they disclose. Additionally, appropriate use of encryption by GEICO can protect the confidentiality of its code. *See* Loren & Johnson-Laird at 34.

As mentioned above, GEICO already has Plaintiff's source code, in full, in electronic form. Therefore, GEICO's refusal to produce its own source code in a reciprocal matter creates an imbalance in this case that is unfair and impedes the search for truth. As Federal Rule of Civil Procedure 26(b)(1) admonishes, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the propose discovery outweighs its likely benefit." Every single one of these factors favors the production of the source code in electronic form, as requested by Plaintiff.

By contrast, at the end of the day the only argument available to GEICO to preclude production of the entire ATLAS source code, in electronic form, is that another method of production was contemplated in the SPO. It is respectfully submitted that the SPO also contemplated it might require amendment, and that the existence of a prior order should not preclude the use of a smarter, faster and better way to get to the facts at issue in this case.

Accordingly, Plaintiff respectfully submits that the SPO should be revised to call for the full production of the relevant source codes – for all parties – in electronic form along with the

relevant configuration management system, revision control systems and/or source code tree, header files, makefiles, and supporting design documents.

Alternatively, should the Court determine that, at least for the time being, production of source code should be limited to production at the office of counsel for the producing party, Plaintiff requests that GEICO be ordered to facilitate the installation of necessary operating systems and software, so that the review might be productive. Indeed, Paragraph 6 the SPO already requires that "Source Code shall be made available on a dedicated Source Code review computer together with software tools installed by the Producing Party as reasonably requested, and if necessary purchased, by the Receiving Party." GEICO's refusal to install *any* software prior to Plaintiff's previous inspection of the source code was a violation of this provision and effectively nullified the utility of that inspection.

Plaintiff appreciates Your Honor's attention to this matter and is available to address any questions or concerns the Court may have.

Respectfully submitted,

Richard C. Schoenstein

cc: Charles D. Ossola, Esq. (by ECF)
David Pfeffer, Esq.