

HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701

TEL   202 • 955 • 1500
FAX  202 • 778 • 2201

May 18, 2018

CHARLES D. OSSOLA
DIRECT DIAL: 202 • 955 • 1642
EMAIL: cossola@HuntonAK.com

**Via Electronic Case Filing**

FILE NO:  68026.6

Hon. Denis R. Hurley, U.S.D.J.
United States District Court
   for the Eastern District of New York
100 Federal Plaza
Central Islip, NY  11722

Re:   *Capricorn Management Systems, Inc. v. GEICO*
        Case no. 2:15-cv-02926-DRH-SIL

Dear Judge Hurley:

This firm represents defendant Government Employees Insurance Company ("GEICO") in the subject civil action.  We write jointly on behalf of GEICO and co–defendant Auto Injury Solutions, Inc. ("AIS") (collectively, "Defendants") pursuant to Individual Practice Rule 3(B) and the Scheduling Order, dkt. no 75, for leave to file two motions that would, if granted, each be dispositive of all claims filed by plaintiff Capricorn Management Systems, Inc. ("CMS") in this software trade secret misappropriation and breach of contract action:

First, Defendants seek leave to file jointly one Motion for Summary Judgment on all four of CMS's claims because, despite extensive document and deposition discovery (the period for which has now ended), there is no evidence that GEICO disclosed any of CMS's proprietary information to AIS or used CMS's proprietary information beyond the scope of its license.

Second, Defendants seek leave to file jointly one Motion for Sanctions, including entry of default judgment on CMS's claims and Defendants' counterclaims, because CMS and its chief executive, counterclaim–defendant Charles Silberstein, intentionally ordered the destruction of all CMS–related information on the laptop of Gerry DePace, the now–deceased CMS employee at the heart of this case, one month after filing this lawsuit and then failed to preserve data on CMS's computer systems for another two years while this case was pending.

I.   **Motion for Summary Judgment:  GEICO did not disclose CMS's proprietary information to AIS or use that information beyond the scope of its license.**

All of CMS's causes of action share one factual predicate—that GEICO misappropriated CMS's proprietary Supercede software by either (1) disclosing it to AIS in breach of a Non–Disclosure Agreement; or (2) using it beyond the scope of the License Agreement.  Months of intensive



Hon. Denis R. Hurley, U.S.D.J.
May 18, 2018
Page 2

document and deposition discovery have not only failed to adduce any evidence to support CMS's claims, but have confirmed their utter lack of merit.

As Defendants would detail in their proposed motion, GEICO dictated the business requirements to CMS for the Supercede software at issue here, in accordance with New York insurance regulations, to meet GEICO's business needs relating to medical bill review. *See* C. Silberstein Dep. 26:23-27:16 (Mar. 15, 2018). CMS, in turn, coded the Supercede bill review software to meet GEICO's business requirements. *See id.* at 34:13-35:6 and 70:20-71:5 ("Everything that is in Supercede, all 400 subprograms are created specifically for GEICO … at GEICO's behest [and] [a]t GEICO's request…."). As Dr. Silberstein acknowledges, GEICO owns the underlying business requirements, and CMS owns only the Supercede source code. *See id.* at 73:7-21. Equally important, Dr. Silberstein further acknowledges that others, like AIS, can properly develop software for GEICO that performs the same bill review functions as Supercede provided they do so without copying the Supercede source code. *See id.* at 99:8-19 ("They can go and develop it on their own."), 185:7-187:2, and 266:17-267:10 (admitting CMS source code is the only document that reveals CMS's proprietary processes).

