

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

*Richard C. Schoenstein, Partner*
212.216.1120
rschoenstein@tarterkrinsky.com

May 23, 2018

*Via ECF*

Hon. Denis R. Hurley, U.S.D.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY  11722

   Re: *Capricorn Management Systems, Inc. v. Government Employees Insurance Co., 15-cv-02926-DRH-SIL*

Dear Judge Hurley:

  We represent Plaintiff Capricorn Management Systems, Inc. ("Plaintiff" or "CMS") in this action and we write in response to the May 18, 2018, letter from counsel for defendants Government Employees Insurance Company ("GEICO") and Auto Injury Solutions, Inc. ("AIS") (collectively, "Defendants") seeking leave to bring on motions for summary judgment and sanctions. The proposed motions would be without merit and purely dilatory, intended to frustrate the efforts of Plaintiff and its 80-plus-year-old owners to finally bring this matter to trial. We should not waste time with these baseless applications and, even if they proceed, this case should nonetheless be set for a prompt trial on the merits.

**The Proposed Motion for Summary Judgment**

  Discovery in this matter has demonstrated beyond cavil that GEICO willfully violated both the License Agreements and the Non-Disclosure Agreement it entered into with CMS, that AIS aided and abetted these violations, and that both Defendants repeatedly and purposefully misappropriated Plaintiff's trade secrets and confidential information. This was not an incidental or isolated breach of confidentiality. For more than five years, GEICO provided both its internal team building a "new" claims management system and AIS, which assisted, with detailed information about the operations, technology and systems of CMS. GEICO hosted in-person demonstrations of CMS's computer program, compiled and shared inventories of the CMS functionalities, exchanging internally and with AIS detailed charts comparing and contrasting the CMS functionalities with those being built by Defendants, gave express directions to add functionalities of CMS not yet contained in the new claims management systems, and worked with AIS to "map" the CMS system, to allow AIS and GEICO to take over all data housed in CMS, along with codes and special mapping that had been developed over many years by CMS.

As their initial defense in this action, Defendants feigned that they did not understand what trade secrets were at issue. GEICO unsuccessfully moved to dismiss on this grounds. As it turns out, and as highlighted in the Amended Complaint, **the Non-Disclosure Agreement itself expressly states that all of CMS's operations, technology and systems were to be treated as trade secrets.** Nonetheless, GEICO freely shared all of it with AIS, without permission from CMS. Defendants later asserted innocence on the grounds that they were merely transferring claims data, but that too has proven to be nonsense. The years-long collaboration between GEICO and AIS enabled Defendants to duplicate critical CMS functionalities, and to use the CMS-coded data, as GEICO discarded CMS without so much as a "thank you" for its 35 years of dedicated service and technical developments.

Moreover, while duplication of the "source code" for CMS's systems is not in any way the *sine qua non* of Plaintiff's case, discovery has shown that the source code supposedly developed by GEICO and AIS contains repeated references to CMS and its affiliates, and contains programming based on CMS programs. While GEICO disagrees, the resulting battle of expert testimony must be determined at trial, not on a motion for summary judgment.

Defendants' effort to distill all of this to an assertion that there is no evidence of GEICO disclosing the source code is an oversimplification and a flagrant misrepresentation of the case. There are dozens of documents and reams of deposition testimony that CMS would submit in response to a summary judgment motion on these grounds and, in the end, it will amount to nothing more than a modest delay in Defendants' day or reckoning.

**The Proposed Motion for Sanctions**

The notion that Plaintiff intentionally destroyed evidence is false and intended to mislead the Court. As we explained to Defendants numerous times, CMS's production of documents was made by imaging all of the servers and computers it could identify as containing potentially relevant information, running the searches agreed upon by the parties, and producing <u>everything</u> identified. The bulk of the material was produced electronically with whatever ESI was available. Any objection to that procedure is misplaced, but it has also been waived by Defendants' failure to bring a discovery motion before the close of discovery in this matter.

Defendants should be embarrassed to assert that CMS or Dr. Silberstein spoliated evidence. GEICO complains that Gerry DePace, a now-deceased former CMS employee, forwarded to Dr. Silberstein documents (unprotected on GEICO's systems) that demonstrated Defendants' misappropriation of CMS's operations, technology and systems. None of these documents were ever used to compete with Defendants or for any illicit purpose – they were reviewed by Plaintiff in an effort to understand the true scope of Defendants' misconduct. GEICO has known about this since at least December 2014, but it kept working with Mr. DePace and communicating over his private Gmail account, and kept CMS engaged as a vendor (with two extensions) until August 2017. Thus, while GEICO and AIS both asserted counterclaims, their own knowing tolerance of the complained-of activities, and the lack of resulting injury in any event, suggest that they do not intend to seriously pursue those counterclaims at trial.

After Mr. DePace unexpectedly passed away in 2015, his widow requested that his laptop and its personal files be returned to her. Defendants refer to testimony about erasing, but leave out the widow's request, using ellipses instead of the full quote that follows:

> Q: When did he ask you to erase Gerry's laptop?
> A: It was soon after Gerry's death *because it was going to go back to his wife and she was returning to Florida.*

Anderson Dep., 121:9-16 (italics to show Defendants' omission). **Defendants leave out the explanation, as well as the substantial testimony about how CMS backed-up and preserved data, before deleting anything, in an effort to mislead the Court.** Any efforts to erase data were done only in connection with this request and were abandoned when it was ultimately determined that the laptop should be retained by CMS until this action is concluded. This argument is nothing more than fake news.

Moreover, Defendants never say what documents they think are missing. Mr. DePace's work on the CMS source code (including changes and revisions) was maintained by GEICO on its own systems. GEICO has any emails it exchanged with Mr. DePace and, as GEICO itself touts, it has emails between Mr. DePace and Dr. Silberstein. Although CMS told Defendants that it had Mr. DePace's laptop, neither ever even requested to inspect it. And, again, none of this was raised in any discovery motion. It is all a lot of pre-trial fuss and bluster about nothing.

GEICO's temerity in suggesting a sanctions motion is particularly outrageous, as discovery revealed that GEICO built and used a database, premised on a CMS design, to ferret out fraudulent nerve conduction velocity ("NCV") charges in New Jersey and other states and then – knowing there was a dispute about GEICO's rights to use such systems outside of New York (and the millions of dollars GEICO saved by doing so) – destroyed or discarded the database, leaving behind only a few witnesses with suspiciously thin memories about the relevant facts. Defendants' proposed motion for sanctions is a cynical and meritless effort to avoid accounting for their own substantial misdeeds, both with respect to their outright theft of CMS's operations, technology and systems, and their conduct in defending this litigation itself, all of which will be addressed and rectified at trial.

**Conclusion**

Pursuant to the Scheduling Order in this matter, Magistrate Judge Locke will hold a Pretrial Conference on June 18, 2018, where we will go over the joint proposed pretrial order and have settlement discussions. Given the both age of this dispute (filed in 2015) and the age and physical condition of our clients, and pursuant to Federal Rules of Civil Procedure 16(b)(3)(B)(iv) and 16(c)(2)(P), Plaintiff hereby requests the assignment of a final trial date for this case to commence as promptly after the Pretrial Conference as possible for the Court.

As the matters raised in Defendants' letter to the Court can best be considered at trial, Plaintiff respectfully submits that there is no legitimate use for the motion practice suggested and, in any event, that trial should not be delayed.

Hon. Denis R. Hurley, U.S.D.J.
May 23, 2018
Page 4 of 4

Respectfully submitted,

Richard C. Schoenstein

cc: All Counsel of Record (by ECF)