UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CAPRICORN MANAGEMENT SYSTEMS,
INC.,

         Plaintiff,

  -against-

GOVERNMENT EMPLOYEES INSURANCE
CO. and AUTO INJURY SOLUTIONS, INC.

          Defendants,

  -against-

CHARLES M. SILBERSTEIN

         Counterclaim-Defendant.
-----------------------------------------------------------------x

**ORDER, REPORT AND
RECOMMENDATION**
15-cv-2926 (DRH)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

  By Complaint filed on May 20, 2015, Plaintiff Capricorn Management Systems,

Inc. ("Capricorn" or "Plaintiff") commenced this action against Defendant

Government Employees Insurance Co. ("GEICO"), asserting claims for breach of a

licensing agreement, breach of a non-disclosure agreement and misappropriation of

trade secrets under Maryland law.  *See* Complaint ("Compl."), Docket Entry ("DE")

[1].  On January 30, 2017, Plaintiff filed an Amended Complaint, which added as a

defendant Auto Injury Solutions, Inc. ("AIS") (together with GEICO, "Defendants"),

along with a claim for conversion against GEICO and AIS.  *See* Amended Complaint

("Amend. Compl."), DE [55].

  Presently before the Court, on referral from the Honorable Denis R. Hurley for

Report and Recommendation are Defendants' motions:  (i) to strike purported expert

1

disclosures and exclude expert testimony pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 26(a)(2), *see* DE [103]; (ii) for sanctions pursuant to Fed. R. Civ. P. 37(e)(2), *see* DE [105][1]; (iii) for summary judgment on Capricorn's Amended Complaint pursuant to Fed. R. Civ. P. 56, *see* DE [107]; and (iv) for summary judgment on Counts II and III of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 56, *see* DE [121].  Additionally, before the Court are GEICO's motions seeking an Order granting it leave to file under seal documents relating to Defendants' motions pursuant to Fed. R. Civ. P. 26(c)(1)(G).[2]  *See* DEs [104], [106], [109] and [123]. For the reasons set forth herein, the Court respectfully recommends that Defendants' motion:  (i) to strike purported expert disclosures and exclude expert testimony be granted; (ii) for sanctions pursuant to Fed. R. Civ. P. 37(e)(2) be denied; (iii) for summary judgment on all counts of Capricorn's Amended Complaint be granted as to Counts II, III and IV and denied as to Count I; and (iv) for summary judgment on Counts II and III of Plaintiff's Amended Complaint be granted.  Further, GEICO's motions for leave to file under seal are granted in part and denied in part, without prejudice and with leave to renew.

---

[1] The Second Circuit has not resolved the issue of whether magistrate judges have authority to impose sanctions under Fed. R. Civ. P. 11, which has created uncertainty as to magistrate judges' authority to impose non-dispositive sanctions under Rule 37.  *See Diversified Control, Inc. v. Corning Cable Sys., LLC*, No. 05-cv-277, 2010 WL 1371662, at *1 (W.D.N.Y. Apr. 6, 2010).  Accordingly, out of an abundance of caution, the Court addresses this motion in a Report and Recommendation.  *See Estate of Jackson ex rel. Jackson v. Cty. of Suffolk*, No. 12-cv-1455, 2014 WL 3513403, at *3 (E.D.N.Y. July 15, 2014); *see also In re Kessler*, No. 05-cv-6056, 2009 WL 2603104, at *9-21 (E.D.N.Y. Mar. 27, 2009) (issuing a Report and Recommendation with respect to spoliation motion that invoked the court's inherent power).

[2] Pursuant to 28 U.S.C. § 636(b)(1)(A), magistrate judges have authority to decide non-dispositive pretrial matters, including motions to seal.  *See Grand v. Schwarz*, No. 15-cv-8779, 2018 WL 1604057, at *1, n.1 (S.D.N.Y. Mar. 28, 2018).

## I.     BACKGROUND

The following facts are taken from the pleadings, affidavits, exhibits and the parties' Local Civil Rule 56.1(a) statements.  Unless otherwise noted, these facts are not in dispute.  Capricorn is a New York corporation that designs and provides application software for insurance companies and medical billing services.  *See* Amend. Compl. ¶¶ 1, 12.   Counterclaim-Defendant Charles M. Silberstein ("Silberstein") has at all relevant times owned a controlling share of Capricorn along with his wife.  *See* Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment ("Def. SOF"), DE [107-2], ¶ 2; Plaintiff's Counter-Statement of Material Facts ("Pl. CSOF"), DE [107-20], ¶ 2.  GEICO is a Maryland corporation with its principal place of business in Maryland.  *See* Def. SOF ¶ 3; Pl. CSOF ¶ 3.  AIS is a Delaware corporation, with its principal place of business in Illinois.  *See* Def. SOF ¶ 4; Pl. CSOF ¶ 4.  For 35 years, Capricorn provided software and related services to GEICO in New York.  *See* Amend. Compl. ¶ 13.  Over the course of their relationship, Plaintiff and GEICO entered into various contracts, including a Non-Disclosure Agreement ("NDA") in 2005, governing the parties' obligations to each other to preserve confidential information.  *See id.* at ¶ 48, Ex. B, Government Employees Insurance Company Confidentiality and Non-Disclosure Agreement, dated August 23, 2005.

In June 2007, GEICO issued a Request for Information ("RFI") seeking a "web-based nationwide software solution to meet [its] first party medical bill review requirements."  *See* Def. SOF ¶ 32; Pl. CSOF ¶ 32.  The RFI requested information

from vendors regarding the functionality of their existing medical bill review software, the ability of their medical bill review software to integrate with GEICO's other applications and evidence of the vendors' financial stability. *See* Def. SOF ¶ 35; Pl. CSOF ¶ 35.   Capricorn responded that more than 40% of GEICO's business requirements were not available for at least six to nine months and that more than 25% of GEICO's business requirements were neither available nor planned for development by Capricorn for the next one to two years. *See* Def. SOF ¶ 38; Pl. CSOF ¶ 38.   Notably, Plaintiff's RFI response indicated that Capricorn's software did not have web-based functionality and that Capricorn did not have experience providing claims management software on a nationwide basis. *See* Def. SOF ¶ 39-40; Pl. CSOF ¶ 39-40.   AIS's RFI response, by contrast, highlighted its software's web-based functionality and AIS's nationwide experience. *See* Def. SOF ¶ 42-43; Pl. CSOF ¶ 42-43.   Based on seven vendors' RFI responses, GEICO ranked the vendors, with AIS first and Capricorn last. *See* Def. SOF ¶ 45; Pl. CSOF ¶ 45.   It is undisputed that GEICO selected AIS to serve as its nationwide medical bill review software provider, although the parties dispute when and why GEICO did so. *See* Def. SOF ¶ 48; Pl. CSOF ¶ 48; *see also* Amend Compl. ¶ 72.   While GEICO was implementing AIS's medical bill review software, it was also implementing a new national claims management software platform called ATLAS. *See* Def. SOF ¶ 49; Pl. CSOF ¶ 49. AIS's software interfaced with the ATLAS platform. *See* Def. SOF ¶ 51; Pl. CSOF ¶ 51.

In 2008, Plaintiff and GEICO entered into a Lease and Royalty Agreement ("LRA") for an automobile first party medical bill review software called Supercede. *See* Amend. Compl. ¶ 18.  GEICO was Capricorn's only customer for Supercede, and Plaintiff developed Supercede specifically to meet GEICO's business requirements. *See* Def. SOF ¶¶ 17-19; Pl. CSOF ¶¶ 17-19.  In 2009, Plaintiff began developing a Supercede component called the Encovel Detection Module to detect fraud related to Nerve Conduction Velocity ("NCV") testing.  *See* Amend. Compl. ¶ 30.  The Encovel Detection Module was developed and designed for use in the Supercede program, to be compatible with GEICO's information and systems.  *See id.* at ¶ 33.

Capricorn provided Supercede to GEICO's Woodbury, New York office until August 31, 2017.  *See id.* at ¶ 21.  However, by 2013, Plaintiff knew that "sooner or later GEICO was not going to have any need for the services that [Capricorn] had provided over the years."  *See* Def. SOF ¶ 53; Pl. CSOF ¶ 53.  In January 2014, Gerry DePace ("DePace")—the primary author of the Supercede source code, *see* Pl. CSOF ¶ 21—sent Silberstein a GEICO document concerning GEICO's conversion to AIS's software.  *See* Def. SOF ¶ 54; Pl. CSOF ¶ 54.  Silberstein instructed DePace to find out "what if anything" AIS and GEICO were taking from Capricorn and expressed concerns that AIS and GEICO could be "stealing/reverse engineering/copying" Plaintiff's operations and technology.  *See* Def. SOF ¶¶ 55-56; Pl. CSOF ¶¶ 55-56.

Believing that AIS and ATLAS had been designed and developed using Capricorn's operations, technology and systems as a model and reference point, Plaintiff commenced this lawsuit against GEICO on May 20, 2015, alleging:  (i)

5

breach of the LRA; (ii) breach of the NDA; and (iii) misappropriation of trade secrets. *See* DE [1]. On January 30, 2017, Capricorn filed its Amended Complaint, which added AIS as a defendant, alleging misappropriation of trade secrets against AIS, and added an additional claim for conversion against GEICO and AIS. *See* DE [55]. In response, GEICO asserted counterclaims against Capricorn and Silberstein for: (i) misappropriation of trade secrets under the Defend Trade Secrets Act, 18. U.S.C. §§ 1836 *et seq.*; (ii) misappropriation of trade secrets under the Maryland Uniform Trade Secrets Act, §§ 11-1201 *et seq.*; (iii) breach of the NDA; (iv) interference with contractual relations; and (v) unfair competition. GEICO also asserted counterclaims against Capricorn for: (vi) declaratory judgment of no proprietary interest in NCV fraud detection methods; and (vii) declaratory judgment of no proprietary interest in medical bill review *per se*. *See* GEICO's First Amended Answer to Amended Complaint, ("GEICO's Amend. Answer"), DE [69]. In addition, AIS asserted counterclaims against Capricorn for: (viii) misappropriation of trade secrets under the Defend Trade Secrets Act; (ix) misappropriation of trade secrets under New York common law; (x) interference with contractual relations; (xi) unfair competition; and (xii) conversion. *See* AIS Answer to Amended Complaint, ("AIS Answer"), DE [63].

On November 5, 2018, Defendants filed a motion to strike Capricorn's expert disclosures and a motion to sanction Plaintiff for spoliation. *See* DEs [103], [105]. On November 6, 2018, Defendants filed a motion for summary judgment on all counts of Capricorn's Amended Complaint. *See* DE [107]. GEICO further moved for leave to file under seal certain documents relating to these motions. *See* DEs [104], [106],

6

[109].  Judge Hurley referred all pending motions to this Court on November 7, 2018.  *See* Order Referring Motion, dated November 7, 2018; *see also* Order, dated November 9, 2018.  Accordingly, this Court set a briefing schedule on the motions to seal.  *See* Electronic Scheduling Order, dated November 16, 2018.  Additionally, pursuant to Judge Hurley's referral encompassing "such additional authority as reasonable or necessary to perform the foregoing duties," *see* Order Referring Motion, dated November 7, 2018, this Court granted Defendants' motion for leave to file a second summary judgment motion.  *See* Electronic Order, dated November 16, 2018.  On December 21, 2018, Defendants filed their second motion for summary judgment, *see* DE [121], and also filed an unopposed motion for leave to file under seal certain documents relating to this motion.  *See* DE [123].

## II.   LEGAL STANDARDS

### A.  <u>Motion to Strike</u>

Rule 26(a)(2) provides that when a party discloses an expert witness, the disclosure "must be accompanied by a written report—prepared and signed by the witness[.]"  Fed. R. Civ. P. 26(a)(2)(B).  The report must contain:  "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and

testimony in the case." *Id.* at (i)-(vi).  Rule 26(a)(2) expert disclosures, including complete written reports, must be made "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).

