UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CAPRICORN MANAGEMENT SYSTEMS,
INC.,

                         Plaintiff,

     -against-

GOVERNMENT EMPLOYEES INSURANCE
CO., and AUTO INJURY SOLUTIONS, INC.,

                      Defendants,

     -against-

CHARLES M. SILBERSTEIN,

                  Counterclaim-Defendant.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**

15-CV-2926 (DRH)(SIL)


**APPEARANCES:**

**For Plaintiff:**
Tarter Krinsky & Drogin LLP
1350 Broadway, 11 Floor
New York, New York 10018
By:    Richard C. Schoenstein, Esq.
        David J. Pfeffer, Esq.

**For Defendant Government Employees Insurance Company:**
Hunton Andrews Kurth LLP
200 Park Avenue
New York, New York 10166
        and
2200 Pennsylvania Avenue, NW
Washington, DC 20037
By:    Joseph J. Saltarelli, Esq.
        Charles D. Ossola, Esq
        Matthew J. Ricciardi, Esq

**For Defendant Auto Injury Solutions, Inc.**
Latham & Watkins LLP
885 Third Avenue, 3rd Floor
New York, New York 10022
By:     Blake T. Denton, Esq.
        and
Goodsmith Gregg Unruh LLP
150 South Wacker Drive, Suite 3150
Chicago, Illinois 60606
By:     Timothy B. Hardwicke, Esq.
        Patrick Russell, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Capricorn Management Systems Inc. ("Capricorn" or "Plaintiff")

commenced this action against Defendant Government Employees Insurance Co.

("GEICO") asserting claims for breach of a licensing agreement, breach of a non-

disclosure agreement, and misappropriation of trade secrets under Maryland law.

Thereafter, Plaintiff filed an amended complaint which added as a defendant Auto

Injury Solutions Inc. ("AIS") (together with GEICO, "Defendants"), along with a

claims for violation of the Defend Trade Secrets Act and for conversion against

GEICO and AIS.

Presently before the Court is the Report and Recommendation of Magistrate

Judge Steven I. Locke, dated July 22, 2019 (the "R&R), recommending that

Defendants' motion (1) to strike purported expert disclosures and exclude expert

testimony be granted; (2) for sanctions be denied; and (3) for summary judgment be

granted as to the claims for breach of a non-disclosure agreement (Count II)),

misappropriation of trade secrets  "and/or' confidential information under the

federal Defend Trade Secrets Act ("DTFA") and the Maryland Uniform Trade Secrets Act (MUTSA") (Count III) and conversion (Count IV), but denied as to the claim for breach of a lease and royalty agreement (Count I)).[1] Objections have been filed by both Plaintiff and GEICO.[2]

## FORMAT OF DECISION

By way of format, the Court will set forth the undisputed facts, followed by both a summary of Judge Locke's recommendations as to each of the three motions and the relevant applicable standards. Against that backdrop, as to each of the three motions, the Court will set forth the nature of the objections and the Court's ruling as to those objections.

## BACKGROUND

The following facts are undisputed unless otherwise noted.

## I.    The Parties

Capricorn is a New York corporation that designs and provides application software for insurance companies and medical billing services. Counterclaim-Defendant Charles M. Silberstein ("Silberstein") and his wife are the controlling shareholders of Capricorn. AIS is GEICO's nationwide medical bill review software provider.

---

[1] The R&R also decided GEICO's motion for leave to file certain documents under seal. No appeal has been filed as to that portion of the R & R and therefore the Court has elected to omit any discussion of that portion of the R & R.
[2] The R & R having recommended granting summary judgment as to the two claims asserted against it, AIS did not file any objections, although it did respond to the objections filed by Capricorn.

## II.    The Parties' Relationships

For 35 years, Capricorn provided software and related services to GEICO in New York. Over the course of their relationship, they entered into various agreements, including a 2005 Non-Disclosure Agreement (the "NDA") governing the parties' respective obligations to preserve confidential information.

In June 2007 GEICO issued a Request for Information (the "RFI") seeking a "web-based nationwide software solution to meet [its] first party medical bill review requirements." Among other things the RFI requested information regarding the functionality of the responding vendor's existing medical bill review software, the ability of that software to integrate with Geico's other applications and evidence of the responding vendor's financial stability.  Both Capricorn and AIS responded, along with five other entities. Capricorn's response indicated that more than 40% of GEICO's business requirements would not available for six to nine months, 25% of those requirements were neither available nor planned for development by Capricorn for the next one to two years, its software did not have web-based functionality and it did not have experience providing claims management software on a nationwide basis. AIS's response highlighted its software's web-based functionality and its nationwide experience. Among the seven responsers, AIS's was rated first by GEICO and Capricorn's was rated last. AIS was selected to serve as GEICO's nationwide medical bill review software provider. At the same time GEICO was implementing AIS's medical bill review software, it was also

implementing a new national claims management software platform called ATLAS; AIS's software interfaced with the ATLAS platform.