Here, there is no evidence that GEICO ever disclosed CMS's source code to AIS or anyone else, or that AIS used CMS's source code to implement GEICO's new nationwide medical bill review system. To the contrary, the CMS software developer who wrote the Supercede source code, Gerry DePace, admitted before CMS brought this lawsuit that "they cannot be copying the code" because the new software was written in a different programming language. *See* C. Silberstein Dep. at 93:6-94:5. Despite now having completed extensive discovery, CMS still has no evidence to raise a genuine issue of material fact regarding any purportedly improper disclosure or unauthorized use of its source code. *See, e.g., id.* at 46:24-47:11(conceding CMS has only "suspicions"). Accordingly, Defendants respectfully request leave to move for summary judgment on this ground.

**II.    Motion for Sanctions:  CMS intentionally destroyed and failed to preserve highly material electronically stored information.**

"[U]pon finding that the party acted with the intent to deprive another party of the information's use in the litigation, [the Court] may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter default judgment." Fed. R. Civ. P. 37(e)(2). The court may infer intent from a party's actions. *Moody v. CSX Trans.*, 271 F. Supp.3d 410, 431 (W.D.N.Y. 2017). "Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information" because "the finding of intent … can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Comm. Notes on Rules—2015 Amendment.



Hon. Denis R. Hurley, U.S.D.J.
May 18, 2018
Page 3

One CMS employee, Gerry DePace, is central to the events underlying this action. He was resident in GEICO's Woodbury office for more than three decades, wrote the source code for the Supercede software that CMS claims was misappropriated, and, at Dr. Silberstein's instruction, used his insider access and personal Gmail e-mail account to surreptitiously gather confidential documents about GEICO's relationship with AIS and send them to Dr. Silberstein. *See, e.g.,* GEICO's Counterclaims, dkt. no. 69, at ¶¶ 7, 9, 17-19, and 23-49; C. Silberstein Dep. at 29:2-5 (describing DePace as the "principal author"). Mr. DePace died, following a long illness, one month after CMS filed this lawsuit. *See id.* at 43:22-44:24 (admitting to understanding CMS's duty to preserve evidence at the time of filing this lawsuit).

Despite the critical importance of Mr. DePace to CMS's lawsuit, Dr. Silberstein ordered that Mr. DePace's laptop be erased shortly after CMS filed this lawsuit:

```
Q.   Did Dr. Silberstein ask you to erase Gerry's laptop?
A.   Yes, yeah.
Q.   When did he ask you to erase Gerry's laptop?
A.   It was soon after Gerry's death...
```

Anderson Dep., at 121:9-11 (Mar. 21, 2018); *see also* C. Silberstein Dep. at 228:23(admitting that DePace's Gmail e-mails "died with him" because CMS failed to preserve them).

Further, as first acknowledged in a letter from its counsel just eleven days before the close of fact discovery, CMS failed to collect and preserve the data on its own computer network for more than *two years* after filing this lawsuit, again leading to the loss of highly relevant information. Corresp. fr. R. Schoenstein to M. Ricciardi, at 3 (Mar. 20, 2018). Indeed, CMS failed to produce *any* ESI for twelve (12) of the fourteen (14) CMS custodians for whom it *agreed* to search and produce documents. *See, e.g.,* Corresp. fr. M. Ricciardi to R. Schoenstein, at 1 (Feb. 16, 2018). In short, Defendants seek leave to file a motion for sanctions, including the entry of default judgment on all claims, based upon CMS's egregious spoliation of highly relevant evidence.

*     *     *

Defendants respectfully request a pre–motion conference to address their (1) motion for sanctions for intentional and egregious spoliation of evidence; and (2) motion for summary judgment. Defendants further respectfully submit that referring one or both motions to Magistrate Judge Locke, who has overseen discovery and is familiar with the issues and parties, for a report and recommendation, would be in the interests of all parties and the Court. In Defendants' view, an evidentiary hearing would allow the efficient presentation of the evidence necessary to resolve the sanctions motion.



Hon. Denis R. Hurley, U.S.D.J.
May 18, 2018
Page 4


Respectfully submitted,

*/s/ Charles D. Ossola*

Charles D. Ossola, Esq.


cc: Counsel of Record (via CM/ECF)