The Rule 26(a)(2) disclosure requirement is designed to prevent a party from raising unexpected or new evidence at trial.  *See Conte v. Newsday, Inc. et al.*, No. 06-cv-4859, 2011 WL 2671216, at *4 (E.D.N.Y. July 7, 2011); *see also Harkabi v. SanDisk Corp.*, No. 08-cv-8203, 2012 WL 2574717, at *3 (S.D.N.Y. June 20, 2012) ("The purpose of the expert disclosure rules is to avoid surprise or trial by ambush.") (internal quotation marks and citation omitted).  Accordingly, "courts may strike expert reports if they are insufficiently detailed and complete to satisfy Rule 26(a)(2)." *Conte*, 2011 WL 2671216, at *4.  To satisfy Rule 26(a)(2), an expert report "must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions . . . [and] explain factually why and how the witness has reached them." *Whalen v. CSX Transp., Inc.*, No. 13-cv-3784, 2016 WL 5660381, at *4 (S.D.N.Y. Sept. 29, 2016).  When a party fails to make adequate Rule 26(a)(2) disclosures, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

## B. **Motion for Sanctions**

Fed. R. Civ. P. 37(e) empowers the court to impose various sanctions for spoliation, which is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably

foreseeable litigation." *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 435 (S.D.N.Y. 2010). Rule 37(e) was amended in 2015 to address electronically stored information ("ESI"). The amended rule provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> >
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Determining the appropriate sanction is within "the sound discretion" of the court and "assessed on a case-by-case basis." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). "In general, a court should impose the least harsh sanction that can provide an adequate remedy." *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-cv-9363, 2018 WL 1512055, at *8 (S.D.N.Y. Mar. 12, 2018) (internal quotation marks and citation omitted). Available sanctions include—"from least harsh to most harsh—further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal." *Tchatat v. O'Hara*, 249

F. Supp. 3d 701, 707 (S.D.N.Y. 2017), *objections overruled*, No. 14-cv-2385, 2017 WL 3172715 (S.D.N.Y. July 25, 2017) (internal quotation marks and citation omitted).

### C. **Summary Judgment**

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "difficult" burden of establishing that there are no genuine issues of material fact such that summary judgment is appropriate. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (internal quotation marks and citation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4

F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.") (citation omitted).  In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citation omitted); *see also Jeffreys*, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (internal quotation marks and citation omitted).

### D. <u>Motion to File Under Seal</u>

The Second Circuit has established a three-part analysis for determining whether documents relating to a lawsuit should be sealed.  *See King Pharm., Inc. v. Eon Labs, Inc.*, No. 04-cv-5540, 2010 WL 3924689, at *4 (E.D.N.Y. Sept. 28, 2010) (internal quotation marks and citation omitted); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).  Courts must first determine whether the documents are judicial documents, "to which the public has a presumptive right of access." *King Pharm., Inc.*, 2010 WL 3924689, at *4 (citation omitted).  A judicial document is not simply a document filed with the court, but one that is "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119 (internal quotation marks and citation omitted).  A document is "relevant to the performance of the judicial function if it would reasonably have a

*tendency* to influence a district court's ruling on a motion . . . without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *See Brown v. Maxwell*, No. 16-cv-3945, 2019 WL 2814839, at *4-5 (2d Cir. July 3, 2019) (internal quotation marks and citation omitted) (emphasis in original). If the documents are judicial documents, courts must next determine the weight of the public's presumptive right of access. *King Pharm., Inc.*, 2010 WL 3924689, at *4 (citation omitted). Finally, courts must balance competing considerations against the presumptive right to access, including "the danger of impairing judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (citation omitted). In so doing, courts must be cognizant that "the presumption of public access to court documents has the potential to exacerbate . . . harms to privacy and reputation by ensuring that damaging material irrevocably enters the public record." *See Brown*, 2019 WL 2814839, at *3.

## III.   DISCUSSION

### A.   <u>Defendants' Motion to Strike Capricorn's Expert Disclosures</u>

The Court first considers Defendants' motion to strike Capricorn's disclosures submitted on behalf of Plaintiff's experts, Michael R. Elliott ("Elliott") and Joseph B. Nelson ("Nelson"). Defendants argue that the expert disclosures do not satisfy the Fed. R. Civ. P. 26(a)(2)(B) requirements and, therefore, pursuant to Fed. R. Civ. P. 37(c)(1), the Court should preclude Capricorn from offering expert testimony in this case.

As a threshold matter, the Court considers Plaintiff's argument that Defendants' motion to strike should be denied because Defendants failed to meet and confer with Capricorn.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Strike Plaintiff's Expert Disclosures and Exclude Expert Testimony Pursuant to Fed. R. Civ. P. 26(a)(2), ("Pl. Motion to Strike Opp."), DE [103-10], 3-6.  Plaintiff's reliance on Fed. R. Civ. P. 37(a)(1), which requires a party moving to compel disclosure to confer or attempt to confer with the party withholding disclosure, is misplaced.  *See* Fed. R. Civ. P. 37(a)(1).  Defendants are seeking to preclude, rather than compel, the expert disclosures pursuant to Fed. R. Civ. P. 37(c)(1).  Unlike Rule 37(a)(1), Rule 37(c)(1) contains no meet and confer requirement. *Compare* Fed. R. Civ. P. 37(a)(1) *with* Fed. R. Civ. P. 37(c)(1); *see also Amatangelo v. Nat'l Grid USA Serv. Co.*, No. 04-cv-246, 2007 WL 4560666, at *6 (W.D.N.Y. Dec. 18, 2007) ("A party is not required to meet and confer or make a good faith certification when moving for sanctions . . .").  Local Rule 37.3, upon which Capricorn also relies, is similarly inapplicable.  Local Rule 37.3 requires parties to meet and confer prior to seeking judicial resolution, "in conformity with Fed. R. Civ. P. 37(a)(1)."  Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Effective October 29, 2018.  Thus, Local Rule 37.3 does not impose a meet and confer requirement on parties seeking relief pursuant to Rule 37(c)(1).  *See* Fed. R. Civ. P. 83 ("A local rule must be consistent with . . . federal statutes and rules[.]").  Finding that Defendants' motion is not procedurally barred, the Court turns to its merits.

i. *Rule 26(a)(2)(B) Requirements*

Plaintiff's expert disclosures fail to meet the requirements of Rule 26(a)(2)(B). Initially, Capricorn's expert disclosures are not accompanied by written reports "prepared and signed" by the experts. Rather, the written reports that Plaintiff submitted are signed by Capricorn's counsel and made "by and through [Plaintiff's] counsel." *See* Plaintiff's Disclosure of Joseph B. Nelson ("Nelson Disclosure"), DE [103-6], 1, 10; Plaintiff's Disclosure of Michael R. Elliott ("Elliott Disclosure"), DE [103-7], 1, 5. Moreover, the reports refer to the experts in the third-person, which underscores that Capricorn's lawyers, rather than the experts, prepared the reports. *See, e.g.*, Nelson Disclosure, 4, 9; Elliott Disclosure, 4.

Next, the expert reports do not provide the experts' "substantive rationale in detail" or "explain factually why and how" the experts reached their proffered opinions. *See Whalen*, 2016 WL 5660381, at *4. Pursuant to Rule 26(a)(2)(B), expert reports must contain, among other things: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B).

Rather than providing a "complete statement" of their opinions, both the Nelson and Elliott reports offer only a "Summary of Opinions." *See* Nelson Disclosure, 2; Elliott Disclosure, 2. Such summaries are insufficient under Rule 26(a)(2)(B). *See Mfon v. Cty. of Dutchess*, No. 14-cv-6922, 2017 WL 946303, at *4 (S.D.N.Y. Mar. 9, 2017), *aff'd*, 722 F. App'x 46 (2d Cir. 2018). Further, the Nelson report fails to offer any opinion that Nelson—Capricorn's damages expert—formed as

14

to the amount of Plaintiff's damages, and instead provides six broad categories of damages that Capricorn is "entitled to recover," including lost profits, unjust enrichment and attorneys' fees.  Nelson Disclosure, 4-9.  To the extent that Nelson has formulated an opinion on damages, the basis for his opinion is unclear, especially considering the report's admission that Nelson did not conduct "[a] full review and analysis of damages incurred by Plaintiff in this action[.]"  *Id.* at 2.

The report submitted on behalf of Elliott is similarly deficient.  According to the Summary of Opinions, "the source code produced by GEICO could not have been written without utilizing the operations, technology and/or systems of Capricorn." Elliot Disclosure, 2.  The Elliott report does not, however, provide any explanation as to how or why Elliot reached this conclusion, aside from referencing Elliott's review of "a myriad of internal GEICO communications, memorandums, etc.," and his "[a]nalysis of program architecture and structure, the inter-relationship and interdependence of program files, identification of functionality provided by [Supercede] as compared to the systems constructed by GEICO and/or AIS, and consideration of the engineering aspects of software development."  *Id.* at 3-4.

Moreover, neither the Nelson report nor the Elliott report contains the facts or data upon which Nelson or Elliott relied in forming their opinions.  The Nelson report merely provides that "[r]eview *shall* include . . . interviews of company personnel, deposition testimonies, reviews of financial documents, and other information[.]" Nelson Disclosure, 9 (emphasis added).  Damages expert disclosures that fail to disclose the facts underlying the expert's conclusions are deficient. *See Lava Trading,*

*Inc. v. Hartford Fire Ins. Co.*, No. 03-cv-7037, 2005 WL 4684238, at \*7 (S.D.N.Y. Apr. 11, 2005). The Elliott report does not fare much better. Beginning with the admission that "[a] full review of the source code(s) utilized by Defendants . . . has not been possible[,]" the Elliott report offers one paragraph of the data Elliott considered: "Mr. Elliott has considered the limited source code produced by GEICO at its own attorneys' offices. Mr. Elliott has also considered various documents and communications, including but not limited to emails, memorandums, screen images, notes of telephone conversations by and between GEICO employees as well as by and between GEICO employees and employees of . . . AIS, as well as deposition testimony." Elliott Disclosure, 2, 4. Such "vague references to general items considered" do not satisfy Rule 26(a)(2)(B). *Jinghong Song v. Yao Bros. Grp. LP*, No. 10-cv-04157, 2012 WL 1557372, at \*1 (S.D.N.Y. May 2, 2012).

> ii.      *Rule 37(c)(1) Preclusion*

Based on the deficiencies above, Defendants seek to preclude Capricorn from offering its expert testimony, pursuant to Fed. R. Civ. P. 37(c)(1), which, as set forth above, provides that a party that fails to make adequate Rule 26(a)(2) disclosures "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Despite the apparent mandatory language of Rule 37, the Second Circuit views preclusion as discretionary. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006). Alternative sanctions are available under Rule 37, and a court may, "[i]n addition to or instead of [preclusion]": (i) order payment of reasonable

16

expenses incurred by the non-moving party's failure, including attorneys' fees; (ii) inform the jury of the non-moving party's failure; and (iii) "impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(A)-(C).

In determining whether to preclude a party from offering expert testimony, courts consider: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Design Strategy, Inc.*, 469 F.3d at 296 (internal quotation marks and citation omitted). Preclusion is a "drastic remedy." *See Torres v. Dematteo Salvage Co. Inc.*, No. 14-cv-774, 2016 WL 845326, at *3 (E.D.N.Y. Mar. 2, 2016). Nonetheless, applying the four factors here, the Court concludes that preclusion of Nelson's and Elliott's opinions is appropriate.

The first factor "cuts heavily against" Capricorn, as Plaintiff offers no "legitimate explanation" for its failure to comply with its disclosure requirements. *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2017 WL 2880882, at *2 (S.D.N.Y. July 5, 2017). Instead, Capricorn simply opines that "any issues regarding expert disclosure can be fixed." Pl. Motion to Strike Opp., 12. The second factor—the importance of the testimony—also weighs against Plaintiff. In a letter dated October 12, 2018, Capricorn represented to the Court that "its case is not premised on source code," which undermines the importance of Elliott's testimony. *See* Reply in Opposition re DE [101] Letter Application of GEICO and AIS for Leave to File a

Fourth Pre-Trial Motion, DE [102], 3.  More notably, Plaintiff notes that although Nelson and Elliott are "important to Capricorn's case," they are "admittedly, not necessary to it."  Pl. Motion to Strike Opp., 11.  The fourth factor, continuance, also cuts against Capricorn.  Discovery is closed, and while a trial date has not been set, "allowing deadlines to continue to slip 'result[s] in the backup of other cases and eventual scheduling chaos as a series of bottlenecks builds.'"  *Grabin v. Marymount Manhattan Coll.*, 659 F. App'x 7, 11 (2d Cir. 2016) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 962-63 (2d Cir. 1997)).  Accordingly, the opportunity to seek a continuance has passed.