In 2008, Capricorn and GEICO entered into a Lease and Royalty Agreement ("LRA") for an automobile first party medical bill review software called Supercede; this software was developed by Capricorn specifically to meet GEICO's business requirements and GEICO was the only Supercede customer. In 2009, Capricorn began developing the Encovel Detection Module as a component of Supercede. The Encovel Detection Module was designed to be compatible with GEICO's information and systems; its purpose was to detect fraud related to Nerve Conduction Velocity ("NCV") testing. Capricorn provided a copy of Supercede's source code to GEICO; it was housed in GEICO's Woodbury, New York office and then at its offices in Chevy Chase, Maryland. By 2013, Capricorn knew that "sooner or later GEICO was not going to have any need for the services that [Capricorn] has provided over the years." In January 2015, the primary author of the Supercede source code, Gerry DePace ("DePace") sent Silberstein a GEICO document concerning GEICO's conversion to AIS's software. Silberstein instructed De Paul to find out "what if anything" GEICO and AIS were taking from Capricorn and expressed concerns that those two entities could be "stealing/reverse engineering/ copying" Capricorn's operations and technology.

Alleging that ATLAS and the AIS software that interacted with it had been designed and developed using Capricorn's operations, technology, and systems, Capricorn commenced this action on May 20, 2015 against GEICO asserting claims

for (1) breach of the LRA; (2) breach of the NDA and (3) misappropriation of trade secrets.  Capricorn filed an amended complaint on January 30, 2017, which added AIS as a defendant, alleging misappropriation of trade secrets against AIS and added a claim for conversion against GEICO and AIS. In response, GEICO filed counterclaims against both Capricorn and Silberstein and AIS filed counterclaims against Capricorn.[3]

## III.  The R & R

### A.    The Motion to Strike Plaintiff's Expert Disclosures

After setting forth the undisputed facts and relevant standards, Judge Locke turned his attention to Defendants' motion to strike Capricorn's disclosures submitted on behalf of its experts Michael R. Elliot ("Elliot") and Joseph Nelson ("Nelson").  (R & R at 3-12.) First, he rejected the argument that Defendants should have "met and conferred" with Plaintiff before filing their motion.  Judge Locke then proceeded to assess whether Plaintiff's expert disclosures met the requirements of Rule 26(a)(2)(B) and concluded that they were deficient in numerous respects. (*Id.* at 12-16.) He then went on to assess the appropriate sanction. Weighing the relevant factors, he concluded that preclusion of Nelson's and Elliot's opinions was appropriate. Weighing heavily against Capricorn was its failure to offer any legitimate explanation for its failure to comply with its disclosure requirements and its concession that although the two experts are "important" to its case they are "not necessary to it." Further, Defendants would suffer prejudice as "allowing Nelson

---

[3] The current motions do not address these counterclaims.

and Elliot to testify would redraw the boundaries of the case and almost certainly prejudice Defendants' ability to accommodate potentially significant shifts in the theories being offered against them." (*Id.* at 16- 21.) Finally, Judge Locke rejected Plaintiff's argument that if the motion to strike was granted the Court should preclude Defendants' experts from testifying. (*Id.* at 21-22.)

## B. The Motion for Sanctions Against Capricorn and Silberstein

Asserting that Plaintiff failed to preserve the electronically stored information ("ESI") of DePace (the principal coder of Supercede) and the data of Capricorn's office computer network, including ESI for 12 custodians, Defendants moved for sanctions and asked that the Court infer that the unpreserved information was unfavorable to Capricorn when deciding Defendants' motions for summary judgment. Applying the amended version of Fed. R. Civ. P. 37(e), Judge Locke first concluded that some of the ESI that should have been preserved was lost. Specifically, he found that Defendants had shown that content from DePace's gmail account and emails (but not all ESI) of 12 Capricorn employees were lost.[4] Next, he concluded that Capricorn failed to take reasonable steps to preserve the ESI as it delayed its efforts to preserve evidence by almost three years after contemplation of litigation and that, based on the information before him, it did not appear that the contents of DePace's gmail account and the emails of the 12 custodians could be restored or replaced. Turning last to the issue of what, if any, sanctions should be imposed, Judge Locke concluded that sanctions were not

---

[4] Judge Locke rejected Defendants' assertion that ESI from DePace's laptop was lost.

appropriate despite the fact that Capricorn's actions demonstrate an intent to deprive the Defendants of information as Defendants failed to demonstrate that the lost information was significant. Thus, he recommended that the motion for sanctions be denied. (R & R 22-34.)

### C. The Motions for Summary Judgment

#### 1. Breach of the LRA (Count I)

In addressing the claim for breach of the LRA, Judge Locke began by considering and rejecting the argument that Capricorn's failure to identify any specific trade secret or misappropriation thereof was fatal. He reasoned that whether Supercede is a trade secret is an inquiry distinct from whether GEICO violated the LRA.