With respect to the third factor, prejudice, Capricorn argues that Defendants' failure to seek supplemental expert disclosures or other curative measures prior to the close of discovery demonstrates that Defendants are not prejudiced by Plaintiff's expert disclosures and are instead using this motion to strike as a form of procedural "gamesmanship" to gain an advantage with respect to its motions for summary judgment.  *See* Pl. Motion to Strike Opp., 6-7.  Courts in this Circuit will not preclude expert testimony based on prejudice where such prejudice is the result of the moving party's strategic decision to delay raising objections to expert disclosures.  *See Rupolo v. Oshkosh Truck Corp.*, 749 F. Supp. 2d 31, 41 (E.D.N.Y. 2010); *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 397 (S.D.N.Y. 2005), *aff'd on other grounds sub nom. Bellotto v. Cty. of Orange*, 248 F. App'x 232 (2d Cir. 2007).  Defendants served Plaintiff with the motion to strike on July 31, 2018—three months after the close of discovery.  *See* Reply Memorandum of Law in Support of Defendants' Motion to Strike Purported

18

Expert Disclosures and Exclude Expert Testimony ("Def. Motion to Strike Reply"),
DE [103-19], 6; *see also* DE [75] (Scheduling Order setting discovery deadlines).  Prior
to serving Plaintiff with the motion to strike, Defendants requested leave from the
Court to file a motion for summary judgment and a motion for sanctions but did not
raise any objections to Plaintiff's expert disclosures.  *See* DE [92].  Defendants claim
that they identified the defects of Plaintiff's expert disclosures within 30 days through
their own expert reports, which noted:  (1) "I am unable to identify any damages
opinions offered by Mr. Nelson."; and  (2) "Despite the fact that Mr. Elliott has not
submitted an expert report in compliance with the Scheduling Order and Fed. R. Civ.
P. 26(2)(B), this report sets forth a complete statement of my opinions and the bases
thereof in response to the conclusory and unsupported assertions in Plaintiff's Expert
Disclosure."  *See* Rule 26 Expert Report of Ambreen Salters on Behalf of Defendants
("Salters Report"), DE [103-15], ¶ 21; Rebuttal Expert Report of Dr. Benjamin
Goldberg ("Goldberg Report"), DE [103-15], ¶ 8.  The Court finds Defendants'
argument unpersuasive.   Between March 30, 2018, when Defendants received
Plaintiff's expert disclosures, and July 31, 2018, when Defendants served the motion
to strike, Defendants could have, but chose not to, directly communicated with
Capricorn to note their objections to its expert reports, rather than passively doing so
through their rebuttal expert reports.  Nonetheless, Defendants' decision to wait until
three months after the close of discovery to serve Plaintiff with the motion to strike
does not rise to the level of gamesmanship that courts in this Circuit have
admonished.  *Cf. Nemec v. Shrader*, No. 09-cv-7466, 2015 WL 1650391, at *2

19

(S.D.N.Y. Apr. 13, 2015) ("Were the Court to grant the [motion for discovery sanctions brought 17 months after the close of discovery and mere days before trial], it in effect would encourage parties to stay silent as to some discovery disputes during pretrial proceedings, and thus to lie in wait until long after discovery is complete only to ambush their unsuspecting adversaries with charges of wrongdoing on the eve of trial."); *Rupolo*, 749 F. Supp. 2d at 41 (finding that any prejudice moving party might suffer was a result of its own decision to wait one and one-half years before objecting to the report and denying motion to exclude expert witness); *Atkins*, 372 F. Supp. 2d at 403 (denying motion to preclude expert witness where moving party had over one year to object to expert report).

Plaintiff further argues that prejudice is minimal because "there is likely substantial time until this case gets to trial," which gives Defendants time to depose Nelson and Elliott prior to trial.  *See* Pl. Motion to Strike, Opp., 12.  Courts in this Circuit addressing motions to preclude expert testimony have found that prejudice can be alleviated by re-opening discovery to allow expert depositions.  *See Torres*, 2016 WL 845326, at *5.  However, the cases in which courts have re-opened discovery did not involve highly technical subject matter, as is the case here.  *See, e.g.*, *Mahoney v. Keyspan Corp.*, 2007 WL 1651853, No. 04-cv-554 (E.D.N.Y. June 6, 2007) (declining to order preclusion of damages expert in employment case where moving party had already retained its own damages expert and there was "ample time before trial to cure any prejudice plaintiff would otherwise suffer").  Here, the central issue is whether software source code was copied or otherwise used to create another source

code, and "the parameters of the dispute . . . are largely defined by expert testimony." *See Softel, Inc.*, 118 F.3d at 962. Although Defendants have retained rebuttal experts, allowing Nelson and Elliott to testify would "redraw[] the boundaries of the case and almost certainly" prejudice Defendants' ability to "accommodate potentially significant shifts in the theories being offered" against them. *See id.* (affirming preclusion of expert testimony based on finding that forcing the moving party to adapt to new expert information would be prejudicial); *see also Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 13 (2d Cir. 2017) (finding prejudice and affirming preclusion in copyright action even though Defendants were aware that purported experts would offer declarations and that "copyrightability would be at issue"). Accordingly, the Court finds Plaintiff's argument unavailing, especially in light of Capricorn's admission that Nelson and Elliott are not necessary to its case. *See Wiener v. AXA Equitable Life Ins. Co.*, No. 16-cv-4019, 2019 WL 1228074, at *11 (S.D.N.Y. Mar. 15, 2019) (rejecting argument that moving party would not suffer prejudice because it could depose expert before trial, where two factors—the explanation for the failure to comply with Rule 26 and the importance of the testimony of the expert—weighed in favor of preclusion).

Finally, Plaintiff urges the Court to preclude Defendants' experts from testifying in the event Defendants' motion to strike is granted. *See* Pl. Motion to Strike Opp., 13. According to Capricorn, if its expert disclosures are stricken "there would be no basis for the rebuttal opinions offered in [the reports of Defendants' experts]." Defendants have a right, however, to defend themselves against Plaintiff's

claims, regardless of what evidence Plaintiff introduces. *See Rodriguez v. Chelus, Herdzik, Speyer, & Monte, P.C.*, No. 15-cv-244, 2017 WL 840399, at *1 (W.D.N.Y. Mar. 3, 2017). Accordingly, the Court finds no reason to strike Defendants' properly submitted expert reports.

Finding that the Nelson and Elliott disclosures do not satisfy Rule 26(a)(2) and that all four factors used to determine whether preclusion is an appropriate sanction weigh in favor of preclusion, the Court respectfully recommends that Defendants' motion to strike be granted and that Plaintiff's experts be precluded from offering testimony. The Court further recommends denying Capricorn's request to preclude Defendants' experts from testifying.

## B. **Defendants' Motion for Sanctions**

Defendants also move to sanction Capricorn and Silberstein for "purposefully erasing and failing to preserve electronically stored information directly relevant to the claims and defenses in this action." Memorandum of Law in Support of Defendants' Motion for Sanctions Under Fed. R. Civ. P. 37(e)(2) to Remedy Plaintiff's Intentional Spoliation of Electronically Stored Information ("Def. Sanctions Memo"), DE [105-1], 1. According to Defendants, Plaintiff failed to preserve the ESI of Capricorn's principal coder of Supercede, DePace, and the data on its office computer network, including the ESI for 12 custodians. *Id.* at 2-8. In determining whether Capricorn destroyed evidence, the Court applies the amended version of Fed. R. Civ. P. 37(e)[3] and considers: (i) whether ESI that should have been preserved has been

---

[3] The amended Rule "presumptively applies in all cases, unless its application would be unjust or impracticable." *World Trade Ctrs Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, No. 15-cv-7411, 2018 WL

lost; (ii) whether Capricorn took "reasonable steps" to preserve the ESI; and (iii) whether the ESI can be restored or replaced through additional discovery. *See World Trade Ctrs. Ass'n, Inc.*, 2018 WL 1989616, at *11. Next, upon a finding of prejudice to Defendants, the Court may order sanctions "no greater than necessary to cure the prejudice," or upon finding that Capricorn acted with the intent to deprive Defendants of the ESI, may presume that the lost information was unfavorable to Defendants, which is the sanction that Defendants seek. *See* Fed. R. Civ. P. 37(e)(1)-(2)(A); *see also* Def. Sanctions Memo, 20-21.

     i.    *Rule 37(e) Threshold Requirements*

     1.  <u>Whether ESI that should have been preserved has been lost</u>

The duty "to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citation omitted). A party must retain all relevant evidence in existence when the duty to preserve attached and any relevant evidence created thereafter. *Caltenco v. G.H. Food, Inc.*, No. 16-cv-1705, 2018 WL 1788147, at *4 (E.D.N.Y. Mar. 7, 2018) (citation omitted).

Capricorn anticipated filing a lawsuit against GEICO by November 2014. *See* Declaration of Matthew J. Ricciardi, Esq. ("Ricciardi Decl."), Exhibit ("Ex.") G,

---

1989616, at *11 (S.D.N.Y. Apr. 2, 2018), *report and recommendation adopted sub nom.*, No. 15-cv-7411, 2018 WL 1989556 (S.D.N.Y. Apr. 25, 2018) (internal quotation marks and citation omitted). Neither Capricorn nor Defendants have argued that application of the amended rule would be unjust or impracticable, and the Court does not find that it would be.

November 11, 2014 e-mail from Silberstein to Robert Leone ("Leone"); *see also* Ricciardi Decl., Ex. H, March 15, 2018 Videotaped Deposition of Capricorn by Charles M. Silberstein ("Capricorn Dep."), DE [105-6], 220:4-12. Accordingly, from November 2014 forward, Plaintiff had a duty to preserve evidence that "may be relevant" to its lawsuit. *Fujitsu Ltd.*, 247 F.3d at 436. Evidence relevant to this lawsuit includes ESI on the personal laptop and Gmail account of DePace, the Capricorn employee who worked in GEICO's Woodbury office and was highly knowledgeable about the Supercede software at issue. *See* Def. Sanctions Memo 2-3. DePace used his laptop and Gmail account to perform work as a Capricorn employee for GEICO. *See* Declaration of Richard C. Schoenstein in Opposition to Defendants' Motion for Sanctions ("Schoenstein Decl."), DE [105-22], ¶ 23; Ricciardi Decl., Ex. B., March 21, 2018 Deposition of Brock S. Anderson ("Anderson Dep."), DE [105-4], 103:20-23, 110:25-111:7; Ricciardi Decl., Ex. C, Plaintiff's Objections and Responses to Defendants' First Set of Interrogatories ("Pl. Interrogatory Responses"), DE [105-5], 8. Similarly relevant is the ESI of other Capricorn employees who were involved in work for GEICO. *See* Ricciardi Decl., Ex. J, E-mail from ASI Counsel, dated November 21, 2017, DE [105-8].

Defendants have shown that content from DePace's Gmail account has been lost. DePace died one month after the commencement of this lawsuit, and according to Silberstein, "his e-mail died with him." Ricciardi Decl., Ex. H, Capricorn Dep. 228:10-23; *see also* Ricciardi Decl., Ex. I, Letter from Capricorn Counsel, dated March 20, 2018, DE [105-7] (confirming that Capricorn did not know the password for

24

DePace's Gmail account). Plaintiff now argues that "[i]t is not entirely accurate . . . to say that DePace's Gmail account 'died with him,'" because e-mails from Silberstein have been collected, and e-mails DePace had sent Silberstein "may have been preserved" in Silberstein's e-mail accounts. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Sanction Under Fed. R. Civ. P. 37(e)(2) to Remedy Plaintiff's Alleged Intentional Spoliation of Electronically Stored Information ("Pl. Sanctions Opp."), DE [105-15], 2. Capricorn does not, however, account for e-mails between DePace and Capricorn employees other than Silberstein. Moreover, Plaintiff does not identify any e-mails it produced from DePace's Gmail account but relies instead on GEICO's production of DePace's e-mails to support its position that such e-mails were not lost. *See* Declaration of Victor Lee ("Lee Decl."), DE [105-18], 4. Nevertheless, Capricorn fails to establish that GEICO is in possession of all relevant e-mails from DePace's Gmail account.

Defendants have also shown that e-mails—but not all ESI—of 12 Capricorn employees have been lost. After initial disclosures and written discovery responses, the parties negotiated custodians and search terms to be used for searching and producing ESI. Def. Sanctions Memo, 6. Capricorn agreed to search and produce ESI for 14 custodians. Ricciardi Decl., Ex. J, E-mail from ASI Counsel, dated November 21, 2017. However, Plaintiff only produced ESI for two custodians—Silberstein and DePace. *See* Ricciardi Decl., Ex. K, Letter from GEICO's Counsel, dated February 16, 2018, DE [105-9]. According to Capricorn, the production of only two custodians is not a result of Plaintiff's failure to preserve evidence but rather is because

25

documents collected from Plaintiff's computers "were not segregated by custodian." Declaration of Richard Corvinus ("Corvinus Decl."), DE [105-20], ¶ 11. This explanation bears on the absence of documents but does not explain Capricorn's failure to produce e-mails for the 12 custodians, many of which GEICO had identified within its own files. *See* Def. Sanctions Memo, 8. Thus, Defendants argue, "the obvious conclusion is that those e-mails were lost because Capricorn failed to preserve (or erased them)." *Id.* at 8-9. Capricorn offers no evidence to dispute Defendants' conclusion.