Noting that the alleged violation of the LRA was based on the assertion that Supercede was used by GEICO outside of New York and that GEICO disputed whether there is a geographic limitation in the LRA, Judge Locke found the terms of the LRA ambiguous with respect to any geographical limitation. He found that the question was one for a jury because although the LRA does not reference any geographical limitations, the only state mentioned in it is New York. He further found that there was a question of fact as to whether GEICO used its own NCV database or Capricorn's Encovel Detection Module. "Although GEICO contemplated adding NCV fraud testing capabilities to AIS's software or ATLAS, it never did so. However, the parties dispute whether any efforts GEICO undertook while contemplating creation of a nationwide NCV database involved gathering

information from Capricorn's Encovel Detection Module or from a distinct GEICO

NCV database." (R & R at 37-38.) Accordingly, he recommended denial of the

motion for summary judgment on Count I.

    2.    Breach of the NDA (Count II) and Misappropriation of
<u>Confidential Information and/or Trade Secrets (Count III)</u>

Count II of the Amended complaint alleges breach of the 2005 NDA pursuant

to which GEICO agreed not to disclose "confidential information" including

"information relating to each party's business and marketing plans, customers,

employees, operations, technology or systems . . . ." Count II alleges

misappropriation of trade secrets "and/or" confidential information under the federal

Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq., and the Maryland Uniform

Trade Secrets Act, Md. Code Ann. Com Law § 11-1201 et seq. Defendants' motion as

to Counts II and III is based on Capricorn's public filing of source code for its

Supercede software in the Copyright Office between 2001 and 2013 which disclosed

all the functionalities of Supercede that Capricorn claims are trade secret.

Judge Locke began his analysis with the claims under Count III.

    a.    *Misappropriation of Trade Secret and/or*
*Confidential Information (Count III)*

Addressing Count III first, Judge Locke found that Capricorn failed to

establish a protectable trade secret. He first noted Capricorn inconsistency in

identifying its trade secrets. Whereas it initially asserted that "the entirety of the

Supercede system, many of the component modules and methods and Supercede's

functionalities, as amalgamated for GEICO's unique purposes, as devised and

written by Capricorn constitute trade secrets," on summary judgment it "appear[ed] to have abandoned its focus on individual component modules and methods in favor of its theory that the combination of these modules and methods constitute a trade secret." (R & R at 41-42 (internal quotations marks, brackets and citations to the record omitted). Judge Locke then proceeded to address Capricorn's argument, prescinding from that refinement, that the disclosures in the Copyright Office are insufficient to vitiate the secrecy of the unique process, design and operation of Supercede. He found that Capricorn had failed to describe how these functionalities fit together to form compilation trade secrets. He also rejected Capricorn's claim that the "unambiguous language of the NDA itself established that Capricorn's operations, technology or systems shall be treated as trade secrets" given that trade secret is defined by the statues upon which Capricorn was suing, viz. DTSA and MUTSA , and not by contract. Finally, he found that Capricorn had failed to describe how the functionalities of its software fit together to form compilation trade secrets.

Judge Locke also concluded that even if Supercede was a trade secret, Capricorn had failed to raise a triable issue of fact as to its misappropriation by Defendants as it failed to direct the Court to any such evidence, did not dispute that it never reviewed AIS source code to determine whether it had copied Supercede and never submitted a report detailing the conclusions of its consulting engineer who reviewed GEICO's source code. (R & R at 46-47.) Although Capricorn did submit various pieces of evidence such as emails, spread sheets and deposition

transcripts, Judge Locke noted that Capricorn failed to explain how these pieces of evidence raise a genuine issue of facts. He also noted the evidence submitted by Defendants – "deposition testimony and e-mails showing that DePace, Capricorn's primary coder of Supercede did not believe Defendants had copied Supercede" and that Capricorn had "not submitted any evidence to genuinely dispute Defendants' assertion that the 'functionalities' GEICO discussed with AIS were GEICO's business requirements rather than Plaintiff's trade secrets." (*Id.* at 48-50.)

In sum Judge Locke recommended that the motion for summary judgment be granted on Count III as Plaintiff failed to establish a protectable trade secret and because Capricorn failed to show misappropriation by Defendants. (R & R at 50.)

### b. *Breach of the NDA (Count II)*

Addressing Count II, breach of the NDA, Judge Locke recommended that the motion for summary be granted, not on the basis that Capricorn's failed to show its trade secret was misappropriated but rather due to "Plaintiff's failure to dispute GEICO's evidence that any information it shared with AIS consisted of GEICO's proprietary business requirements, rather than Capricorn's confidential information." (R & R at 51-52.)

### 3. Conversion (Count IV)

In addressing the claim for conversion, Judge Locke began by noting that conversion "turns on Capricorn's ownership of Supercede and whether Defendants deprived Plaintiff from accessing or using it and Capricorn need not establish trade secret misappropriation to succeed on its conversion claim." (R & R at 52.) Finding

that Capricorn offered only conclusory statements, and not evidence, to show that Defendants prevented it from accessing or using Supercede at GEICO's facilities in Woodbury and Washington D.C. where it was stored, Judge Locke recommended granting the motion for summary judgment on the conversion claim.