Defendants have failed, however, to show that ESI from DePace's laptop has been lost. Defendants point to Plaintiff's admission that in June 2015, one month after filing this lawsuit, Silberstein instructed a Capricorn programmer to clear DePace's laptop. *See* Ricciardi Decl., Ex. B, Anderson Dep., 121:9-11. According to Plaintiff, items belonging to Capricorn were removed from the laptop so that it could be given to DePace's widow, who had requested that it be returned because it contained family photos and documents. *See* Pl. Sanctions Opp., 3. These items were not destroyed, however, and were backed up on Capricorn's server. *See* Schoenstein Decl., Ex. H, Deposition of Mohamed Elmasri ("Elmasri Dep."), DE [105-30], 59:16-60:19; 72:16-24. Critically, Plaintiff's e-discovery vendor, Precision Discovery ("Precision"), performed a forensic examination of the laptop and determined that there is "no evidence that [it] had ever been erased or wiped." Declaration of Kyle Shry ("Shry Decl."), DE [105-17], ¶¶ 6-7. Precision located 623 documents from the laptop and found 52 documents with hits on one or more of the search terms that the

parties had agreed upon. Lee Decl. ¶ 11. During the course of discovery, 67 documents were produced from DePace's laptop, *see* Pl. Sanctions Opp., 1, and Defendants offer no evidence to contradict Precision's findings that the DePace laptop was not erased.

Thus, the evidence before the Court indicates that two out of three categories that Defendants identified have been lost: the DePace Gmail account and the e-mails of 12 Capricorn custodians. Accordingly, the Court continues its analysis based on these two categories.

### 2. Whether Capricorn took reasonable steps to preserve the ESI

To meet its preservation obligations, the party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) (citation omitted). Once the litigation hold is in place, counsel "must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents." *Id.* at 432.

Capricorn is a small, family-owned and operated business that, prior to this litigation, had never been involved in a major civil litigation and had only previously engaged counsel to handle matters regarding its intellectual property. *See* Declaration of Dr. Charles M. Silberstein ("Silberstein Decl."), DE [105-19], ¶¶ 3-4. Accordingly, Plaintiff should not be held to the same standards as a large corporation with greater resources. *See Lokai Holdings LLC*, 2018 WL 1512055, at *11. Nonetheless, Capricorn failed to take reasonable steps to preserve the contents of

27

DePace's Gmail account and the e-mails of the 12 Capricorn custodians.  Capricorn's counsel did not impose a formal litigation hold when this litigation commenced in May 2015.  *See* Ricciardi Decl., Ex. H, Capricorn Dep., 221:5-222:25.  Further, although Capricorn had a duty to preserve ESI starting in November 2014, it did not take any steps to do so until July 2017.  *See* Schoenstein Decl. ¶¶ 8-15.  Prior to DePace's death in June 2015, Capricorn made no attempt to preserve or search for relevant messages within DePace's Gmail account.  *See* Ricciardi Decl., Ex. H, Capricorn Dep., 228:4-9.  By 2017, when Capricorn began its preservation efforts, it no longer had access to DePace's Gmail account and could therefore not search it for documents.  *See* Pl. Sanctions Opp., 2; Schoenstein Decl. ¶ 26.  Plaintiff's access to DePace's Gmail account in 2017 is of limited importance, however, as its obligation to preserve relevant ESI arose when it planned to file this lawsuit in November 2014.  Capricorn's delay in its efforts to preserve evidence by almost three years after contemplation of litigation is unreasonable.  *See Lokai*, 2018 WL 1512055, at *11 (party's eight-month delay in contacting e-mail service provider regarding preservation of e-mails was not reasonable).  Plaintiff similarly failed to take reasonable steps to preserve the e-mails of other Capricorn employees, including the 12 custodians.  According to Plaintiff, "Capricorn's e-mail system consisted of an old webmail version that provided for very limited storage within the e-mail service itself."  Corvinus Decl. ¶ 13; Schoenstein Decl. ¶ 17.  That the servers had limited storage capacity is not an acceptable excuse, however, considering that Capricorn's counsel should have been taking steps to monitor preservation of all ESI.  *See Lokai*,

28

2018 WL 1512055, at *11 (finding unreasonable party's failure to ensure that e-mails that had been deleted to accommodate storage limits would later be recoverable). Plaintiff's almost three-year delay in instituting a formal litigation hold and failure to otherwise informally preserve ESI lead the Court to conclude that Capricorn did not undertake reasonable steps to preserve ESI.

3. Whether the ESI can be restored or replaced through additional discovery

Based on the information before the Court, it does not appear that the contents of DePace's Gmail account and the e-mails of the 12 custodians can be restored or replaced. Plaintiff asserts that the information Defendants seek has not been lost. *See* Pl. Sanctions Opp., 9-11. However, as discussed above, Capricorn did not undertake preservation efforts until 2017. While Precision was able to confirm that information from DePace's laptop was not wiped, *see, e.g.*, Corvinus Decl. ¶¶ 6-7, and explain why ESI from each individual Capricorn custodian was not produced, *see, e.g.*, *id.* at ¶¶ 14-21, Plaintiff has not offered similar evidence to show that the e-mails of the 12 Capricorn employees were preserved. On the contrary, as discussed above, Capricorn's e-mail system consisted of "an old webmail version that provided for very limited storage within the email service itself," *see id.* at ¶ 13, and Plaintiff has offered no evidence that e-mails on Capricorn's system belonging to the 12 custodians Defendants identified can be restored by Precision or through additional discovery. Additionally, Plaintiff can no longer access DePace's Gmail account.[4] *See* Ricciardi

---

[4] Although neither party has addressed whether Defendants may engage in third-party litigation to gain access to DePace's Gmail account, the evidence presented indicates that information from the DePace Gmail account cannot be restored or replaced.

Decl., Ex. H, Capricorn Dep., 228:10-23; *see also* Ricciardi Decl., Ex. I, Letter from Capricorn's counsel, dated March 20, 2019.

ii. *Sanctions*

Based on the findings above, Defendants ask the Court to infer, when deciding Defendants' motions for summary judgment, that the information Capricorn erased or failed to preserve was unfavorable to Plaintiff. *See* Def. Sanctions Memo, 21. This sanction is permitted "only upon finding that [Capricorn] acted with the intent to deprive [Defendants] of the information's use in the litigation,"[5] *see* Fed. R. Civ. P. 37(e)(2), and "should not be given lightly." *Lokai*, 2018 WL 1512055, at *8; *see also* Fed. R. Civ. P. 37, Advisory Committee Note, 2015 Amendment ("Courts should exercise caution" in imposing the sanctions specified in Fed. R. Civ. P. 37(e)(2)). A "party's conscious dereliction of a known duty to preserve electronic data"—whether passive or active—"is both necessary and sufficient to find that the party 'acted with the intent to deprive another party of the information's use' under Rule 37(e)(2)." *See Ungar*, 329 F.R.D. at 13. However, even upon finding an intent to deprive, the court need not adopt any of the sanctions listed in Fed. R. Civ. P. 37(e)(2). *See* Fed. R. Civ. P. 37, Advisory Committee Note, 2015 Amendment. "The remedy should fit the

---

[5] The "intent to deprive" element of the amended Rule 37(e) replaced the more lenient "culpable state of mind" element under *Residential Funding Corp. v. DeGeorge Fin. Corp. See Ungar v. City of New York*, 329 F.R.D. 8, 12 (E.D.N.Y. 2018). Under *Residential Funding*, a "culpable state of mind" could mean "knowingly, even if without intent to breach a duty to preserve [the evidence], or negligently." 306 F.3d 99, 108 (2d Cir. 2002) (internal quotation marks, alterations and citation omitted). "Aside from modifying the state of mind required of a spoliator, the 2015 amendments to Rule 37(e) did not significantly alter the elements required at common law for sanctions to issue." *Ungar*, 329 F.R.D. at 13.

wrong, and the severe measures authorized by [Rule 37(e)(2)] should not be used when the information lost was relatively unimportant[.]" *Id.*

Capricorn's actions, or lack thereof, demonstrate an intent to deprive Defendants of information.  Not only should Capricorn have known that it had a duty to preserve ESI, Silberstein concedes that Plaintiff was in fact aware of this duty.  *See* Silberstein Decl., 12; Ricciardi Decl., Ex. A, March 13, 2018 Videotaped Deposition of Charles M. Silberstein ("Silberstein Dep."), DE [105-3], 39:19-25.  Silberstein's jokes during his deposition about throwing out and burning computer backup tapes demonstrates a contempt for Capricorn's preservation obligations that, when paired with Plaintiff's three-year delay in implementing preservation procedures, leads the Court to infer an intent to deprive Defendants of information.[6]  *See Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017) ("[F]ailure over a period of years to confirm that the data had been properly preserved despite its ongoing and affirmative" preservation obligations is "so stunningly derelict as to evince intentionality.").

Once an intent to deprive has been established, Rule 37(e)(2) does not require an additional finding of prejudice.  *See* Fed. R. Civ. P. 37, Advisory Committee Note, 2015 Amendment.  Nonetheless, as set forth above, a court may decline to impose the severe sanctions specified in Rule 37(e)(2) if it finds that the information lost was "relatively unimportant." *Id.*  Here, Defendants have failed to demonstrate that the

---

[6] *See* Ricciardi Decl., Ex. H, Capricorn Dep., 206:8-18 ("Q:  Did those backups cover all of the data stored within the 309 Main Street office? A: Yes. Which I'm glad you reminded me that it's time to throw some stuff out of storage.  Q:  I might suggest that you give it to your attorneys instead of throwing it out.  But we can come back to that.  A:  No, we burn it.").

information lost was significant.  In fact, Defendants are unable to identify what information was lost and instead argue that the "'pieces' compiled from other sources confirm the high likelihood that the lost information would directly benefit Defendants."  Def. Sanctions Memo, 16-17.  While Defendants need not show direct evidence of lost information, their inability to offer *any* evidence, such as an e-mail, deposition statement or other document, that refers to an unproduced e-mail, undermines their contention that the lost ESI would have provided "directly exculpatory evidence," *see* Reply Memorandum of Law in Further Support of Defendants' Motion for Sanctions Under Fed. R. Civ. P. 37(e)(2) to Remedy Plaintiff's Intentional Spoliation of Electronically Stored Information ("Motion for Sanctions Reply"), DE [105-38], 8.  *See Field Day, LLC v. Cty. of Suffolk*, No. 04-cv-2202, 2010 WL 1286622, at *14 (E.D.N.Y. Mar. 25, 2010) (declining to impose adverse inference where party seeking sanctions could point to no "missing links" that referred to unproduced evidence).

However, sanctions other than an adverse inference are available under Rule 37(e)(1) upon a showing that Defendants are prejudiced by the loss of information. Rule 37(e) does not clearly define "prejudice," and the advisory notes state simply that "[a]n evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation."  Fed. R. Civ. P. 37, Advisory Committee Note, 2015 Amendment.  Courts in this Circuit generally require some proof that the lost "evidence was not only probative, but that it would affirmatively support the movant's claim." *Ungar*, 329 F.R.D. at 15 (finding that

magistrate judge was "within her discretion to require some proof that [evidence] would have corroborated [movant's] claims"). Further, Rule 37(e) "does not place a burden of proving or disproving prejudice on one party or the other" but rather "leaves judges with discretion to determine how best to assess prejudice in particular cases." *Leidig v. Buzzfeed, Inc.*, No. 16-cv-542, 2017 WL 6512353, *12 (S.D.N.Y. Dec. 19, 2017) (citing Fed. R. Civ. P. 37(e)(1) Advisory Committee Note, 2015 Amendment).

According to Defendants, "[t]he shear breadth of information erased and lost by Capricorn . . . is inherently prejudicial." Def. Sanctions Memo, 14-15. However, Defendants offer no evidence whatsoever upon which the Court can conclude that Defendants have been prejudiced by the loss of e-mails of the 12 Capricorn custodians. With respect to the lost DePace Gmail content, Defendants offer little more than speculation and conjecture. Defendants recovered two e-mails sent through a GEICO e-mail server from DePace to Silberstein that undermine Capricorn's claims and argue that "it is reasonable to expect Mr. DePace used his now-lost Gmail account, rather than GEICO's e-mail server, to exchange other similarly frank and 'unhelpful' communications with Dr. Silberstein." *See id.* at 15. Defendants also discovered that DePace had sent two e-mails with confidential GEICO and AIS documents through his Gmail account and proffer that "[i]t is reasonable to expect that Mr. DePace similarly used his Gmail account to send Dr. Silberstein other confidential GEICO and AIS documents[.]" *See id.* at 16. Defendants have over 500 e-mails from DePace's Gmail account, *see* Lee Decl. ¶¶ 14-15, and while, as discussed above, these may not be all the e-mails from the account,

Defendants must show with some degree of specificity how the purported missing e-mails would have been helpful in defending against Capricorn's claims or pursuing Defendants' counterclaims. *See Alter v. Rocky Point Sch. Dist.*, No. 13-cv-1100, 2014 WL 4966119, at *12 (E.D.N.Y. Sept. 30, 2014). A finding of prejudice cannot be grounded on the basis that *some* evidence no longer exists. *See id.*

Although Plaintiff's conduct is far from model preservation of ESI, it is not liable for spoliation sanctions, much less a sanction as severe as an adverse inference, because Defendants have failed to show that the lost information was important or how they are prejudiced by such loss. Accordingly, the Court respectfully recommends that Defendants' motion for sanctions be denied.