## DISCUSSION

### I. Relevant Standards

#### A. Review of a Report and Recommendation

When a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district judge shall make a *de novo* determination of any portion of the report and recommendation addressing a dispositive matter to which specific objection has been made. Non-dispositive matters, as well as those portions of the report and recommendation addressing dispositive matters for which no objection is made, are reviewed under the clear error and contrary to law standards. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a) & (b); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). "An order is clearly erroneous only if the reviewing court, considering the entirety of the evidence is left with the definite and firm conviction that a mistake has been committed; an order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Centro De La Comunidad Hispana De Locust Valleyv. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (internal quotation marks omitted).

As the parties do not agree on what is dispositive and what is not, a further discussion is necessary. Generally, orders relating to discovery sanctions are considered nondispositive. For example, a magistrate judge has authority to issue award of attorney's fees as a Rule 37 sanction or issue a preclusion order as such orders are non-dispositive. *See, e.g., Errant Gene Therapeutics v. Sloan-Kettering Inst. for Cancer* Research, 768 F. App'x 41, 142 & n.1; *UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.,* 2011 WL 1453797, at *1 n.2 (S.D.N.Y. Apr. 11, 2011). However, striking a pleading as a discovery sanction is considered dispositive and therefore a magistrate judge can only recommend such a course of action. How does a court determine where to draw the line between dispositive and non-dispositive sanctions? This Court agrees with the analysis of the issue set forth in *Khatabi v. Bonura*, 2017 WL 10621191 (S.D.N.Y. Apr. 21, 2017):

> To determine whether a magistrate judge's ruling regarding discovery sanctions is "dispositive," the Court must look to the effect of the sanction—if imposed. *See Kiobel [v.Millson]*, 592 F.3d [78,] 97 [2d Cir. 2010)] ("Analyzing the effects of the particular sanction imposed by a magistrate judge, to determine whether it is dispositive or nondispositive of a claim, is the approach that best implements Congress's intent.") (emphasis added). Thus, in determining between dispositive and non-dispositive discovery sanctions, the critical factor is what sanction the magistrate judge actually imposes, rather than the one requested by the party seeking sanctions. *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1519-20 (10th Cir. 1995) (rejecting argument that magistrate judge ruled on dispositive motion because litigant sought entry of a default judgment and explaining that "[e]ven though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction," the order is treated as non-dispositive under Rule 72(a)); 12 Wright, Miller & Marcus, FEDERAL PRACTICE & PROCEDURE § 3068.2, at 342-44 (2d ed. 1997) (disputes about handling of discovery ordinarily viewed as non-dispositive under Rule 72 and treated as dispositive only when "the magistrate judge actually imposes" a dispositive sanction); *cf. La*

> *Barbera v. ASTC Labs., Inc.,* No. Civ. 2006-5306 (DLI) (MDG), 2007 WL 1423233, at *1 (E.D.N.Y. May 10, 2007) ("However, since entry of default is a potential sanction, whether my decision is a matter within my pretrial reference authority depends on the sanction imposed."); *but see Estate of Jackson ex rel. Jackson v. Cty. of Suffolk*, No. 12 Civ. 1455 (JFB), 2014 WL 3513403, at *3 (E.D.N.Y. July 15, 2014) (in case where Plaintiff requested to strike Defendants' pleading and enter default judgment, "[i]n an abundance of caution, the Court has treated the Spoliation Order as a Report and Recommendation and conducted a de novo review of the entire Spoliation Order.").

2017 WL 10621191, at * 3; *accord Fashion Exchange LLC v. Hybrid Promotions, LLC*, 2019 WL 6838672 (S.D.N.Y. Dec. 12, 2019); *Cruz v. G-Star Inc.*, 2019 WL 4805765 (Sept. 30, 2019); *cf. Rosa v. Genovese Drug Stores, Inc.*, 2017 WL 4350276, at *1 (E.D.N.Y. July 31, 2017) (treating a magistrate judge's order imposing an adverse inference instruction sanction as non-dispositive, and reviewing the order under a "clearly erroneous" standard). Applying the foregoing principles to the instant matter, the Court will review the portions of Judge Locke's R & R addressing the motion to strike Capricorn's expert disclosures and the motion for sanctions under the clearly erroneous/contrary to law standard.[5]

### B. Motion for Summary Judgment

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing

---

[5] The Court notes that Judge Locke addressed the motions (1) to strike and preclude and (2) for sanctions in a report and recommendation "in an abundance of caution." (*See* R & R at 2 n.1.)

law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When making this determination, a court must view all facts "in the light most favorable" to the non-movant, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586-87), and "may not rely on conclusory allegations or unsubstantiated speculation," *Id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS*

*Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252),

because the "evidentiary burdens that the respective parties will bear at trial guide

district courts in their determination[s] of summary judgment motions," *Brady v.*

*Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).  "[W]here the [non-movant]

will bear the burden of proof on an issue at trial, the moving party may satisfy its

burden by pointing to an absence of evidence to support an essential element of the

[non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486

(2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210-11) (internal quotation marks

omitted).  Where a movant without the underlying burden of proof offers evidence

that the non-movant has failed to establish his claim, the burden shifts to the

non-movant to offer "persuasive evidence that his claim is not 'implausible.' "

*Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).  "[A] complete failure of

proof concerning an essential element of the [non-movant's] case necessarily renders

all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).