### C. **Defendants' Motions for Summary Judgment**

Defendants filed two motions for summary judgment, which the Court addresses together due to the significant overlap between them. Defendants initially filed a summary judgment motion against Capricorn on all counts of its Amended Complaint: Breach of Lease and Royalty Agreement against GEICO (Count I); Breach of Non-Disclosure Agreement against GEICO (Count II); Misappropriation of Confidential Information "and/or" Trade Secrets against GEICO and AIS (Count III); and Conversion against GEICO and AIS (Count IV). *See* DE [107]. All counts are premised on Capricorn's allegations that Defendants used and disclosed Plaintiff's confidential and trade secret system, Supercede, for use in AIS's software and GEICO's ATLAS platform. Upon discovering new information relevant to Counts II

and III of the Amended Complaint, Defendants then filed an additional summary judgment motion, with leave of the Court.  *See* DE [121].

In reviewing Defendants' motions for summary judgment, the Court relies on those facts not in dispute and gives Plaintiff the benefit of the doubt when its assertions conflict with those of Defendants.  *See In re Corcoran*, 246 B.R. 152, 156 (E.D.N.Y. 2000) (citing *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996)).

    i.    *Summary Judgment on Count I*

Defendants seek summary judgment against Capricorn on Count I, breach of the LRA.  *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. First SJ Memo"), DE [107-1], 22-24.  As a threshold matter, the Court rejects Defendants' argument that Capricorn's failure to identify any specific trade secret or misappropriation thereof is fatal to its claims for breach of the LRA.  *See id.* at 23.  Whether Supercede is a trade secret that Defendants misappropriated is an inquiry separate and apart from whether GEICO violated the LRA, which is a private contract governing GEICO's use of Supercede.

Under New York law,[7] the elements of a breach of contract claim are:  "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-

---

[7] The LRA does not provide under which state's laws it should be construed.  A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021 (1941); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 169 (2d Cir. 2012).  The first step under New York choice-of-law rules in "any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (internal quotation marks and citation omitted).  If no actual conflict exists and New York is one of the jurisdictions involved, the court may simply apply New York law.  *See id.*  Here, both parties have applied New York law to the issue of breach of the LRA, and the law in New York and Maryland do not appear to conflict, *compare RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC*, 156

performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC*, 156 Fed.App'x. 349, 350-51 (2d Cir. 2005) (citation omitted). Here, the parties do not dispute that the LRA is a valid contract, so the only question is whether GEICO violated its terms.

Plaintiff alleges that GEICO used the Encovel Detection Module, that Capricorn created in 2009 to help GEICO detect fraud related to NCV tests, and/or programs based on the Encovel Detection Module outside of New York, including in New Jersey, in violation of the LRA, which limits GEICO's use of Supercede and its components to New York. *See* Amend. Compl. ¶¶ 30-45, 98-110. Defendants dispute that the LRA contains a geographic limit and further note that Capricorn licensed GEICO to use Supercede in New Jersey. *See* Defendants' Response to Plaintiff's Counter-Statement of Material Fact in Support of its Opposition to Defendants' Motion for Summary Judgment ("Def. First SJ CSOF Response"), DE [107-50], ¶¶ 111-17, 119.

Contract interpretation is a question of law for the court, and accordingly, the Court has reviewed the LRA in an attempt to resolve the parties' dispute. *See Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010). However, the Court finds that the terms of the LRA are ambiguous with respect to any geographical limitations. A contract is ambiguous where its terms "could suggest more than one meaning when viewed objectively by a reasonably

---

Fed.App'x. 349, 350-51 (2d Cir. 2005) *with Jolly v. Nationwide Agribusiness Ins. Co.*, No. 16-cv-00038, 2016 WL 1377400, at *4 (D. Md. Apr. 6, 2016). Therefore, the Court applies New York law.

intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* at 466 (internal quotation marks and citation omitted).  Clear contract language does not become ambiguous "merely because the parties urge different interpretations." *Id.* at 467.  Where contract language creates ambiguity, "extrinsic evidence as to the parties' intent may properly be considered[,]" and the meaning of the ambiguous contract becomes a question of fact for the factfinder, rather than a question of law for the court. *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (citations omitted).

Here, the LRA does not reference any geographical limitations.  However, the only state mentioned in the LRA is New York.  Specifically, the LRA provides that Capricorn will:  "continue to aid GEICO to maintain the installation exempt from New York State sales taxes"; and "provide a pass through to GEICO for the yearly data cost associated with the New York State No-Fault fee schedule." *See* Declaration of Richard C. Schoenstein ("Schoenstein Decl."), Ex. 25, Capricorn Supercede System Lease and Royalty, dated September 1, 2013, DE [107-35], §§ 1, 4.  A "reasonably intelligent person" examining the LRA could find that its terms suggest more than one meaning as to the existence of any geographical limitations. *See Law Debenture Tr. Co. of New York*, 595 F.3d at 465.  Accordingly, whether the LRA limits GEICO's use of Supercede and its components to New York is a question of fact for a jury.

An additional question of fact exists as to whether GEICO used its own NCV database or Capricorn's Encovel Detection Module.  Although GEICO contemplated

adding NCV fraud testing capabilities to AIS's software or to ATLAS, it is undisputed that it never did so.  *See* Def. First SJ CSOF Response ¶¶ 161, 167.  However, the parties dispute whether any efforts GEICO undertook while contemplating the creation of a nationwide NCV database involved gathering information from Capricorn's Encovel Detection Module or from a distinct GEICO NCV database.  *See id.* at ¶¶ 170-72.

Accordingly, because questions of fact exist as to whether the LRA limited GEICO's use of Supercede and its components to New York and whether GEICO used Capricorn's Encovel Detection Module, in violation of the LRA, the Court respectfully recommends that Defendants' motion for summary judgment on Count I of the Amended Complaint be denied.

### ii.   *Summary Judgment on Counts II and III of the Amended Complaint*

As both of Defendants' motions for summary judgment address Counts II and III, and in light of the overlap in Defendants' arguments regarding both counts, the Court addresses Defendants' motions for summary judgment on Counts II and III together.  Count II of Plaintiff's Amended Complaint alleges breach of the 2005 NDA between Capricorn and GEICO, pursuant to which GEICO agreed not to disclose "confidential information," including "information relating to each party's business and marketing plans, customers, employees, operations, technology or systems . . ." *See* Government Employees Insurance Company Confidentiality and Non-Disclosure Agreement ("NDA"), DE [55-2], 1(b).  Count III alleges misappropriation of trade secrets "and/or" confidential information under the federal Defend Trade Secrets Act

("DTSA") and the Maryland Uniform Trade Secrets Act ("MUTSA"), *see* Amended Complaint ¶¶ 111-19, 120-36, both of which provide civil liability for trade secret misappropriation.

Defendants seek summary judgment on Counts II and III based upon Capricorn's public filing of source code for its Supercede software.  According to Defendants, Plaintiff "destroy[ed] all possible trade secret or confidentiality protections" by filing numerous un-redacted applications to register Supercede modules in the Copyright Office between 2011 and 2013 (the "Copyright Deposits").[8] *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment Based on Plaintiff's Public Filing of Supercede Source Code in the U.S. Copyright Office ("Def. Second SJ Memo"), DE [121-1], 2-3.  Defendants argue that the Copyright Deposits disclosed, years prior to the 2015 commencement of this lawsuit, all the functionalities of Supercede that Capricorn claims are trade secret.  *See id.* at 2.

As a threshold matter, the Court rejects Plaintiff's argument that Defendants have waived any affirmative defense based on the Copyright Deposits because Defendants failed to mention them in their responsive pleadings despite knowing about them since November 2014.[9]  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment Based on Plaintiff's Public Filing of

---

[8] The Copyright Office permits copyright registration applicants to submit a redacted portion of source code "[w]here the program contains trade secret material . . ."  Registration of Claims to Copyright Deposit Requirements for Computer Programs Containing Trade Secrets and for Computer Screen Displays, 54 FR 13173-01, 1989 WL 275929(F.R.).

[9] The Court notes that Defendants dispute knowing about the Copyright Deposits in November 2014.  *See* Defendants' Response to Capricorn's Counter-Statement of Material Facts ("Def. Second SJ CSOF Response"), DE [121-57], ¶ 51.

Supercede Source Code in the U.S. Copyright Office ("Pl. Second SJ Opp."), DE [121-40], 20.  Plaintiff has the burden to prove the elements of its claims, which includes establishing that Supercede is confidential and/or trade secret.    Defendants' argument that the Copyright Deposits demonstrate that Supercede is neither confidential nor trade secret simply negates an element of Plaintiff's claims and is therefore not considered an affirmative defense.  *See Sesto v. Slaine*, 171 F. Supp. 3d 194, 206 (S.D.N.Y. 2016) ("If an argument can at most negate an element of the plaintiff's claim, it is not appropriately considered an affirmative defense.") (internal quotation marks and citation omitted).  Accordingly, Defendants are not procedurally barred from raising this argument on summary judgment.

Because Defendants focus the majority of their summary judgment motions on Capricorn's misappropriation of trade secrets claim, the Court addresses the motions with respect to Count III first.

    1.  Count III:  Misappropriation of trade secrets under the DTSA and MUTSA

        a.  Plaintiff failed to establish the existence of protectable trade secrets.

The DTSA and the MUTSA define a trade secret as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means" by another and that the owner has undertaken "reasonable" efforts to keep secret.  *See* 18 U.S.C. § 1839(3)(A)-(B); Md. Code Ann. Com. Law § 11-1201(e).  Both the MUTSA and the DTSA require a plaintiff claiming trade secret misappropriation to identify with specificity the

information it claims to be a trade secret.  *See Fyfe Co., LLC v. Structural Grp., Inc.*, No. 13-cv-176, 2016 WL 4662333, at *8 (D. Md. Sept. 7, 2016) ("It is axiomatic—and essential—that a plaintiff asserting a misappropriation of trade secrets claim identify their purported trade secrets with sufficient detail and precision."); *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05-cv-9292, 2008 WL 463884, at *9-10 (S.D.N.Y. Feb. 20, 2008) (applying specificity requirement to DTSA claim); *see also Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 258 (S.D.N.Y. 2014), *aff'd sub nom.*, 610 F. App'x 69 (2d Cir. 2015) (collecting cases in Second Circuit that have recognized the specificity requirement and noting that "each Circuit Court of Appeals to have opined on this issue has required a comparable degree of specificity").  "A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret."  *Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 48 (2d Cir. 2018) (internal quotation marks, alterations and citation omitted); *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) (finding that the "architecture" of Plaintiff's product—the way in which the product's "various components fit together as building blocks in order to form the unique whole"— constitutes trade secret) (internal quotation marks and citation omitted).

As an initial matter, Capricorn has not been entirely consistent in how it has characterized its purported trade secrets.  During discovery, Plaintiff asserted that the "entirety" of the Supercede system, "[m]any of the component modules and

methods," and Supercede's "functionalities, as assembled and amalgamated for GEICO's unique purposes, as devised and written by Capricorn," constitute trade secrets. *See* Declaration of Patrick F. Russell ("Russell Decl."), Ex. 23, Plaintiff's Amended Response to Defendant Auto Injury Solutions, Inc.'s First Set of Interrogatories, DE [107-14], 6; Schoenstein Decl., Ex. 30, Plaintiff's Amended Response to Defendant Government Employees Insurance Company's Second Set of Interrogatories, DE [107-38], 7. Now, on summary judgment, Plaintiff appears to have abandoned its focus on individual component modules and methods in favor of its theory that the *combination* of these modules and methods constitute a trade secret. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. First SJ Opp."), DE [107-19], 12-15.[10]

In opposition to Defendants' motions, Capricorn contends that the "record presents extensive evidence of Supercede's unique processes, operation, components and architecture and how its modules work and are linked together." Pl. First SJ Opp., 12. Accordingly, Plaintiff argues, even if portions of the Supercede code were included in the Copyright Deposits, such disclosure is insufficient to vitiate the secrecy of the unique process, design and operation of Supercede. *See* Pl. Second SJ Opp., 6-8; Declaration of Mohamed Elmasri in Opposition to Defendants' Motion for Summary Judgment ("Elmasri Decl."), DE [121-54], ¶ 3. Although, as set forth above, a unique process can constitute a trade secret, Capricorn has an obligation to describe

---

[10] Although on the instant motions Capricorn is not pursing its assertion that the "entirety" of the Supercede system is a trade secret, for the sake of completeness, the Court notes that such an assertion is overbroad and does not satisfy the specificity requirement. *See PaySys Int'l, Inc. v. Atos Se*, No. 14-cv-10105, 2016 WL 7116132, at *10-12 (S.D.N.Y. Dec. 5, 2016).