## II.    The Motion to Strike Plaintiff's Purported Expert Disclosures and Exclude Expert Testimony is Granted

Plaintiff objects to that portion of Judge Locke's R & R addressing the motion

to strike and exclude on three grounds. First, Capricorn maintains that Defendants'

failure to promptly raise any objections to its disclosures "strongly militates"

against preclusion. Second, the circumstances do not justify the exercise of the

Court's discretion to preclude the expert reports. Third, Judge Locke's

determination should be modified to similarly preclude Defendants' experts or

permit rebuttal testimony from Capricorn's experts. As noted earlier, this portion Judge Locke's R & R is properly reviewed for clear error.

As aptly set forth by Judge Locke, when a party discloses an expert witness, Rule 26 requires that the disclosure be accompanied by a written report that must contain ""(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2). It further requires that the disclosure and report be provided "at the times and in the sequence that the court orders." *Id.* at 26(a)(2)(D).

Capricorn does not contest Judge Locke's finding that its disclosures failed to meet the requirements of Rule 26. Rather it asserts that the fact that Defendants did not provide any "case in chief" expert report in accordance with the scheduling order entered in this case but rather only provided rebuttal experts "seriously undermines any argument that they were prejudiced by the disclosures submitted by Capricorn" and the "decision to submit rebuttal experts while sitting on any objection they had to Capricorn's experts until three months after discovery was closed was not in good faith . . . ." Pl.'s Obj. (DE 132) at 33. The Court rejects these contentions and finds no clear error in Judge Locke's decision to preclude.

Judge Locke applied the appropriate standard, to wit the four-factor test set forth in *Softel Inc. v. Dragon Med. And Scientific Comm. Inc.*, 118 F.3d 995 (2d Cir. 1997). Applying that test he determined that all four factors weighed in favor of preclusion. As to the first factor "the party's explanation for the failure to comply with the discovery order," Capricorn still offers no legitimate explanation for its failure to comply with the disclosure requirements. The Court's rejects Capricorn's attempt to denigrate the deficiencies in its reports as "one of format." (*See* Pl.'s Obj. at 37.) The deficiencies set forth by Judge Locke in the two expert reports at issue relate to what are arguably the most important portions of an expert's required disclosure, viz. the basis and reasons for the opinion, the facts or data considered in forming them, and the exhibits that will be used to summarize or support them. It further rejects that Defendants have suffered no prejudice. Allowing Plaintiff at this late date to provide the missing crucial information as to their experts would necessitate further discovery and a reevaluation by Defendants as to their expert's report, as well as the potential for procuring additional expert testimony.

Finally, the Court finds no basis to adopt the "modifications" proposed by Capricorn "to protect" it from the consequences of its own conduct. As Judge Locke concluded "there is no reason to strike Defendant's properly submitted expert reports." Nor should Elliot be permitted to testify in rebuttal given the failing in Capricorn's Rule 26 disclosure; such as course of action would permit Capricorn to do an end run around the requirements of Rule 26.

In sum, the Court adopts Judge's Locke's R & R vis a vis the motion to strike and exclude in toto.

## III. The Motion for Sanctions is Denied

Both Capricorn and GEICO have filed objections to that portion of the R & R which addresses the motion for sanctions. Capricorn maintains that Judge Locke incorrectly concluded that it lost the ESI for 12 custodians and that it acted with intent to deprive defendants of information. GEICO maintains that given the finding that Capricorn committed intentional spoliation, Judge Locke erred in declining to impose any sanctions; it argues that an adverse inference is appropriate or, in the alternative, that it was prejudiced and therefore at the very least a lesser sanction must be imposed.

Turning first to Capricorn's objections, the Court is underwhelmed by its argument that GEICO's behavior, including alleged destruction of evidence, is far worse that Capricorn's. (*See* Pl.'s Obj. at 42: Pl.'s Rep. (DE 136) at 14-15.) Nor does Capricorn's "explanation" concerning its unsophisticated email and IT system, provide a basis for why it produced no emails for 12 custodians.  This Court finds no error in Judge Locke's conclusion that emails from DePace's gmail account and the emails of 12 Capricorn custodians were lost. Nor was there error, no less clear error, in his conclusion that Capricorn failed to take reasonable steps to preserve ESI. It is undisputed that no steps to put a litigation hold in place were taken until July 2017, nearly three years after litigation was contemplated and two years <u>after</u> this action was instituted. Moreover, as Capricorn concedes, Silberstein testified at his

deposition that he was aware of the obligation to preserve evidence relevant to this litigation and thus it is fair to infer that Capricorn acted with an intent to deprive GEICO of information. In sum, the Court rejects Plaintiff's objections to that portion of the R & R addressing the motion for sanctions.