with sufficient specificity what this unique process is.  *Sit-Up Ltd.*, 2008 WL 463884, at *10 ("New York and Second Circuit law establish that compilation trade secrets are protectable but . . .  the law requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed and to show that its compilation is unique."); *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993) (Plaintiff "had to describe the subject matter of its alleged trade secrets in sufficient detail to establish each element of a trade secret.").  Capricorn lists the following "unique and integrated processes of Supercede":  (1) "Special Handling Flags functionality"; (2) "Search for Fee Schedule functionality"; (3) "Provider address functionality"; (4) "VRF messages"; (5) "MBR Reports"; (6) "Peer processing"; (7) "Narrative/support tracking" and "NF10/EOB Denial processing"; (8) "automatically e-mail SIU when bills are received for certain flagged provider providers"; (9) "genera[tion] [of] verification requests for charges that are not on the FPM view"; (10) "CMS Specialty Codes"; (11) "User tracking of bills"; and (12) "EMG/NCV data base,"  Pl. First SJ Opp., 14-15, and further refers to the Supercede Management Reports Menu, which "identifies over 50 unique and integrated reports and modules including:  "Claims Reports; Provider Reports; Other Reports; Peer Review Reports; Production Reports; Time in Process Reports; Peer Team Reports; Special Reports; Management Level Reports."  *Id.* at 15; *see also* Schoenstein Decl., Ex. 31, Management Reports Menu, DE [107-39].  However, Plaintiff fails to describe how these functionalities "fit together to form compilation trade secrets."  *Next Commc'ns, Inc.*, 2017 WL 4402540, at *5.  Merely listing various functions without

43

evidence of how these functions work together in a unique and valuable way is insufficient to warrant trade secret protection. *See Big Vision*, 1 F. Supp. 3d at 271 ("A plaintiff asserting a combination trade secret must demonstrate that the way in which the publicly-available components fit together is unique and not publicly-known."). It is undisputed that companies other than Capricorn, including AIS, provide medical bill review software, *see* Pl. CSOF ¶¶ 9, 67, and Plaintiff has not presented evidence to show that it has developed a unique and secret combination of functionalities for its software. *See Ancora Capital & Mgmt. Grp., LLC v. Corp. Mailing Servs., Inc.*, 214 F. Supp. 2d 493, 503 (D. Md. 2002) (granting summary judgment where purported trade secret involved goods and services "routine in the business world," and plaintiff offered "virtually no detail on its alleged trade secrets").

Capricorn's reliance on Judge Hurley's finding that Capricorn had sufficiently specified its trade secrets to survive a motion to dismiss, *see* Pl. First SJ Opp., 14, is misplaced at the summary judgment stage where Plaintiff must show not just that it has a plausible claim, but that there is a *genuine issue for trial*. *See Next Commc'ns, Inc.*, 2017 WL 4402540, at *4 ("At the pleading stage, specificity as to the precise trade secrets misappropriated is not required . . . . In order to survive summary judgment, however, the plaintiff must describe the secrets with greater precision; vague and indefinite illustrations will not suffice.") (internal quotation marks and citation omitted). In fact, this Court informed Capricorn during a hearing in October 2017 of its obligation to "identify what was allegedly misappropriated with specificity," and further noted that "the level of specificity increases as the case and

44

discovery proceeds." *See* Russell Decl., Ex. 22, Transcript of Civil Cause for Status Conference Before the Honorable Steven I. Locke United States Magistrate Judge, October 19, 2017, DE [107-13], 9-10, 16-17 (citing, *inter alia*, *Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17-cv-147, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017)).[11]

Finally, Plaintiff contends that the "unambiguous language of the NDA itself established that Capricorn's 'operations, technology or systems' shall be treated by the parties as trade secrets." Pl. First SJ Opp., 15. However, a trade secret is defined by law—in this case, the DTSA and MUTSA—not by contract. *See Ameritox, Ltd. v. Savelich*, 92 F. Supp. 3d 389, 401 (D. Md. 2015) (considering trade secret claims under MUTSA rather than under parties' confidentiality agreement); *Rogerscasey Inc. v. Nankof*, No. 02-cv-2599, 2002 WL 726655, at *1 (S.D.N.Y. Apr. 23, 2002), *aff'd*, 50 F. App'x 461 (2d Cir. 2002) (definition of trade secrets in agreement "cabined" by California trade secret statute). Accordingly, Plaintiff cannot rely on the NDA's definition of trade secret to relieve itself of the requirement that it describe the purported trade secret at issue with specificity.[12] Based on the foregoing, the Court

---

[11] Capricorn's reliance on case law involving different procedural postures is similarly unavailing. For instance, Plaintiff cites to *E.J. Brooks Co. v. Cambridge Sec. Seals*, No. 12-cv-2937, 2015 WL 9704079 (S.D.N.Y. Dec. 23, 2015) noting that there, the court found "sufficiently specific" the description of a trade secret as a "manufacturing process used to create" a product. *See* Pl. First SJ Opp., 13. However, before the *E.J. Brooks* Court was not a motion for summary judgment, but a motion for judgment as a matter of law or a new trial pursuant to Fed. R. Civ. P. 50 and 59, which was made after a jury had returned a verdict in favor of the plaintiff. The court was not faced with the question of whether the plaintiff's description of its trade secret was sufficiently specific to survive summary judgment. Rather, based upon the different Rule 50(b) and Rule 59(b) standards, the court determined that enough evidence had been presented at trial such that the jury's finding of trade secret misappropriation was reasonable.

[12] Because Capricorn is unable to identify with specificity how the combination of the Supercede components and controls constitutes a trade secret, the Court need not address whether the Copyright Deposits vitiate the secrecy of Supercede.

concludes that Capricorn has failed to identify a protectable trade secret, and Plaintiff's claim for misappropriation of trade secret accordingly fails.

> b. Plaintiff failed to show that Defendants misappropriated Supercede.

Assuming *arguendo* that Supercede is a trade secret, Plaintiff nevertheless fails to raise a triable issue of fact regarding Defendants' alleged misappropriation of Supercede. To establish misappropriation under the DTSA and MUTSA, Capricorn must demonstrate that Defendants wrongfully acquired, disclosed or used a trade secret. *See* 18 U.S.C.A. § 1839(5); Md. Code Ann., Com. Law § 11-1201(c). Plaintiff argues that Defendants: (i) analyzed the design, process and operation of Supercede for its own use; (ii) showed Supercede to Defendants' information technology personnel; (iii) transmitted thousands of confidential documents containing Supercede's technical information to Defendants' information technology personnel; (iv) duplicated Supercede; and (v) mapped Supercede so that Defendants' systems can communicate with and transfer data from Capricorn. Pl. First SJ Opp., 17. While Plaintiff notes that it has "submitted extensive direct evidence supporting Defendants' misappropriation," it fails to direct the Court to any such evidence. *Id*. In fact, Capricorn does not dispute that it never reviewed AIS source code to determine whether it had copied Supercede, even though the Court adopted the parties' Stipulated Amended Protective Order ("Protective Order") in September 2017, DE [79], which permitted Plaintiff to do so. *See* Pl. CSOF ¶ 76. Further, although Capricorn's consulting software expert, Elliott, reviewed GEICO's source code, Plaintiff has failed to submit a report detailing his conclusions. *See supra* § III.

A.   The only evidence Capricorn provides regarding the source code is its own response to GEICO's Interrogatories which was signed by Silberstein, who can neither read nor write source code, and who never personally inspected source code from GEICO or AIS.  *See* Pl. CSOF ¶¶ 23, 76, 81.  Silberstein asserts, in Plaintiff's amended response to GEICO's Interrogatories, that "specific references in GEICO's source code . . . would not appear in GEICO's source code unless someone at GEICO— and/or AIS—duplicated information from Capricorn's operations, technology and systems."  *See* Schoenstein Decl., Ex. 30, 12.  This conclusory statement made by Capricorn's owner does not raise a genuine question of fact, especially considering Plaintiff's expert in source codes and employees who are proficient in coding have not opined as to any similarities between Supercede and Defendants' systems.

Nonetheless, Plaintiff may rely on circumstantial evidence to raise an inference of misappropriation by showing that Defendants had access to Supercede and that there are similarities between Supercede and ATLAS, such that misappropriation is "more probable than not."  *Stanacard, LLC v. Rubard, LLC*, No. 12-cv-5176, 2016 WL 462508, at *19 (S.D.N.Y. Feb. 3, 2016) (internal quotation marks and citation omitted).  Capricorn refers to the "substantial evidence" it has of Defendants' misappropriation and summarily directs the Court to review over 100 statements of fact and scores of exhibits.  *See* Pl. First SJ Opp., 17.  Reviewing these documents has consumed considerable judicial resources, yet absent any context, the Court cannot conclude that a genuine issue of fact exists sufficient to defeat summary judgment.  This case involves a highly technical subject matter, and it is Plaintiff's

burden not simply to point the Court to e-mails, spreadsheets and full deposition transcripts, but to explain how these pieces of evidence raise a genuine issue to be tried. *See Cea v. Access 23 TV*, No. 11-cv-3791, 2015 WL 5474070, at *3 (S.D.N.Y. Sept. 15, 2015) (["J]udges are not like pigs; they will not hunt for truffles buried in briefs or the record.") (internal quotation marks, alterations and citation omitted). In response to Defendants' assertions that there is no dispute, Capricorn simply reiterates conclusory statements that "AIS provides bill review software . . . . ATLAS is GEICO's national claims management software platform . . . . At a minimum, both have been implemented at GEICO using Capricorn's operations, technology and systems as a model and reference point," without ever identifying what functions ATLAS provides or which of these functions were derived from Supercede. *See* Pl. CSOF ¶ 85; *see also id.* at ¶ 86. Plaintiff supports its conclusory responses with citations to extensive portions of its counterstatement of facts. *See, e.g., id.* at ¶ 84 ("As to the software AIS has provided to GEICO, it was designed and developed using Capricorn's operations, technology and systems as a model and reference point. *See infra* ¶¶ 139-254."). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001). Plaintiff's repeated citations to the same voluminous portions of its own statement of facts does not satisfy this purpose.

Capricorn's failure to offer more than conclusory statements of misappropriation is especially damaging in light of Defendants' evidence—deposition

testimony and e-mails showing that DePace, Capricorn's primary coder of Supercede, did not believe Defendants had copied Supercede. At Silberstein's instructions, DePace analyzed GEICO's migration to AIS's web-based software to determine whether Defendants were copying or reverse engineering Supercede. *See* Pl. CSOF ¶¶ 55-56. He concluded that Defendants "cannot be copying the [Supercede] code." *See* Russell Decl., Ex. 18, July 22, 2014 e-mail from DePace to Silberstein, DE [107-11] ("Since they are not using Visual Basic, they cannot be copying the code."). DePace also concluded that he "would have no way of knowing and no way to find out" if Defendants were "copying concepts" from Supercede. *See id.* DePace repeated his determination that he had found no duplication of Capricorn processes to Silberstein and Anderson. Pl. CSOF ¶ 60. Silberstein, testifying as Capricorn's corporate representative under Fed. R. Civ. P. 30(b)(6), admitted that he did not know whether Capricorn's trade secrets had been implemented in ATLAS. *See* Russell Decl., Ex. 8, March 15, 2018 Videotaped Deposition of Capricorn by Charles M. Silberstein ("Capricorn Dep."), DE [107-7], 46:10-47:11. Although Silberstein noted his "suspicions" that Defendants had misappropriated the source code at issue, *id.* at 47:16-23, "mere speculation or conjecture as to the true nature of the facts . . . cannot by themselves create a genuine issue of material fact." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

In July 2017, Capricorn told this Court that its review of the source code revealed "smoking gun evidence" of Plaintiff's claims. *See* Transcript of Civil Cause for Status Conference Before the Honorable Steven I. Locke United States Magistrate

49

Judge, July 19, 2017, DE [80], at 5:9-13.  In responding to Defendants' motions for summary judgment, however, Plaintiff makes no reference to any such evidence from the source code and instead relies on evidence that GEICO shared information about Supercede with AIS.  *See* Pl. First SJ Opp., 4-8.  According to Capricorn, "GEICO broke apart [Supercede] to identify the components and functionalities it wanted to retain," "adopted the advantages of Supercede by copying, incorporating and implementing them directly into the ATLAS system" and "provid[ed] access to and/or disclos[ed] Supercede to AIS."  *See id.* at 5-7.  At first glance, such statements appear to identify a genuine issue of fact.   However, Capricorn has not submitted any evidence to genuinely dispute Defendants' assertion that the "functionalities" GEICO discussed with AIS were GEICO's business requirements rather than Plaintiff's trade secrets.  *See* Def. First SJ Memo, 21; Pl. CSOF ¶¶ 10, 18-19; *see also* Russell Decl., Ex. 2 March 14, 2018 Videotaped Deposition of Judith Silberstein, DE [107-5], 92:17-93:19 (agreeing that "the whole goal of Supercede was to address GEICO's business requirements," which were put "into the [Supercede] code [by DePace]").  Plaintiff's assertion that "Capricorn injected its own concepts to enhance" GEICO's business requirements, without more, does not create a genuine dispute to defeat summary judgment.  *See* Pl. CSOF ¶ 18.  Accordingly, even if there were a protectable trade secret at issue, summary judgment would nevertheless be appropriate as to Count III because there is no evidence of misappropriation.  For both of these reasons, the Court recommends that Defendants' motion for summary judgment as to Count III of the Amended Complaint be granted.