GEICO's objections fare no better. Having reviewed the basis for Judge Locke's conclusion that no sanctions should be imposed, the Court concurs in that conclusion.  As Judge Locke pointed out, Defendants' inability to offer an email, document or evidence that refers to any unproduced email undermines the contention that the lost ESI would provide exculpatory evidence.  As Defendants were unable to show that any lost information was important or how they were prejudiced, the motion for sanctions is denied.

## IV.    The Motion for Summary Judgment

With respect to the motion for summary judgment GEICO objects to Judge Locke's recommendation that it be denied as to Count I. Capricorn objects to the recommendation that summary judgment be granted as to Counts II, III and IV.

### A.      Summary Judgment on the Claim for Breach of LRA is Denied

In its objections as to Count I, GEICO takes the position that the Court need not determine the geographic scope of the LRA as there is no evidence that it used the Encovel Detection Module outside of New York relying upon deposition testimony of one Seth Brady.

Preliminarily, the Court notes that Brady's deposition testimony is not cited in Defendants' 56.1 statement and therefore it would appear that they are relying

upon matters not presented in their initial papers. Even putting that aside, contrary to Defendants' assertion, Capricorn did submit evidence that would permit a reasonable trier of fact to conclude that GEICO used or duplicated Capricorn's Encovel Detection Module outside of New York. (*See* Pl.'s 56.1 (DE 109-18) at ¶¶ 175-187 and materials cited therein). Accordingly, summary judgment is denied as to the claim for breach of the LRA (Count I).

### B. Summary Judgment is Granted as to Claim for Misappropriation of Confidential Information and/or Trade Secrets (Count III)

Capricorn has filed objections to the recommendation that summary judgment be granted as to its claim for misappropriation of confidential information and/or trade secret under both Federal and Maryland law. Having reviewed the record de novo, the Court rejects Capricorn's objections and concludes that GEICO is entitled to summary judgment on Count III.

Firstly, the Court rejects Capricorn's reliance on allegation in its complaint and this Court's decision on GEICO's motion to dismiss to support its argument that summary judgment should be denied as this Count. Allegations in a complaint are not evidence and the standard on a motion to dismiss is far different than the one for summary judgment.

Both the DTSA and the MUTSA define a trade secret as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertained through proper means" by another and the owner has undertaken "reasonable efforts to keep secret." 18 U.S.C. §

1839(3)(A), (B); Md Code Ann. Com. Law § 11-1201(e). As Judge Locke noted,

Capricorn has not been consistent in how it characterizes its purported trade

secrets. With respect to the motion for summary judgment, its position is that it is

the combination of Supercede's modules and methods that constitute a trade secret.

But as Judge Locke found, Capricorn merely lists the various functions without

evidence of how they work together in a unique and valuable way.

The decision in *Next Commc'ns Inc. v. Viber Media Inc.*, 758 F. App'x 46 (2d

Cir. 2018) is instructive in this regard. In that case, the Circuit affirmed the grant

of summary judgment against the plaintiff on its claim for misappropriation of a

trade secret. The Court recognized that because "a trade secret can exist in a

combination of characteristics and components, each of which, by itself, is in the

public domain, but the unified process, design, and operation of which, in unique

combination, affords a competitive advantage . . . is a protectable secret[,] computer

software programs that contain components that are generally not known by

outsiders have received judicial recognition as trade secrets." *Id.* at 48 (brackets,

internal quotation marks, and citations omitted). To receive trade protection status,

in the context of a summary judgment motion "the party opposing summary

judgment must be able to identify the alleged trade secret with sufficient specificity

to make the moving party aware of what information it has allegedly

misappropriated." In *Next Commc'ns*, the claim for trade secret protection of a "HD

Video Cloud Architecture" (the "Architecture") failed for two reasons. Addressing

the failure to raise a genuine issue as to existence of a trade secret, the Circuit

noted the shifting definition of the trade secret offered by the Plaintiff, exacerbated by the failure to describe with particularity any of the mechanisms of its Architecture. It then found the evidence relied on by the Plaintiff consisted of "vague labels, rudimentary graphics, and high-level concepts" which failed to convey an information about how the Architecture works as a whole and a declaration which merely described the functions of the various components but not how the function as an operating system. *Id.* at 49-50.

Similarly, the evidence present by Capricorn merely lists the functions of Supercede; it fails to present evidence of how they function together in a unique way. Merely repeatedly reciting that they function uniquely is insufficient to sustain Capricorn's burden. Also relevant is that Capricorn admits that Supercede's functionality was dictated by GEICO and its proprietary business requirements.