2.  <u>Count II:  Breach of the NDA</u>

Pursuant to the NDA, Capricorn and GEICO agreed to treat confidential information "as strictly confidential and as trade secret information, by protecting such information in the same manner and to the same extent and subject to the same protections as the receiving party treats and protects its own respective proprietary and confidential information of like importance."  NDA § 1(e).  The NDA defines "confidential information," as "certain confidential and proprietary information . . . including, without limitation, information relating to such party's business and marketing plans, customers, employees, operation, technology, or systems, whether oral, visual, electronic, or in any medium whatsoever."  NDA, 1.  Under Maryland law, which is applied pursuant to the NDA's terms, *see* NDA ¶ 5, to establish breach of contract, "a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."  *Jolly v. Nationwide Agribusiness Ins. Co.*, 2016 WL 1377400, at *4.  Plaintiff's claim for breach of the NDA is premised on its allegation that GEICO shared Capricorn's confidential information with AIS.  Defendants dispute that GEICO shared confidential information with any third party and further argue that even if it had, GEICO would not be in breach of the NDA because the Copyright Deposits rendered any previously confidential information public, and the NDA bars any claims for information that enters the public domain.  *See* Def. Second SJ Memo, 13-14.[13]

_____

[13] The NDA provides: "Neither party shall be responsible under any conditions in the event any Confidential Information is disclosed to any third party during the term of this Agreement or thereafter if such Confidential Information:  (a) Was in the public domain at the time of the communication thereof by the owner or the receiving party; [or] (b) Enters into the public domain

Capricorn provides evidence that GEICO was gathering information regarding Supercede to show AIS as early as 2009—two years before Plaintiff made the Copyright Deposits. *See* Pl. CSOF ¶ 201. However, just as with its misappropriation claim, Capricorn fails to submit evidence that GEICO shared with AIS Plaintiff's "confidential and proprietary information." To be sure, parties can agree that certain information will be confidential, even if such information would not otherwise constitute a trade secret. Thus, the Court does not reach its conclusion based on Capricorn's failure to show that its trade secret was misappropriated, but rather based on Plaintiff's failure to dispute GEICO's evidence that any information it shared with AIS consisted of GEICO's proprietary business requirements, rather than Capricorn's confidential information. Accordingly, the Court respectfully recommends that Defendants' motion for summary judgment on Count II of the Amended Complaint be granted.

### iii.   *Summary Judgment on Count IV*

Finally, Defendants seek summary judgment against Capricorn on Count IV, conversion. *See* Def. First SJ Memo, 24-25. Defendants' argument that Capricorn's failure to identify any specific trade secret or misappropriation thereof is fatal to its claims for conversion is unavailing. *See id.* at 24. Capricorn's conversion claim turns on Capricorn's ownership of Supercede and whether Defendants deprived Plaintiff from accessing or using it, and Capricorn need not establish trade secret misappropriation to succeed on its conversion claim. *See Trikona Advisors Ltd. v.*

---

through no fault of the receiving party subsequent to the time of the communication thereof to the receiving party[.]"

*Kai-Lin Chuang*, No. 12-cv-3886, 2013 WL 1182960, at *3 (E.D.N.Y. Mar. 20, 2013) (recognizing distinct inquires between misappropriation and conversion claims).

Conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.,* 460 F.3d 400, 403-04 (2d Cir.), *certified question accepted*, 7 N.Y.3d 837, 824 N.Y.S.2d 207 (2006), and *certified question answered*, 8 N.Y.3d 283, 832 N.Y.S.2d 873 (2007) (internal quotation marks and citation omitted). To establish conversion—which extends to protect the wrongful exclusion of an owner's right to electronic data and information—Capricorn must establish that Defendants have "exercised an unauthorized dominion" over Supercede to the exclusion of Capricorn's rights as its owner. *See Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 414 (S.D.N.Y. 2018) (internal quotation marks and citation omitted). Interference with a party's right to access its source code and databases constitutes conversion. *See C.D.S., Inc. v. Zetler*, 298 F. Supp. 3d 727, 747 (S.D.N.Y. 2018), *appeal withdrawn*, No. 18-1318, 2018 WL 3689978 (2d Cir. June 1, 2018).

Plaintiff stored Supercede in GEICO's facilities in Woodbury and Washington D.C. *See* Schoenstein Decl., Ex. 27, March 6, 2018 Video Deposition of David Silberstein ("D. Silberstein Dep."), DE [107-36], 87:15-25; Schoenstein Decl. Ex. 2, March 13, 2018 Deposition of Charles M. Silberstein, ("C. Silberstein Dep."), DE [107-23], 113:7-114:18; 198:23-199:20; Schoenstein Decl., Ex. 29, GEICO's Response to Capricorn's First Set of Interrogatories (Nos. 1-6) ("GEICO First Interrog. Response"), DE [107-37], 6. According to Plaintiff, Defendants "completely cut off

Capricorn's ability to access its own source code." Pl. First SJ Opp., 23. However, Capricorn offers no evidence, apart from the conclusory statement above, to show that Defendants prevented it from accessing or using Supercede at GEICO's facilities. *See* Pl. First SJ Opp., at *passim*; *Cf. Zetler*, 298 F. Supp. 3d at 747 (finding defendant liable for conversion upon plaintiff's showing that defendant had taken a series of actions to prevent plaintiff from accessing its source code). Accordingly, Plaintiff has failed to show the existence of a genuine question of fact sufficient to defeat Defendants' motion as to its conversion claim, and the Court respectfully recommends that Defendants' motion for summary judgment on Count IV of the Amended Complaint be granted.

## D. **GEICO's Motions to File Under Seal**

Finally, the Court addresses GEICO's four motions to file certain documents under seal. GEICO moves for leave to file under seal documents relating to Defendants' motions: (i) to strike; (ii) for sanctions; (iii) for summary judgment on all counts of Plaintiff's Amended Complaint; and (iv) for summary judgment on Counts II and III of Plaintiff's Amended Complaint. GEICO seeks to file these documents under seal pursuant to Fed. R. Civ. P. 26(c)(1)(G) because they "contain sensitive business information and trade secrets," and further argues that sealing these documents is in accordance with the Protective Order as they have been marked "Confidential" or "Highly Confidential." *See* Brief in Support of GEICO's Motion for Leave to E-File Documents Under Seal Relating to Defendants' Motion to Strike ("GEICO Motion to Seal Motion to Strike"), DE [104-1]; Brief in Support of GEICO's

Motion for Leave to E-File Documents Under Seal Relating to Defendants' Motion for Sanctions, ("GEICO Motion to Seal Motion for Sanctions"), DE [106-1];  Brief in Support of GEICO's Motion for Leave to E-File Documents Under Seal Relating to Defendants' Motion for Summary Judgment, ("GEICO Motion to Seal First SJ"), DE [109-1]; Memorandum of Law in Support of GEICO's Unopposed Motion for Leave to E-File Document Under Seal Relation to Defendants' Motion for Summary Judgment, ("GEICO Motion to Seal Second SJ"), DE [123].

A protective order "may provide guidance" regarding what documents might be appropriate to seal." *Uni-Sys., LLC v. U.S. Tennis Ass'n, Inc.*, No. 17-cv-147, 2018 WL 6179433, at *7 (E.D.N.Y. Nov. 27, 2018).   However, the decision to allow documents to be filed under seal "is a wholly separate inquiry" than whether to maintain confidential documents disclosed in discovery.  *Id.*  Accordingly, applying the standards set forth above, the Court examines whether the documents GEICO seeks to seal are judicial documents, and if so, whether the importance of the public's access to these documents outweighs GEICO's privacy interests.  *See Lugosch*, 435 F.3d at 119.  In determining whether pursuant to Fed. R. Civ. P. 26(c)(1)(G), because they are trade secrets, documents shall be filed under seal, courts consider:  "(1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the measures taken to guard the information's secrecy; (4) the value of the information to the business or to its competitors; (5) the amount of time, money, and effort expended in development of the information; and (6) the ease or difficulty [in] duplicating or properly acquiring

the information." *Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-cv-5023, 2010 WL 889799, at *5 (E.D.N.Y. Mar. 8, 2010) (internal quotation marks and citation omitted and alteration in original).

     i.    *Documents Relating to the Motion to Strike*

Initially, GEICO seeks to file under seal Exhibits D and E to the Declaration of Richard C. Schoenstein in Opposition to Defendants' Motion to Strike, which are Defendants' Rebuttal Expert Reports of Dr. Benjamin Goldberg and Ambreen Salter, and Exhibit F to the Declaration of Timothy B. Hardwick in Support of Defendants' Motion to Strike, which is Plaintiff's Amended Response to GEICO's Second Set of Interrogatories.

GEICO has designated Exhibits D and E "Highly Confidential." *See* Declaration of Matthew J. Harrison in Support of GEICO's Motion for Leave to E-File Documents Under Seal Relating to Defendants' Motion to Strike ("Harrison Decl., Motion to Seal Motion to Strike"), DE [104-10], ¶¶ 5-6. Additionally, both reports contain information that GEICO does not share with its vendors or competitors as it contains confidential information material to GEICO's business. *Id.* at ¶ 7. GEICO contends that disclosure of the information in these reports would result in serious injury to GEICO because vendors and competitors would gain knowledge of proprietary aspects of GEICO's business, intellectual property and other trade secrets. *Id.* at ¶ 8. Having reviewed Exhibits D and E—which detail the development process and functionality of GEICO's ATLAS program and GEICO's confidential financial and business information, respectively—and noting that

Capricorn does not object to filing both exhibits under seal, the Court grants GEICO's motion to file under seal Exhibits D and E to the Declaration of Richard C. Schoenstein in Opposition to Defendants' Motion to Strike. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Leave to E-File Documents Under Seal Relating to Defendants' Motion to Strike Experts, DE [114], 1.

Capricorn objects to GEICO's motion to file Exhibit F under seal. *See id.* GEICO seeks to seal Exhibit F on the basis that it "discusses in detail the functions of the Supercede system, source code relating to the Supercede system, aspects of GEICO's claims systems relating to fraud detection and prevention, and other details relating to GEICO's efforts to develop a next-generation claims system and claims handling processes." Harrison Decl., Motion to Seal Motion to Strike ¶ 4. Exhibit F is a judicial document, as it was submitted to the Court for its consideration as relevant to adjudicating the relief sought in Defendants' motion to strike. *See Lugosch*, 435 F.3d at 119. In balancing GEICO's privacy interest against the public's interest in access to this judicial document, the Court finds that GEICO has not made a "particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). GEICO's broad allegations that disclosure would result in "serious competitive injury to GEICO," *see* Harrison Decl., Motion to Seal Motion to Strike ¶ 2, are insufficient to outweigh the presumption of public access to judicial documents. *Id.* Further, having reviewed Exhibit F, the Court does

not find that it reveals any specific details about GEICO's claims systems.  Rather, the document—which in large part simply contains Capricorn's objections to GEICO's interrogatories—offers broad assertions about Capricorn's allegations against Defendants and generalized summaries regarding GEICO's use of Supercede.  *See, e.g.*, Plaintiff's Amended Response to Defendant Government Employees Insurance Company's Second Set of Interrogatories, DE [104-4], 13-14.  Thus, Exhibit F does not fall into the category of commonly sealed documents, as GEICO contends, *see* GEICO's Reply in Support of its Motion for Leave to E-File Documents Under Seal Relating to Defendants' Motion to Strike, DE [119], 3.  *See Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018) (noting that categories commonly sealed include those containing trade secrets, confidential research and development information, marketing plans, revenue information, [and] pricing information").  Nevertheless, out of an abundance of caution, GEICO's motion for leave to file Exhibit F under seal is denied without prejudice and with leave to renew to allow GEICO to better explain why the information contained in Exhibit F should remain confidential.  *See Bayer Schera Pharma AG v. Sandoz, Inc.*, No. 08-cv-03710, 2009 WL 10699031, at *2 (S.D.N.Y. Nov. 13, 2009) (denying motion to seal interrogatory responses where movant failed to demonstrate that responses contained confidential information and movant would suffer injury upon disclosure).

ii.   *Documents Relating to the Motion for Sanctions*

GEICO further seeks to file under seal the following exhibits to the Declaration of Matthew J. Ricciardi in Support of Defendants' Motion for Sanctions:  (i) Exhibit

A, which is a portion of the transcript of the March 13, 2018 videotaped deposition of Silberstein; (ii) Exhibit D, which is an e-mail chain between Silberstein and DePace, dated January 16, 2014; (iii) Exhibit E, which is an e-mail from DePace to Silberstein, dated December 9, 2014; (iv) Exhibit F, which is a portion of the transcript of the confidential February 2, 2018 deposition of Leone; (v) Exhibit G, which is an e-mail chain between Silberstein and Leone, dated November 11, 2014 to November 12, 2014; (vi) Exhibit H, which is a portion of the transcript of the videotaped March 15, 2018 deposition of Capricorn, through its corporate representative, Silberstein; (vii) Exhibit N, which is an e-mail chain between Silberstein and DePace, dated July 22, 2014; and (viii) Exhibit O, which is an e-mail from DePace to Anderson, dated November 12, 2014.   GEICO also seeks to file under seal Exhibits E and I to the Declaration of Richard C. Schoenstein in Opposition to Defendants' Motion for Sanctions, which are portions of the transcripts of Roberta Schaefer's ("Schaefer") March 1, 2018 deposition and Silberstein's March 15, 2018 deposition, respectively.