Even if Supercede was a trade secret, it lost the nomenclature by virtue of Capricorn's copyright filings. Beginning in 2011 and continuing into 2013 Capricorn filed at least 13 applications to register Supercede modules in the Copyright Office; none of the application were redacted although regulations permit redaction of the source code an applicant considers a trade secret, *see, e.g.,* 37 C.F.R. 202.20 (c)(vii)(A)(2) (effective May 13, 2011–Aug. 7, 2012); 37 C.F.R. 202.20 (c)(vii)(A)(2) (effective Aug. 8, 2012–Nov. 7, 2012); 37 C.F.R. 202.20(c)(vii)(A)(2) (effective Nov. 8, 2012–Mar. 7, 2017). The deposit of such materials without redaction vitiates a trade secret claim. *See, e.g., PaySys Int'l, Inc. v. Atos Se,* 2016 WL 7116132, * 8 (S.D.N.Y. Dec. 5, 2016) (noting that the failure to abide by Copyright Office procedure to

protect trade secrets in computer programs for which registration is sought "renders the deposited material publicly accessible and vitiates a trade secret claim.") Capricorn's argument that the filings "contain only a small portion of the Supercede source code and would not enable replication of the system" is unavailing given that it is claiming the functionalities as trade secrets, not replication of the entire Supercede program.

Finally, to the extent Capricorn had a trade secret, it has failed to raise a triable issue of fact as to its misappropriation by Defendants. It does not dispute that it never reviewed AIS's source code to determine if it copied Supercede and never submitted a report detailing the conclusions of its consulting engineer who reviewed GEICO's source code. Defendants have submitted deposition testimony and emails showing that Capricorn's primary coder of Supercede, DePace, did not believe Defendants had copied Supercede. DePace authored emails stating that "[s]ince they are not using Visual Basic, they cannot be copying the code" and that he found no duplication of Capricorn processes. Silberstein admitted at his deposition that he did not know whether Capricorn's trade secrets had been implemented in ATLAS. The evidence Capricorn submitted regarding its source code, i.e., answers to interrogatories signed by Silberstein, is insufficient to raise a triable issue of fact as he can neither read nor write source code and never personally inspected either GEICO's or AIS' source code. Nor does Capricorn's contention that GEICO "adopted the advantages of Supercede by copying, incorporating and implementing them directly into the ATLAS system" and

provided access to and/or disclosed Supercede to AIS, does not raise a genuine issue of fact as Capricorn's own witness testified that the "whole goal of Supercede was to address GEICO's business requirements." That concession vitiates any claim that the functionalities of Supercede constitute a trade secret. Further, it renders Capricorn reliance on evidence that Defendants exhibited Supercede to Defendants' information technology personnel and analyzed the processes and operation of Supercede and adopted the advantages of Supercede into its own ATLAS system insufficient to raise a material issue of fact. GEICO was free to dictate those same business requirements to other vendors and the demonstration of the functionalities it required did not disclose information that was confidential. *Cf. Spear Mktg. Inc. v. BancorpSouth Bank*, 791 F.3d 586, 601 (5th Cri. 2015) (no impropriety in competitor's review of client's own records "as displayed in a printout" from claimant's software); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) ("items . . . such as the appearance of data entry screen are exceedingly hard to call trade secrets").

Summary Judgment is granted in favor of Defendants on Count III.

### C.     Summary Judgment is Granted as to Claim for Breach of the NDA (Count II)

Count II alleges breach of the NDA entered into by GEICO and Capricorn on August 23, 2005, more than thirty years after Capricorn and Silberstein began providing service to GEICO.

In addressing Count II, breach of the NDA, the Court begins with the language of the agreement itself.  Confidential information is defined in the NDA as

"confidential and proprietary information, including without limitation information related to [each] party's . . . operations, technology or systems . . . ." (Schoenstein Ex. 9.) Under the NDA, the parties agreed not to copy any confidential information without the prior written consent of the owner of that information and to not disclose such information to third parties without written consent and to treat such confidential information as strictly confidential and as trade secret information. (*Id.*)

Capricorn takes the position that under the NDA all of its "operations, technology or systems" are confidential and to be treated as trade secrets. But the language of the NDA does not support such an all encompassing interpretation. By its terms, such operations, technology and systems, must be confidential and proprietary in the first instance to qualify as confidential information. Given Capricorn's course of conduct with respect to Supercede, a reasonable trier of fact could not conclude that Supercede was "confidential and proprietary." It is undisputed that GEICO had access to Supercede for years before the NDA was entered into and that the 2005 agreement is the only confidentiality agreement entered into between GEICO and Capricorn. Of the four individuals identified by Capricorn as having coded Supercede since its inception, Capricorn produced confidentiality agreements for only two of them (DePace and Brock Anderson) and those agreements are both dated April 2011, many years after the two individuals began coding Supercede.

The NDA only precluded GEICO from sharing Capricorn's information with AIS. Given that Capricorn did not treat Supercede as confidential and given the absence of evidence that the information shared with AIS was Capricorn's confidential information, as distinct from GEICO's proprietary business requirement, summary judgment is granted on the claim for breach of the NDA.