The exhibits that GEICO seeks to seal are judicial documents, as they were submitted for the Court's consideration on GEICO's motion for sanctions and are related to the outcome. *See Lugosch*, 435 F.3d at 119.  GEICO urges the Court to find that the injury GEICO would suffer as a result of the disclosure of trade secrets and confidential business information contained in these documents outweighs the public's presumptive right to access them.  *See* GEICO Motion to Seal Motion for Sanctions, 4-5.  However, GEICO does not articulate how the information contained in each exhibit is a trade secret within the meaning of Fed. R. Civ. P. 26(c)(1)(G) or

demonstrate a "clearly defined and very serious injury" that would arise from disclosure of the information.  *See Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998)*; Nycomed US, Inc.*, 2010 WL 889799, at *6.  Instead, GEICO offers a blanket statement as to all exhibits that the information contained in them is confidential, not shared outside GEICO, not broadly available within GEICO and that disclosure of the information would result in a loss of "business advantage" in GEICO's negotiations with vendors and exposure to competitors of GEICO's business, intellectual property and trade secrets.  *See* Declaration of Matthew J. Harrison in Support of GEICO's Motion for Leave to E-File Documents Under Seal Relating to Defendants' Motion for Sanctions ("Harrison Decl., Motion to Seal Motion for Sanctions"), DE [106-17], ¶¶ 10-11.

With respect to Exhibits A and H, GEICO asserts that they contain details regarding GEICO's business requirements and that GEICO would be harmed by disclosure to competitors of its proprietary business operations, but does not provide specific examples or articulated reasoning for this broad allegation of harm.  *See* GEICO's Reply in Support of its Motion for Leave to E-File Documents Under Seal Relating to Defendants' Motion for Sanctions ("GEICO Motion to Seal Motion for Sanctions Reply"), DE [117], 3.  Similarly, GEICO offers no explanation for how disclosure of the information from the e-mail chains contained in Exhibits D, E, N and O—two of which GEICO quotes verbatim in its unsealed Memorandum of Law in Support of Defendants' Motion for Sanctions[14]—would harm GEICO.  *See* GEICO

---

[14] *See* Def. Motion for Sanctions, 3 (quoting Exhibits D and E).

Motion to Seal Motion for Sanctions Reply, 4.  Although GEICO notes that Exhibit D "spells out specific source code changes" that GEICO was implementing in 2014, it does not explain how disclosure of such changes, five years after they were made, would result in injury.  *See id.*  GEICO's assertions that Exhibits F and G contain "sensitive GEICO business information" are similarly insufficient to establish harm of disclosure.  Exhibit G is an e-mail, which is referenced in the deposition transcript that is Exhibit F, in which Silberstein raised issues with Leone which would become the basis of Capricorn's Complaint against GEICO.  Even if the Court were to accept GEICO's argument that these exhibits "reflect[] GEICO's approach to responding to the threatened litigation," GEICO does not explain how its approach to litigation warrants protection.  *See id.* at 5.  Finally, GEICO is unable to show how the information in Exhibit E to the Declaration of Richard C. Schoenstein—that "GEICO implements security measures on its e-mail platform"—is protectable or how disclosure of such information would harm it.  *See id.*

GEICO's conclusory assertions do not satisfy the requirements for protection of Fed. R. Civ. P. 26(c)(1)(G) and thus do not outweigh the "strong presumption of public access" to information contained in a judicial document.  *Nycomed US, Inc.*, 2010 WL 889799, at *6.  Accordingly, GEICO's motion for leave to file under seal documents relating to Defendants' motion for sanctions is denied, again without prejudice and with leave to renew to allow GEICO to better explain why the information contained in the exhibits at issue should remain confidential.

> iii.   *Documents Relating to the Motion for Summary Judgment on All Counts of Amended Complaint*

Next, GEICO seeks to file under seal the following documents relating to Defendants' motion for summary judgment on all counts:  (i) an unredacted version of Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment; (ii) an unredacted version of Defendants' Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment; (iii) Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment; (iv) Defendants' Response to Plaintiff's Counter-Statement of Material Facts in Support of its Opposition to Defendants' Motion for Summary Judgment; (v) an unredacted version of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment; and (vi) Plaintiff's Counter-Statement of Material Facts in support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.  Defendants also seek to file under seal the following exhibits:  (i) Exhibits 1, 4-10, 12, 13, 15-20, 26 and 27 to the Declaration of Patrick F. Russell ("Russell Declaration"); (ii) Exhibits O and P to the Declaration of Charles D. Ossola ("Ossola Declaration"); and (iii) Exhibits 1, 2, 10, 11, 15-26, 28, 29, 31, 33-87, 89-171, 173-87 and 190-94 to the Declaration of Richard C. Schoenstein ("Schoenstein Declaration").

In support of its motion to seal hundreds of documents, GEICO presents:  (i) the same opening brief filed in support of its other motions to seal, which contains only the applicable legal standard; (ii) a five-page declaration by Harrison; and (iii) a nine-page reply brief.  The documents GEICO seeks to seal are all judicial documents

submitted for the Court's consideration, and related to the outcome, on GEICO's motion for summary judgment, *see Lugosch*, 435 F.3d at 119, yet, as with the two motions to seal discussed above, GEICO fails to show that its privacy interest in these documents outweighs the public's presumptive right to access them. GEICO does not articulate how the information contained in each exhibit is protectable within the meaning of Fed. R. Civ. P. 26(c)(1)(G) or demonstrate a "clearly defined and very serious injury" that would arise from disclosure of the information. *See Encyclopedia Brown*, 26 F. Supp. 2d at 613; *Nycomed US, Inc.*, 2010 WL 889799, at *6. Instead, GEICO offers a blanket statement as to all exhibits that the information contained in them is confidential, not shared outside GEICO and not broadly available within GEICO and that disclosure of the information would result in "serious injury," including a loss of "business advantage" in GEICO's negotiations with vendors and exposure to competitors of GEICO's business, intellectual property and trade secrets. *See* Declaration of Matthew J. Harrison in Support of GEICO's Motion for Leave to E-File Documents Under Seal Relating to Defendants' Motion for Summary Judgment ("Harrison Decl., Motion to Seal First SJ"), DE [109-211], ¶¶ 20-21.

GEICO divides the documents it seeks to seal into seven categories: (i) briefing papers; (ii) statements of fact; (iii) deposition testimony; (iv) discovery responses; (v) business documents; (vi) GEICO internal communications; and (vii) communications with third parties. *See* GEICO's Reply in Support of its Motion for Leave to E-File Documents Under Seal Relating to Defendants' Motion for Summary Judgment ("GEICO Motion to Seal First SJ Reply"), DE [118], 4-8; *see also* Harrison Decl.,

Motion to Seal First SJ ¶¶ 4-19. With respect to the first category—Defendants' and Plaintiff's briefing papers—GEICO seeks to prevent disclosure of the NCV fraud detection methods used by its claims management system. *See* GEICO Motion to Seal First SJ Reply, 4-5; Harrison Decl., Motion to Seal First SJ ¶¶ 4, 10, 13. Aside from the blanket assertion in the Harrison Declaration that all documents are trade secret or confidential, GEICO offers no information upon which the Court could determine whether its NCV fraud detection methods are trade secrets or otherwise confidential so as to merit protection under Fed. R. Civ. P. 26(c)(1)(G). Similarly, GEICO's assertions that the second category, the parties' statements of facts, are "shot through with information relating to the trade secrets and confidential business information at issue in this litigation," offers no real basis upon which the Court can determine that GEICO's privacy interest outweighs the public's presumptive right to access the information contained within these statements of facts. *See* GEICO Motion to Seal First SJ Reply, 5. Such assertions of trade secret and confidential business information, standing alone, do not merit protection. *See Nycomed US, Inc.*, 2010 WL 889799, at *6. GEICO's explanation that category three, discovery responses, "includ[e] confidential portions," without so much as an example of such a portion is similarly insufficient to warrant protection. *See* GEICO Motion to Seal First SJ Reply, 6. Categories four and five, discovery responses and business documents, fare no better. Although, for the first time, GEICO provides examples of the documents in each category that contain confidential information, it fails to explain how disclosure of these documents would harm GEICO. GEICO asserts that Exhibit 29

to the Schoenstein Declaration—an interrogatory response from 2016—and Exhibit 5 to the Russell Declaration—a business document from 2008—would "result in serious injury to GEICO if disclosed," *see* GEICO Motion to Seal First SJ Reply, 6-8, but fails to provide specific examples or reasoning for this broad allegation of harm. *See Nycomed US, Inc.*, 2010 WL 889799, at *6. Finally, GEICO's assertion that the 90 internal communications in the sixth category and the approximately 40 third-party communications in the seventh category, "relate to the Supercede software, the software platform conversion process, the allegations raised by Capricorn, licensing, royalty, and fee-related information, and other matters relating to GEICO's trade secrets and confidential business information," *see* GEICO Motion to Seal First SJ Reply, 8, fails to demonstrate how any of these documents are trade secret or confidential within the meaning of Fed. R. Civ. P. 26(c)(1)(G) or show what harm would result from their disclosure. *See Encyclopedia Brown Prods.*, 26 F. Supp. 2d at 613.

Accordingly, GEICO's motion to seal documents relating to its motion for summary judgment on all counts of the Amended Complaint is also denied without prejudice and with leave to renew upon a showing that the information contained in each document is a trade secret within the meaning of Fed. R. Civ. P. 26(c)(1)(G), or is otherwise protectable, or demonstrates a clearly defined harm that would arise from disclosure of the information.

iv.    *Documents Relating to the Motion for Summary Judgment on Counts II and III of Amended Complaint*

Finally, GEICO seek to file under seal Exhibit 195 to the Declaration of Richard C. Schoenstein in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment, which is the rebuttal expert report of Goldberg.  Neither Plaintiff nor AIS oppose this motion.  For the same reasons discussed above in relation to GEICO's motion to file under seal the Goldberg rebuttal report filed with Defendants' motion to strike, the Court finds that GEICO has demonstrated that disclosure of the information contained within this exhibit, which was designated as "Highly Confidential" pursuant to the Protective Order, would result in serious injury to GEICO.  *See supra*, § III.D.i; *see also* Memorandum of Law in Support of GEICO's Unopposed Motion for Leave to E-File Document Under Seal Relating to Defendants' Motion for Summary Judgment, DE [123-1].  Accordingly, GEICO's motion for leave to file under seal Exhibit 195 to its motion for summary judgment on Counts II and III of the Amended Complaint is granted.

## IV.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendants' motions be granted in part and denied in part.  Specifically, the Court recommends that Defendants' motion:  (i) to strike purported expert disclosures and exclude expert testimony be granted; (ii) for sanctions pursuant to Fed. R. Civ. P. 37(e)(2) be denied; (iii) for summary judgment on all counts of Capricorn's Amended Complaint be granted as to Counts II, III and IV and denied as to Count I; and (iv) for summary judgment on Counts II and III of Plaintiff's Amended Complaint be

granted.  Further, GEICO's motion for leave to file documents under seal:  (i) relating to Defendants' motion to strike is granted in part and denied in part without prejudice and with leave to renew; (ii) relating to Defendants' motion for sanctions is denied without prejudice and with leave to renew; (iii) relating to Defendants' motion for summary judgment on all counts of the Amended Complaint is denied without prejudice and with leave to renew; and (iv) relating to Defendants' motion for summary judgment on Counts II and III of the Amended Complaint is granted.

## V.   OBJECTIONS

A copy of this Order, Report and Recommendation is being served on all parties by electronic filing on the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days.  *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within the specified period waives the right to appeal the District Court's order.  *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            July 22, 2019

                              s/ Steven I. Locke
                              STEVEN I. LOCKE
                              United States Magistrate Judge