### D. Summary Judgment is Granted as to Claim for Conversion (Count III)

The last claim to be addressed is the one for conversion. "Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. This includes a denial or violation of the plaintiff's dominion, rights, or possession over [its] property. It also requires that the defendant exclude the owner from exercising [its] rights over the goods." *Thyroff v. Nationwide Mut. Ins.*, 460 F.3d 400, 403-404 (2d Cir. 2006) (internal quotation marks and citations omitted). This latter element requires that "defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Apple Mortg. Corp. v. Barenblatt*, 162 F.Supp.3d 270, 284 (S.D.N.Y. 2016).

In opposing the motion for summary judgment, Capricorn cited "Schoenstein Dec. Ex. 29, No.5" in support of its argument that Defendants "completely cut off Capricorn's ability to access its own source code, which could not be recreated." Pl.'s Opp. Mem. (DE 107-19) at 23.) The referenced exhibit is "Geico's Response to Capricorn's First Set of Interrogatories (Nos. 1-6.)" Schoenstein Dec. at ¶ 30. The entirety of Interrogatory No. 5 and the Response thereto is as follows:

> Interrogatory No. 5:
> Identify all individuals with access to Supercede code.
> Response:
> GEICO objects to Interrogatory No. 5 because "Supercede code" is
> ambiguous without any reference to a particular date, version, or
> module. Supercede has been continuously revised by Capricorn over a
> period of many years, so there is no one collection of software program
> source code that can fairly be characterized as the "Supercede code."
> Subject to and without waiving the foregoing general and specific
> objections, GEICO states that Capricorn provided some portions of the
> source code for Supercede to GEICO for the limited purpose of testing
> revisions to Supercede for proper functionality and compatibility with
> GEICO systems after prior revisions to Supercede, implemented by
> Capricorn alone without assistance from GEICO, were determined to
> malfunction or be incompatible with GEICO systems. GEICO stored
> those portions of Supercede source code provided to GEICO by
> Capricorn within Perforce, a commercially available revision control
> system commonly used as a source code repository, on a secure server
> at a GEICO data center. GEICO employees Luigi Cirigliano, Adam
> Coulter, and Roberta Schaefer accessed portions of the Supercede
> source code to assist Capricorn with testing and troubleshooting, as
> described above.

(DE 109-44, at No. 5.) The cited evidence provides no support for the claim of

exclusion.

Capricorn now references different materials in support of its

contention that Judge Locke's determination that Capricorn "offered no

evidence . . . to show that Defendants prevented it from accessing or using

Supercede at GEICO's facilities."  (*See* Pl.'s Obj. (DE 132) at 17.) It now

maintains that "the master copy of the program was maintained in GEICO's

'Plaza' offices in Chevy Chase, Maryland. DePace was barred from GEICO's

facilities years ago and, as GEICO itself points out, Dr. Silberstein has been

denied access to its offices, including Woodbury, for some time now." (Id.

(citing Pl.'s Counter-Statement of Material Facts ("CMF") (DE 109-24) at

¶¶86, 125, 266-267.) Paragraph 86 of the CMF has nothing to do with where the master copy was stored or Capricorn's access to it. Paragraph 125 does support that the master copy of Supercede was maintained in GEICO's Maryland Office. However, paragraphs 266 and 267 refer only to "the so-called DePace 'ban' that happened shortly after" Dec. 2014. (Id. ¶¶ 266-267.) The referenced paragraphs simply do not support that Silberstein or any other Capricorn employees were barred from accessing Supercede. Indeed, according to Capricorn, the evidence establishes that even after the "so-called DePace 'ban' GEICO employees continued to reach out to DePace and communicate with him," citing emails from January, February and March 2015 from DePace to a GEICO employee. These emails evidence that DePace was still working on Supercede for GEICO even after the so-called "ban." (Id. ¶¶ 267, 282-84).

Having failed to direct the Court's attention to evidence that would raise an issue of fact as to whether Capricorn was prevented from accessing Supercede, the motion for summary judgment on the claim for conversion is granted.

## CONCLUSION

For the reasons set forth above, the Court rejects the parties' objections and adopts Judge Locke's R &R in toto. Accordingly, the motion to strike Plaintiff's purported expert disclosures and exclude expert testimony is granted; the motion for sanctions is denied; and the motion for summary judgment is granted as to

Counts II, III, and IV of the Amended Complaint, but denied as to Count I. Finally, the Court notes that GEICO has not renewed the motion to file certain documents under seal (DE 109). To the extent it wishes to renew that motion, it must file said application, addressed to Judge Locke, on or before April 30, 2020. In the event such application is not made, the Clerk of Court will be directed to unseal the documents filed at docket entry number 109.

     **SO ORDERED.**

Dated: Central Islip, New York          s/ Denis R. Hurley
       March 16, 2020            Denis R. Hurley
                                 United States District Judge